# EXHIBIT 8

**SUPPLEMENTAL RESPONSE OF MICROSOFT CORPORATION
TO THE STATEMENT OF OBJECTIONS
BY THE EUROPEAN COMMISSION DATED 21 DECEMBER 2005**

Case No. COMP/C-3/37.792  Microsoft

2 March 2006

TABLE OF CONTENTS

I.  Introduction.................................................................................................................. 1

II. The Documents Released On 13 February Call Into Serious Question The
    Objectivity Of The Process For Evaluating Microsoft's Technical Documentation.......... 3

    A. The Commission Encouraged Microsoft's Adversaries To Have Extensive
       Unsupervised and Undocumented Contact With The Trustee In A Manner
       That Violates the Trustee's Mandate And Due Process ............................................ 3

    B. The Documents Disclosed On 13 February Reveal A Close Relationship
       Among The Commission, The Trustee, And Microsoft's Adversaries That Is
       Inconsistent With The Independence Of The Commission And The Trustee.............. 9

    C. Many Documents Are Obviously Missing From the File......................................... 11

III. The Commission's Withholding Of Relevant Documents And Its Ongoing Failure
     To Disclose Others Violate Microsoft's Fundamental Rights Of Defense...................... 12

    A. The Commission Withheld The 13 February Correspondence For Seven
       Weeks And Impeded Microsoft's Ability To Defend Its Interests........................... 12

    B. The Commission's Encouragement Of Efforts By Microsoft's Adversaries To
       Influence The Trustee And OTR Highlights The Importance That Microsoft
       Be Accorded Its Full Right Of Access To The File................................................. 13

I.  INTRODUCTION

1.  In the evening of 13 February 2006, the Commission finally gave Microsoft copies of certain correspondence between the Commission and four American-based companies who have long been Microsoft's adversaries in various judicial and regulatory proceedings. Microsoft had requested this correspondence seven weeks earlier, on 23 December 2005, but the Commission delayed giving it to Microsoft until two days before Microsoft's deadline for responding to the Statement of Objections dated 21 December 2005 (the "Statement of Objections"). This correspondence is of direct relevance to Microsoft's defense to the allegations set forth in the Statement of Objections concerning Microsoft's alleged failure to provide Interoperability Information in accordance with the Commission's Decision of 24 March 2004 (the "2004 Decision"). As a result of the Commission's late release of this correspondence, Microsoft was denied the opportunity to take it into account in its Response to the Statement of Objections, which was submitted on 15 February 2006. Accordingly, Microsoft is compelled to file this Supplementary Response.

2.  The correspondence disclosed on 13 February has disturbing implications for the manner in which the Commission has conducted this case. In disregard of its own public commitments to increased transparency in conducting its investigations, the Commission waited until two days before the deadline for Microsoft's response to provide these relevant documents. The documents reveal that the Commission has been conducting its investigation of Microsoft's compliance in secret collaboration with Microsoft adversaries and in violation of its own rules for communication with the Trustee.

3.  Contacts between the Commission and competitors of the company under investigation, and between the Commission and its outside experts are frequently the practice in competition cases. But the contacts disclosed by the documents in this case are entirely inappropriate for two basic reasons. First, these contacts are inappropriate given the ostensibly impartial roles of the Trustee and the OTR Group ("OTR") in this case. The Statement of Objections relies heavily on the reports of the Trustee and OTR as evidence of Microsoft's alleged failure to comply with its obligations under the 2004 Decision. In relying on these reports, the Commission casts the Trustee and OTR in the role of independent, impartial experts. However, the Commission's

encouragement of secret contacts between Microsoft's adversaries and the Trustee and OTR, and the undocumented communications that resulted, is entirely inconsistent with any attempt to portray the Trustee and OTR as independent and impartial experts. By encouraging and facilitating these communications to occur in the dark, and without any record of the content of the communications apparently being kept, the Commission has prevented Microsoft from knowing whether the content of the communications was distorted or accurate.

4.      Second, these contacts violate both the letter and spirit of the Commission's own Decision of 28 July 2005 on the Monitoring Trustee, not to mention fundamental principles of due process. This Decision establishes important procedural safeguards aimed at ensuring transparency of the monitoring process, including contacts between the Trustee and third parties.[1] Undocumented and direct contacts between Microsoft's adversaries and the Trustee represent direct violations of these safeguards. The failure to provide these materials to Microsoft also violates the basic principle of due process, effectively guaranteed by the Decision on the Monitoring Trustee, that, subject to certain narrow exceptions, a defendant should have full access to the documents in the file so that it can mount an effective defense.

5.      The 13 February correspondence also calls into question whether the reports of the Trustee and OTR upon which the Statement of Objection is based are really independent, impartial assessments of Microsoft's Interoperability Information, or instead are argumentative tracts developed for the Commission with the assistance of Microsoft's competitors. The correspondence traces a pattern of contacts between the Commission and three Microsoft adversaries, [1], [2], and [3]. The picture that emerges is one of the Commission facilitating and at times even initiating undocumented – or at least undisclosed – contact between Microsoft's adversaries and the Trustee and OTR, in an apparent effort to influence the Trustee and OTR.

6.      Apart from raising due process concerns, the correspondence disclosed on 13 February paints a woefully incomplete picture of contacts by Microsoft's adversaries with the Trustee and OTR. There are unexplained gaps in the correspondence between the Commission and Microsoft's adversaries. This missing correspondence was either not put in the file as it should have been, or simply neither listed as being in the file nor provided to Microsoft. Perhaps most

---

[1] Commission Decision of 28.07.2005 relating to a proceeding under Article 82 of the EC Treaty (Case COMP/C-3/37.792 Microsoft).

- 3 -

importantly, the Commission continues to deny Microsoft access to communications between the Commission, on the one hand, and the Trustee and OTR, on the other. These communications are necessary to understand the full extent of the influence exerted on the Trustee and OTR, which is of critical importance to Microsoft's defense as the Commission relies so heavily on their reports in its Statement of Objections.

7.   Subject to the narrow exceptions for internal and confidential documents set forth in the Notice on Access to the File, Microsoft is entitled to have the remaining documents in the file relating to contacts between the Commission, Microsoft's adversaries, the Trustee, and OTR necessary to complete the picture of how the Trustee and OTR reached their conclusions. Microsoft therefore urges the Commission to make these documents available without delay.

## II.  THE DOCUMENTS RELEASED ON 13 FEBRUARY CALL INTO SERIOUS QUESTION THE OBJECTIVITY OF THE PROCESS FOR EVALUATING MICROSOFT'S TECHNICAL DOCUMENTATION

### A. The Commission Encouraged Microsoft's Adversaries To Have Extensive Unsupervised and Undocumented Contact With The Trustee In A Manner That Violates the Trustee's Mandate And Due Process

8.   The picture that emerges from a review of the correspondence disclosed on 13 February is that the Commission, the Trustee, and Microsoft's adversaries were actively collaborating throughout the Fall of 2005 in a manner inconsistent with the Commission's role as neutral regulator and the Trustee's role as independent monitor. This correspondence shows that the Commission facilitated and, at times, initiated contacts between the adversaries and the Trustee that violated the letter and the spirit of the Commission's Decision on the Monitoring Trustee Mandate. Indeed, the documents released on 13 February show that the Commission actively encouraged Microsoft's adversaries to "educate" the Trustee in a manner detrimental to Microsoft. Giving the Trustee this kind of "education" is clearly inconsistent with an impartial process under which the Trustee approaches his task with an open mind. In addition, it places the Trustee more in the role of the Commission's co-prosecutor than that of an independent monitor of Microsoft's compliance.

9.   A number of documents reveal inappropriate contacts between Microsoft's adversaries and the Trustee. For example, the Commission tried to initiate a meeting between the Trustee and [3], one of Microsoft's adversaries, and the complainant in the proceeding leading up to the

adoption of the 2004 Decision. The purpose was to give the Trustee "a first impression of what is at stake"[2] and to "introduce Mr. Barrett to the issues."[3] [3] agreed that a meeting would be useful, noting that it would "begin what will be a huge education process."[4] An impartial observer might well question the appropriateness of this extensive lobbying of a supposedly neutral expert by a Microsoft adversary.

10. Adding to the appearance of impropriety, the Commission pressed for the meeting between [3] and the Trustee to take place <u>before</u> the Trustee first met with Microsoft. The Commission proposed 27 October 2005 as the date for the meeting as the Trustee would be at the Commission that day. But [3]'s lawyers indicated that the relevant [3] personnel would not be available on 27 October because they were scheduled to work on the "new complaint" against Microsoft.[5]

11. The Commission pressed for a meeting on 27 October, so that the "education process" could begin before Microsoft met with the Trustee: "That's really unfortunate. We would have appreciated to present Prof. Barrett with your view <u>before he meets with Microsoft for the first time</u>."[6] At the insistence of the Commission, a conference call was then arranged for 27 October, to be followed by a personal meeting on 9 November in Brussels.[7]

12. Perhaps most troubling, Microsoft was not informed of these meetings, much less invited to participate in order to ensure that the communications were fair and unbiased. No record of what took place during the conference call or the subsequent meeting has been disclosed to Microsoft. As is the case with any well-run administration, it is the Commission's standard practice to take notes of important meetings. The non-existence or non-disclosure of such notes in this case suggests an effort either not to preserve them or not to disclose the subjects

---

[2] E-mail of 20 October 2005 (8:40) from Thomas Kramler of DG Competition to [A], counsel for [3].
[3] E-mail of 20 October 2005 (3:43) from Thomas Kramler of DG Competition to [B] of [3] and [A], counsel for [3].
[4] E-mail of 20 October 2005 (17:31) from [A], counsel for [3], to Thomas Kramler of DG Competion.
[5] E-mail of 20 October 2005 (17:01) from [A], counsel for [3], to Thomas Kramler of DG Competition.
[6] E-mail of 20 October 2005 (8:26) from Thomas Kramler of DG Competition to [A], counsel for [3]. (emphasis added)
[7] <u>Id.</u>; e-mail of 21 October 2005 (20:09) from Adolfo Barbera del Rosal of DG Competition to [A], counsel for [3].

- 5 -

discussed. In any event, it seems highly doubtful that the purpose of these discussions was to help the Trustee reach an objective understanding of Microsoft's compliance with the 2004 Decision, in view of the Commission's urgent insistence that [3] talk secretly with the Trustee before he initially met with Microsoft.

13.     The Commission also took it upon itself to facilitate secret meetings between the Trustee and another of Microsoft's adversaries, [2].[8] The purpose of the meetings was to allow [2]'s engineers to work together with the Trustee on identifying "any continuing gaps, which would allow the Trustee to demand supplementary information from Microsoft."[9] [2] even offered to make arrangements for the Trustee to travel to Texas for a meeting.[10]

14.     Given other documents, Microsoft assumes that the meeting referred to in the e-mail eventually took place on 6 and/or 7 December 2005.[11] Moreover, [2] sent a "CD-ROM with related materials"[12] to the Trustee in preparation for that meeting. The e-mail does not indicate what material was on the CD-ROM nor does the file indicate what additional material was handed over to the Trustee at the meeting between [2] and the Trustee. Indeed, as with the contacts with [3], there is apparently no record in the file of what took place at these meetings between [2] and the Trustee. Microsoft does not know if the Commission was present.

15.     These direct contacts and meetings between the Trustee and Microsoft's adversaries violated the Commission's Decision on the Monitoring Trustee as well as general principles of due process. There are two provisions in this Decision addressing the circumstances under which the Trustee may receive information from third parties. Both establish important procedural safeguards aimed at ensuring transparency with respect to documents provided by third parties to the Trustee. The Commission, the Trustee, and Microsoft's adversaries circumvented these procedural safeguards.

---

[8] E-mail of 2 November 2005 (20:51) from [C], counsel for [2] to Adolfo Barbera del Rosal and Thomas Kramler of DG Competition; e-mail of 22 November 2005 (21:31) from [C], counsel for [2], to Thomas Kramler of DG Competition.
[9] E-Mail of 22 November 2005 (21:31) from [C], counsel for [2], to Thomas Kramler of DG Competition.
[10] E-mail of 29 November 2005 (16:15) from [C], counsel for [2] to Prof. Neil Barrett.
[11] The documents disclosed by the Commission do not contain any confirmation that the meeting took place. However, the Trustee's invoice for its works in December 2005 recorded for 6 and 7 December work in the U.S.
[12] E-mail of 29 November 2005 (16:15) from [C], counsel for [2] to Prof. Neil Barrett.

- 6 -

16.     The first provision is Article 3(2)(b) of the Decision. It provides that, in carrying out its functions, the Trustee "may have access to any compilation of documents, data or any other information that Microsoft or any third party is requested or required <u>to submit to the Commission</u> for the purpose of monitoring Microsoft's compliance with the [2004] Decision …." (emphasis added). By providing that the Trustee shall have access to data or other information that third parties have <u>submitted to the Commission,</u> this provision ensures that the documents from third parties that are sent to the Trustee are on record with the Commission. This is an important procedural safeguard because, if the documents are on record with the Commission, they must be disclosed to Microsoft (at least in a non-confidential version). This allows Microsoft to comment on the correctness of the material.

17.     The second provision is Article 3(3) of the Decision. It stipulates that the Trustee shall establish and make public a procedure for third parties to lodge complaints with the Trustee concerning Microsoft's failure to comply with its obligations under the 2004 Decision. No such formal procedure was in place when the Commission facilitated the contacts between the Trustee and Microsoft's adversaries,[13] and Microsoft's adversaries did not lodge complaints with the Trustee. Moreover, Article 3(3) provides that the non-confidential version of any complaint shall be sent immediately by the Trustee to the Commission, thus placing it on the Commission's file. The provision also specifically states that, to facilitate the informal resolution of complaints, the non-confidential version of any complaint shall be sent, wherever possible, to Microsoft, and that Microsoft shall be give the opportunity to submit comments to the Commission on such complaint within 30 days of receipt.

18.     In violation of these provisions aimed at ensuring transparency in contacts between the Trustee and any third parties, the Commission set up direct conversations and meetings between the Trustee and Microsoft's adversaries. Also, when informed that Microsoft's adversaries sent material to the Trustee, the Commission apparently neither directed that a copy of the material be sent to the Commission[14] nor requested the Trustee to forward such material to the

---

[13] Indeed, such a procedure has still not been put into place.
[14] If the Commission did receive such material, the Commission either failed to put it in the file or concealed its existence.

- 7 -

Commission.[15]  Thus, there is apparently no record in the Commission's file of the material Microsoft's adversaries sent to the Trustee or of what was discussed during the meetings between Microsoft's adversaries and the Trustee.  This is all the more troubling because the Commission's case team apparently applies a stricter standard to Microsoft than it does to Microsoft's adversaries in that it has expressly required Microsoft to copy it on correspondence with the Trustee, and all such correspondence is in the Commission's file.

19.    In addition to violating the Commission's Decision on the Monitoring Trustee, depriving Microsoft of the ability to comment on submissions made by its adversaries to the Trustee violates fundamental principles of due process.  The fundamental principle of "equality of arms" requires the Commission to disclose to the defendant all information available to it in the context of a competition investigation so that the defendant may decide whether to use such information in its defense.[16]  This principle clearly applies to the information made available to the Trustee, whose role is to assist the Commission as an independent monitor of Microsoft's compliance with the 2004 Decision and on whose reports the Commission based its Statement of Objections.

20.    In short, the Commission collaborated with Microsoft's adversaries to undermine the transparency of the monitoring process and to circumvent the principle of equality of arms.  The Commission not only failed to provide relevant communications with third parties to Microsoft, but it sought to create the impression that such materials did not exist.  In response to an e-mail of Mr. Art of Microsoft of 23 December 2005 requesting full access to all correspondence between the Commission and third parties, Mr. Madero of the Commission's case team responded as follows:

> "I draw your attention to the fact that, apart from the Monitoring Trustee and OTR, only four third parties that are mentioned in the Statement of Objections (namely [3], [4], [2] and [1]) have had access to the interoperability information through the evaluation mechanism set out in the framework of the WSSP. A non-confidential version of their comments and observations has already been disclosed to Microsoft."[17]

---

[15] If the Trustee forwarded the material to the Commission, the Commission withheld it from Microsoft contrary to Article 3(3) of the Decision on the Monitoring Trustee.

[16] Case T-30/91, *Solvay SA v Commission of the European Communities*, 1995 II- 1775, ¶101.

[17] E-mail of 23 December 2005 (15:30) from Cecilio Madero of DG Competition to Jean-Yves Art.

- 8 -

21.     This answer was, at best, misleading because Mr. Madero knew that [3], [4], [2], and [1] had submitted "comments and observations" other than their Article 18 Responses to the Trustee that had not been – and are still not – disclosed to Microsoft.

22.     Given that the Trustee's findings are central to the Commission's Statement of Objections, Microsoft requests that it be given immediate access to any material submitted by [2], [3], [1], [4], or any third party, to the Trustee and a reasonable time to respond to this material. In order to be able to exercise its rights of defense, Microsoft must be able to comment on the correctness and relevance of such material, and to assess the extent to which it influenced the Trustee's findings.

23.     There is also a troubling lack of transparency concerning contacts between Microsoft's adversaries and OTR, the outside expert upon whose reports the Commission relies. The limited record revealed so far by the Commission suggests that it sought to have Microsoft's adversaries educate OTR in a manner that resulted in an OTR report substantially mimicking the position taken by [3]. In mid-September 2005, the Commission initiated the organization of a telephone call between [3] and OTR "on [3]'s findings in Redmond before the 27th September." [18] The purpose of the call ostensibly was to save OTR time.[19] The call appears to have taken place on 20 September,[20] and shortly thereafter OTR issued its 28 September report upon which the Statement of Objections relies.[21] Again, there is no record of what transpired on the call in the file that has been disclosed to Microsoft.

24.     These unsupervised direct contacts deprived Microsoft of the ability to comment on the arguments its adversaries made to OTR. As with the unsupervised contacts with the Trustee, these contacts violated the fundamental "equality of arms" principle. Therefore, Microsoft requests that it be given immediate access to any communication between Microsoft's adversaries and OTR.

---

[18] E-mail of 13 September 2005 (6:38) form Thomas Kramler of DG Competition to [A], counsel for [3].
[19] Id.
[20] E-mail of 14 September 2005 (7:57) from [A], counsel for [3], to Thomas Kramler, of DG Competition.
[21] Report for CEC: Task(s) 5, 28 September 2005.

25.     Furthermore, due to the apparent gaps in the Commission's disclosures to date, Microsoft has no way to determine with any confidence whether other such telephone calls and meetings were arranged by the Commission, let alone with what result. Such questions will continue to cast doubt on the fairness of the proceedings against Microsoft until the Commission fully complies with Microsoft's document access request and its legal obligations to afford due process and respect Microsoft's rights of defense.

### B. The Documents Disclosed On 13 February Reveal A Close Relationship Among The Commission, The Trustee, And Microsoft's Adversaries That Is Inconsistent With The Independence Of The Commission And The Trustee

26.     The Commission is entrusted with the responsibility to be a neutral regulator, while the Trustee has the responsibility to "impartially"[22] monitor the implementation of the 2004 Decision. Both roles require the Commission and the Trustee to interact with market participants. The correspondence disclosed on 13 February, however, suggests a pattern of close cooperation among the Commission, the Trustee, and Microsoft's adversaries that goes well beyond the degree of interaction that is required for the Commission and the Trustee to fulfill their respective mandates and is inconsistent with their independent status.

27.     Particularly revealing is an e-mail of 17 November 2005 from [3]'s lawyers to the Commission.[23] The e-mail proposes a schedule for coordinating the activities of [3], the Trustee, and the Commission case team over the coming weeks.[24] The e-mail then goes on to suggest that the Trustee not actually accompany [3] representatives during an upcoming visit to Microsoft because "[t]here is fear at [3] that this will expose too much to MS. It is an appearance issue."[25]

28.     Unfortunately, more than mere appearances is at stake here. The Commission and the Trustee cannot fulfill their respective roles as neutral regulator and independent monitor if they are actively and secretly working with Microsoft's adversaries.

---

[22] Commission Decision of 28.07.2005 relating to a proceeding under Article 82 of the EC Treaty (Case COMP/C-3/37.792 Microsoft), Art. 2.2.
[23] E-mail of 17 November 2005 (2:10) from [A], counsel for [3], to Thomas Kramler of DG Competition and [B] of [3].
[24] Id. ("I have reviewed possible schedules with Mark and his team. [W]ill the following work for you: 1. Meet with Prof Barret in Boston Nov. 30 - Dec. 1. 2. Inspection at Microsoft Dec 7-8. 3. Meet in Brussels with you and Prof. Barrett week of Jan 9 (Pref mid week)").
[25] Id. (emphasis added).

29.     More striking still is the Commission's close relationship with [1], a Microsoft adversary that is in fact not a competitor in the work group server operating system market that is the subject of the 2004 Decision (i.e., work group server operating systems that offer file and print as well as directory services) and has not announced any intention to enter this market. [1] nevertheless availed itself of the opportunity to review the Technical Documentation under an evaluation license made available to companies deciding whether to license the documentation. [G], who inspected the Technical Documentation for [1], is a litigation consultant. He has appeared as an expert in litigation and regulatory matters opposed to Microsoft on a number of occasions for [1] and other Microsoft adversaries. In fact, he has been employed since 1991 as a technical consultant by the law firm of [X], which served as counsel for the [5], one of Microsoft's main adversaries during the period leading up to the 2004 Decision.

30.     At the beginning of the third and final day of his "evaluation," [G] sent an e-mail to [1]'s outside lawyers, asking if he should cancel his vacation in order to meet the deadline for responding to the Commission's Article 18 request.[26] The e-mail was forwarded to the Commission Head of Unit in charge of the Microsoft case seven minutes later for a decision on whether [G] could have a holiday.[27] [1]'s lawyer noted that he would be willing to have [G]'s holiday cancelled because "[1] has made <u>a large investment</u> in this, so I need to do what is necessary <u>to ensure that you can effectively use the results of our efforts</u>."[28]

31.     The file does not reveal how this matter was resolved. But it is known that [1]'s filing in response to the Article 18 request was sent to the Commission on 13 October,[29] 8 days after the 5 October deadline referred to in the email from [1]'s lawyer. The file, however, contains no record that the Commission granted an extension to its deadline. Thus, either the Commission did not enforce its deadline with respect to [1]'s submission or the Commission's grant of the extension is not contained in the file. In either case, the Commission's conduct raises concerns of due process.

---

[26] E-mail of 29 September 2005 (16:33) from [G] to [D] and [E], counsel for [1].
[27] E-mail of 29 September 2005 (16:40) from [E], counsel for [1], to Cecilio Madero and Thomas Kramler of DG Competition.
[28] <u>Id.</u> (emphasis added).
[29] E-mail of 12 October 2005 (19:25) from [E], counsel for [1], to Cecilio Madero of DG Competition.

- 11 -

32.    Moreover, the correspondence that the Commission produced on 13 February evidences the Commission's willingness to rely on information fed to it by Microsoft's adversaries in producing the Statement of Objections without bothering to check the evidence itself. As pointed out in footnote 164 of the Response, the Statement of Objections gives both the wrong title and the wrong date of a textbook.[30] The documents provided to Microsoft on 13 February indicate that the Commission's confusion about the title and date of the book may stem from the fact that the Commission apparently never actually read the book, but relied on mere excerpts that were provided to the Commission in a "Strictly Private & Confidential" e-mail by a lawyer representing [1].[31]

### C. Many Documents Are Obviously Missing From the File

33.    Further heightening due process concerns is the incompleteness of the 13 February disclosure. Even a cursory review of the documents disclosed reveals that there are others that have not been disclosed. E-mail chains are not finished, questions are left unanswered, and documents are mentioned that are not disclosed.

34.    Some of the more striking examples of the incomplete disclosure include:

- Documentation on the relationship between [1] and the Commission, described above. The disclosed e-mails suggest that the Commission was very familiar with [1]'s activities at Microsoft, but the background correspondence is missing. Also, there is no record of any extension that was granted to [1]'s deadline to respond.

- An e-mail in the file refers to the submission of a "non paper" to the Commission by a competitor of Microsoft, suggesting a technique that may be used to prevent Microsoft from obtaining access to such documents.[32] There is no further information on this "non paper" or any other "non-papers" that may not have been placed in the file. The non-disclosure of the "non-paper" described by this e-mail suggests the inference that it is the

---

[30] More specifically, footnote 48 of the Statement of Objections cites "Paul Clements, Felix Bachman, Len Bass, David Garlan, James Ivers, Reed Little, Robert Nord and Judith Stafford, *Documenting Software Architecture* [sic], 2005 [sic]." The correct title of the book is Documenting Software Architectures: Views and Beyond, and the correct date of the book is not 2005, as stated by the Commission, but 2003 (with actual publication on 9/26/2002), according to the description on the website of the book's publisher, Addison Wesley; see http://www.aw-bc.com/catalog/academic/product/0,1144,0201703726,00.html.

[31] See e-mail of 28 October 2005 from [F], counsel for [1], to Adolfo Barberá del Rosal et al. transmitting excerpt from Documenting Software Architectures.

[32] E-mail of 16 November 2005 (12:32) from Adolfo Barbera del Rosal of DG Competition to [H] of [6].

- 12 -

> Commission's practice to keep such "non-papers" in a "non-file" that by virtue of such naming conventions is not disclosed, which would represent a further violation of Microsoft's rights of defense.
>
> - There is no response in the file to [2]'s proposal to meet with the Trustee in Texas, discussed above – neither any disclosure that the meeting occurred and what subjects were discussed, nor any document showing that the meeting was cancelled or rejected. In view of the length of the e-mail chain leading to the proposed scheduling of this meeting, it seems at best odd that the exchange of messages stopped so suddenly without resolution.[33]
>
> - Perhaps most importantly, there are no records of the numerous meetings and telephone calls described in this Supplementary Response between the Trustee and Microsoft's adversaries.

35.    This incomplete disclosure is particularly troubling in light of what the file reveals – a pattern of active collaboration by the Commission, the Trustee, and Microsoft's adversaries. This makes it imperative that Microsoft have full access to the file to mount an effective defense. As the European Court of Justice has emphasized: "It cannot be for the Commission alone, who notifies any objections and adopts the decision imposing a penalty, to determine the documents of use in the defence of the undertaking concerned."[34]

### III. THE COMMISSION'S WITHHOLDING OF RELEVANT DOCUMENTS AND ITS ONGOING FAILURE TO DISCLOSE OTHERS VIOLATE MICROSOFT'S FUNDAMENTAL RIGHTS OF DEFENSE

#### A. The Commission Withheld The 13 February Correspondence For Seven Weeks And Impeded Microsoft's Ability To Defend Its Interests

36.    The Commission has violated Microsoft's rights of defense by withholding the 13 February documents for a period of seven weeks. Microsoft first requested access to documents in the file on 23 December 2005 and mentioned in its request that it wanted to receive copies of the correspondence between the Commission and Microsoft's adversaries.[35] The Commission delayed the disclosure of this correspondence until two days before Microsoft had to file its response to the Statement of Objections on 15 February.

---

[33] See also note 11.
[34] Joined cases C-204/00 P, C-205/00 P, C-211/00 P, C-213/00 P, C-217/00 P and C-219/00 P, *Aalborg Portland A/S, Irish Cement Ltd, Ciments français SA, Italcementi - Fabbriche Riunite Cemento SpA, Buzzi Unicem SpA and Cementir - Cementerie del Tirreno SpA v Commission of the European Communities*, 2004 ECR I-123 at para. 126.
[35] E-mail of 23 December 2005 from Jean-Yves Art to Cecilio Madero.

- 13 -

37. In her letter of 8 February, the Hearing Officer informed Microsoft that "subsequent to Microsoft's earlier request, by which Microsoft expressed an interest in accessing these documents (mostly informal e-mail exchanges), verification of third parties' confidentiality claims was already under way."[36] The verification of the adversaries' confidentiality claims should have been completed when the Commission sent out the Statement of Objections. At the very least, this task should have begun on 26 December, the first working day after Microsoft made its original request for access to the file and should then have been completed within a few days. It is plainly implausible that the Commission needed seven weeks to verify the confidentiality claims of four companies in relation to the limited number of documents that have been disclosed. This delay effectively denied Microsoft timely access to the file, and undermined its ability to mount an effective defense.

### B. The Commission's Encouragement Of Efforts By Microsoft's Adversaries To Influence The Trustee And OTR Highlights The Importance That Microsoft Be Accorded Its Full Right Of Access To The File

38. The correspondence released on 13 February paints only a partial picture of attempts to influence the Trustee and OTR. It thus highlights the need for Microsoft to have access to the additional documents necessary to complete further this picture.

39. A crucial part of the missing evidence concerns the contacts between the Commission and the Trustee and OTR, which is necessary to evaluate to what extent the Commission attempted to exert more direct influence on the Trustee and OTR. Such contacts are of direct relevance to Microsoft's defense in this case because are central to the question of the Trustee's and OTR's impartiality and objectivity.

40. Microsoft is entitled to learn the full extent to which the Commission may have influenced the views expressed by the Trustee and OTR in their reports. It is patently unfair and denies Microsoft its fundamental rights of defense for the Commission to rely on these reports to support its Statement of Objections while simultaneously shielding from disclosure its communications with the Trustee and OTR that pertain directly to the impartiality of these reports.

---

[36] Letter of 8 February 2006 from DG Competition Hearing Officer to Ian S. Forrester.

- 14 -

41.     For the same reason, Microsoft is entitled to receive a copy of all the materials sent by third parties directly to the Trustee and OTR, as well as all documents relating to meetings or conversations between such third parties and the Trustee and OTR.