Exhibit A

Dockets.Justia.com

 **EUROPEAN COMMISSION**
Competition DG

The Director-General

1 0 0 3 . 6   0 0 0 1 3 7 1

Brussels,
COMP/C-3/TK/hc D(2006)*D193

Morgan Lewis & Bockius LLP
Att. Mr. Izzet Sinan
Rue Guimard 7
1040 Bruxelles

**Subject:    Case COMP/C-3/37.792 – Microsoft; Microsoft's discovery requests with US courts**

Dear Mr. Sinan,

By letter of 9 March 2006 you informed us of discovery requests filed with the US District Court for the Northern District of California by Microsoft Corporation addressed to your client Sun Microsystems ("Sun") and Morgan Lewis & Bockius LLP and Jeffrey Kingston ("Morgan Lewis"). You also informed us of an *ex parte* order issued by the said court on 3 March 2006 and the related subpoenas served on Sun and Morgan Lewis by Microsoft.

Following your request and in view of the fact that DG Competition considers that the discovery requests in this case raise issues of considerable importance in relation to the Commission's rules on access to file, I am sending you herewith observations (in annex) that have been prepared by DG Competition with regard to these requests.

I should like to point out that the annexed document reflects the views of DG Competition, which is a service of the European Commission. Should this be deemed necessary and appropriate, the European Commission would like to be able to seek leave to intervene as *amicus curiae*. I should be grateful therefore if you would keep us informed in a timely way of developments in this proceeding.

As specified in the attached statement, the present observations do not seek to support, intervene in favour of or otherwise assist any of the parties involved in the proceeding.

Yours sincerely,

Philip Lowe

Annex

European Commission, B-1049 Brussels – Belgium - Telephone: (32-2) 299.11.11
Office: J-70 4/136 – Telephone: direct line (32-2) 298.67.16 – Fax: (32-2) 295.01.28
Email: Comp-Greffe-Antitrust@cec.eu.int

 **EUROPEAN COMMISSION**
DG Competition

## Annex to the letter of 10 March 2006 addressed to Morgan Lewis & Bockius LLP

**Subject:**    Discovery requests *in re* Microsoft Corporation before the United States District Court for the Northern District of California

## 1.    INTRODUCTION

### 1.1.    The pending litigation before the US District Court for the Northern District of California

1.    The Directorate-General for Competition ("DG COMP") of the European Commission ("Commission") has been informed that Microsoft Corporation on 3 March 2006 has made an application for discovery pursuant to 28 U.S.C § 1782 with the US District Court for the Northern District of California and asked for the authorisation to serve subpoenas on Sun Microsystems ("Sun") and Morgan Lewis & Bockius LLP and Jeffrey Kingston ("Morgan Lewis"). The Commission has also been informed that an *ex parte* order has been issued on 3 March 2006 by the said court ordering Sun and Morgan Lewis to essentially produce:

a.    *All documents that contain, constitute, reflect, evidence, or refer to any communication or correspondence between Sun or Morgan Lewis and the Commission, the Monitoring Trustee or OTR relating to the Interoperability Information or to the proper interpretation of the terms "Interoperability" or "Interoperability Information" as used in the 2004 Decision.*[1]

b.    *All documents that contain, constitute, reflect, evidence, or refer to any communication between Sun or Morgan Lewis and any other third party, relating to the Interoperability Information or to the proper interpretation of the terms "Interoperability" or "Interoperability Information" as used in the 2004 Decision.*[2]

c.    *All documents that contain, constitute, reflect, evidence, or refer to any communication between Sun or Morgan Lewis and the Commission, the Monitoring Trustee or OTR about Microsoft's compliance or alleged failure to comply with*

---

[1]    Points 1, 2 and 3 of Microsoft's request.

[2]    Point 4 of Microsoft's request.

*European Community competition laws, including without limitation the 2004 Decision, the Article 24(a)(1) Decision, or the SO.[3]*

d.    *All documents that contain, constitute, reflect, evidence, or refer to any communication between Sun or Morgan Lewis and any other third party about Microsoft's compliance or alleged failure to comply with European Community competition laws, including without limitation the 2004 Decision, the Article 24(a)(1) Decision, or the SO.[4]*

2.    Given the importance of the policy issues that this matter raises, the Directorate-General for Competition of the European Commission wishes to state its position on these issues. The Commission may seek leave from the Court to intervene at a later date by filing an *amicus curiae* brief, should this be deemed necessary and appropriate, after following its decision making procedures.

3.    DG COMP wishes to underline that it does not intend to support or otherwise assist any of the parties to the pending litigation.

### 1.2.    The framework within which the Commission carries out its antitrust investigations

4.    The Commission is the institution entrusted within the European Union with the enforcement of the competition provisions of the Treaty establishing the European Community ("the EC Treaty"), notably Articles 81 ("agreements in restraint of trade") and 82 ("abuse of dominance")[5]. The Commission's powers of competition enforcement are stated in Council Regulation 1/2003 (previously in Council Regulation No. 17/62) which provides for specific means for investigating infringements of European antitrust rules, notably issuing formal requests for information, taking oral statements and conducting on-site inspections. Commission Regulation No. 773/2004 provides for more precise rules governing Commission procedures.

5.    As the European Court of Justice points out in its Hoffman-La Roche judgment the "*observance of the right to be heard is in all proceedings in which sanctions, in particular fines or penalty payments, may be imposed a fundamental principle of Community law which must be respected [...]*".[6]

---

[3]    Points 5, 6 and 7 of Microsoft's request.

[4]    Point 8 of Microsoft's request.

[5]    Articles 81 and 82 provide for provisions comparable to those of Sections (1) and (2) of the Sherman Act.

[6]    Judgment of the Court of 13 February 1979 in Case 85/76, Hoffmann-La Roche & Co. AG v Commission [1979] ECR 461.

6.     In line with this judgment the Commission has established a number of procedural rules which are intended to guarantee the application of the principle of equality of arms and the protection of the rights of defence in proceedings before the Commission. In particular, the rules on access to file are intended to enable the effective exercise of the rights of defence by defendants in a Commission proceeding.

7.     The "Commission file" in a competition investigation (hereinafter also referred to as "the file") consists of all documents, which have been obtained, produced and/or assembled by DG COMP, during the investigation.[7] Access to file is granted to defendants in proceedings before the Commission to all documents making up the Commission file with the exception of internal documents, business secrets of other undertakings, or other confidential information after a Statement of Objections has been addressed to them.[8]

8.     Access is obviously only granted to those documents of the administrative procedure which relate to the objections raised by the Commission. The European Court of Justice confirmed that "*the Commission is allowed to preclude from the administrative procedure evidence which has no relation to the allegations of fact and of law in the Statement of Objections and which therefore has no relevance to the investigation*".[9]

9.     In case a defendant believes that the Commission services have erroneously withheld documents which are necessary for its defence it can make a request for a decision of the Hearing Officer, who is responsible for safeguarding the rights of defence in Commission proceedings.[10]

10.     A decision by the Hearing Officer not to disclose certain documents to a defendant can be reviewed by the European Court of First Instance ("CFI"). Similary, an undertaking which deems that certain of its business secrets on the Commission file should not be disclosed to the defendant pursuant to a decision by the Hearing Officer can appeal to the CFI.[11]

---

[7]     See Commission Notice on the rules for access to the Commission file in cases pursuant to Articles 81and 82 of the EC Treaty, Articles 53, 54 and 57 of the EEA Agreement and Council Regulation(EC) No 139/2004, OJ 2005/C 325/07 of 22/12/2005 ("Notice on access to file"), at paragraph 7. This notice replaces an earlier but similar Commission Notice of 1997 on access to file, OJ C 23 of 23.01.1997.

[8]     Notice on access to file, at paragraph 10.

[9]     Judgment of the Court of 7 January 2004 in Joined Cases C-204/00 P, C-205/00 P, C-211/00 P, C-213/00 P, C-217/00 P and C-219/00 P, Aalborg Portland, not yet reported, at paragraph 126.

[10]     See Articles 1 and 8 of the Commission Decision of 23 May 2001 on the terms of reference of hearing officers in certain competition proceedings, OJ 2001 L 162/21 of 19.6.2001.

[11]     See Article 9 of the Commission Decision of 23 May 2001 on the terms of reference of hearing officers in certain competition proceedings.

11.    Documents obtained through access to file may only be used for the purpose of the Commission's proceedings. This is underlined in Article 15 of Regulation 773/2004, which stipulates that documents obtained through access to file may only be used "[...] *for the purposes of judicial and administrative procedures for the application of Articles 81 and 82 of the Treaty*". Furthermore, the Notice on access to file states "*Should the information be used for a different purpose, at any point in time, with the involvement of an outside counsel, the Commission may report the incident to the bar of that counsel, with a view to disciplinary action*".[12] Lastly, the Commission makes that obligation clear in a standard letter to the parties when addressing to them a Statement of Objections and providing access to file.

### 1.3.    The proceedings against Microsoft pursuant to Article 24 of Regulation 1/2003

12.    On 24 March 2004, the Commission adopted a decision in Case COMP/C-3/37.792 – Microsoft ("the Decision") in which it concluded that Microsoft had abused its dominant position in PC operating systems by (i) refusing to provide interoperability information necessary for competitors to be able to effectively compete in the work group server operating system market and (ii) tying its Windows Media Player with the Windows PC operating system. The Commission imposed a €497,196,304 fine on Microsoft and ordered it to bring the above-mentioned infringements of Article 82 EC to an end (Article 4 of the Decision).

13.    In particular, the Commission ordered Microsoft to supply interoperability information to interested undertakings on reasonable and non-discriminatory terms ("the interoperability remedy", Article 5 of the Decision) and to offer a full-functioning version of its Windows PC operating system which does not incorporate Windows Media Player ("the tying remedy", Article 6 of the Decision). The Decision also provided for the establishment of a monitoring mechanism, including a Monitoring Trustee, whose role is to provide expert advice to the Commission on Microsoft's compliance with the Decision. Microsoft was granted a deadline of 120 days to implement the interoperability remedy and a deadline of 90 days to implement the tying remedy. The obligations imposed by the Decision were suspended pending the Court of First Instance's consideration of Microsoft's request for interim measures. This application for interim measures was dismissed by the President of the Court of First Instance on 22 December 2004.[13]

14.    On 28 July 2005, the Commission adopted a decision on the monitoring mechanism foreseen in Article 7 of the Decision.[14] This decision sets out *inter alia* the

---

[12]    Commission Notice on the rules for access to the Commission file in cases pursuant to Articles 81 and 82 of the EC Treaty, Articles 53,54 and 57 of the EEA Agreement and Council Regulation (EC) No139/2004, in OJ 2005/C 325/07 of 22/12/2005.

[13]    Order of the President of the Court of First Instance of 22 December 2004 in Case T-201/04 R, Microsoft, not yet reported.

[14]    C(2005) 2988 final.

framework under which the Monitoring Trustee, whose role is to provide expert advice to the Commission on Microsoft's compliance with the Decision, will work. Subsequently, the Commission invited Microsoft to put forward candidates for the position of Monitoring Trustee. After a selection procedure, on 4 October 2005, on the basis of a shortlist of candidates submitted by Microsoft, the Commission appointed as Monitoring Trustee Professor Neil Barrett, a British computer science expert.

15.    Article 24 of Regulation 1/2003 grants the Commission the power to impose on undertakings daily penalty payments not exceeding 5% of the average daily turnover in the preceding business year in order to compel them to put an end to an infringement of Article 81 or 82 EC, in accordance with a prohibition decision taken pursuant to Article 7 of Regulation 1/2003 (Article 24(1)(a)).

16.    On the basis of an opinion from its outside technical experts OTR on the Technical Documentation, the Commission decided to open proceedings against Microsoft in order to compel it to comply with its obligations stemming from the Decision. Consequently, on 10 November 2005, the Commission adopted a decision pursuant to Article 24(1) of Regulation 1/2003 ("the Art 24(1) Decision"). This decision is the first step in a procedure pursuant to Article 24 of Regulation 1/2003. By means of this decision, a periodic penalty payment of €2 million per day was imposed on Microsoft as from 15 December 2005 in the event that it were not to comply with Article 5(a) and (c) of the Decision, i.e. its obligations to (i) supply complete and accurate interoperability information; and (ii) to make that information available on reasonable terms.

17.    In the light of the Monitoring Trustee's reports on the state of the Technical Documentation provided to the Commission by Microsoft in response to the Art 24(1) Decision, the Commission, on 21 December 2005, adopted a Statement of Objections in which it took the preliminary view that Microsoft had not yet complied with its obligation to supply complete and accurate interoperability information. A hearing on the objections raised by the Commission is scheduled for 30-31 March 2006.

**2.    DG COMP'S POSITION WITH REGARD TO MICROSOFT'S REQUEST FOR DISCOVERY**

**2.1. Microsoft's request to obtain all documents exchanged between the Commission, the Monitoring Trustee, OTR and third parties relating to the Interoperability Information or to the proper interpretation of the terms "Interoperability" or "Interoperability Information"**

18.    After the issuance of the Statement of Objections Microsoft has requested access to the documents identified in the annex to the Statement of Objections, including to all documents exchanged between the Commission services and the Trustee and all documents exchanged between the Commission services and OTR in relation to all matters covered by the Statement of Objections.[15] By letter of 30 January 2006 Microsoft

---

[15]    E-mail from Jean-Yves Art, Microsoft's Director of Competition EMEA, of 23 December 2005.

requested access to documents on the Commission's file pertaining to the correspondence between the Commission on the one hand and third parties such as Sun, Oracle, IBM and Novell on the other as well as access to documents reflecting discussions that have taken place between third parties, in particularly Sun, IBM and OTR and the Trustee.[16]

19.    Following Microsoft's request the Hearing Officer took the position that the correspondence between the Commission services and the Trustee constitutes internal documents which are inaccessible to Microsoft whilst, after confidentiality waivers had been provided by third parties, Microsoft was given access to the communication between the Commission and third parties that relates to the issues raised in the Statement of Objections of 21 December 2005.[17]

20.    The Commission has therefore given Microsoft access to all third party documents in its possession. However, by letter of 2 March 2006 Microsoft specifically requested to have access to *"any material submitted by its adversaries to the Trustee and OTR"*.[18]

21.    This request is currently under scrutiny by the Hearing Officer. In order to verify whether Microsoft's request is well founded the Commission has asked OTR and the Trustee to disclose and transmit to the Commission any documents they have directly, without the Commission's knowledge, received from third parties or Microsoft in carrying out their duties as well as any minutes they have taken as regards communications with third parties or Microsoft.

22. It came as a surprise to DG COMP that Microsoft decided to turn to a US court for assistance under 28 U.S.C §1782 in order to gain access to documents which it had one day before sought to obtain from the Commission and on the disclosure of which a proceeding is currently pending before the Commission's Hearing Officer.

23. DG COMP takes the position the Microsoft's rights of defence in relation to the objections raised in the Statement of Objections of 21 December 2005 are adequately protected by the European rules on access to file. Therefore an application by Microsoft on the basis 28 U.S.C §1782 is not objectively necessary but rather an attempt to circumvent the established rules on access to file in proceedings before the Commission.

---

[16]    Letter from Microsoft's counsel Ian Forrester to the Hearing Officer of 30 January 2005.

[17]    Letter from the Hearing Officer to Ian Forrester of 8 February 2006.

[18]    Letter from Georg Berrisch, Microsoft's counsel, of 2 March 2006.

**2.2 Microsoft's request to obtain all documents exchanged between the Commission, the Monitoring Trustee or OTR and third parties about Microsoft's compliance or alleged failure to comply with European Community competition laws, including without limitation the 2004 Decision, the Article 24(1)(a) Decision**

24.    With regard to Microsoft's request to get access to documents which are not related to the Statement of Objections of 21 December 2005 the DG COMP would like to stress that such documents are not necessary for Microsoft to defend itself as the Commission has not a this stage raised any objections vis-à-vis Microsoft on these other issues. Microsoft will be given proper access to file once and if the Commission issues a Statement of Objections related to these matters.

25.    Microsoft's request to get access to such documents before a Statement of Objections has been issued is therefore unduly intrusive and totally at odds with the European rules on access to file which such a request would circumvent and undermine.

26.    The European Court of First Instance has indeed recognised that *"there is no right under Community law to be informed of the state of the administrative procedure before the statement of objections is formally issued"* and that, if there were *"a right to be informed of an investigation in circumstances where suspicions exist in respect of an undertaking"*, this would *"seriously hamper the work of the Commission"*.[19]

27.    Therefore a premature request by Microsoft for disclosure under 28 U.S.C § 1782 in order to find out if a company has filed a document pertaining to Microsoft's compliance or alleged failure to comply with European Community competition laws, or more specifically on an issue where a Statement of Objections has not yet been adopted is apt to seriously harm the Commission's investigation process and circumvent the European rules on access to file.


**3.    CONCLUSION**

28.    In sum, DG COMP is of the opinion that the described European access to file rules properly protect Microsoft's rights of defence and that the discovery requests presented by Microsoft are an attempt to circumvent these well established rules. DG COMP therefore sees no necessity for Microsoft to avail itself of the assistance of US courts pursuant to 28 U.S.C § 1782.


*Brussels, 9 March 2006*

---

[19]    Judgment of the Court of First Instance of 8 July 2004 in Case T-50/00 Dalmine v. Commission, not yet reported, paragraphs 83 and 110.

# Exhibit B

Westlaw.

124 S.Ct. 2466                                                                                  Page 1
542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355, 72 USLW 4528, 2004-1 Trade Cases P 74,453, 58 Fed.R.Serv.3d
696, 71 U.S.P.Q.2d 1001, 64 Fed. R. Evid. Serv. 742, 04 Cal. Daily Op. Serv. 5382, 2004 Daily Journal D.A.R.
7371
**(Cite as: 542 U.S. 241, 124 S.Ct. 2466)**

▷

**Briefs and Other Related Documents**

Supreme Court of the United States
INTEL CORPORATION, Petitioner,
v.
ADVANCED MICRO DEVICES, INC.
No. 02-572.

Argued April 20, 2004.
Decided June 21, 2004.

**Background:** After filing complaint against
competitor with the Directorate General-Competition
of the Commission of the European Communities
alleging that competitor's actions violated treaty
establishing Commission, microprocessor company
sought discovery under federal statute permitting
domestic discovery for use in foreign proceedings.
Competitor objected. The United States District
Court for the Northern District of California, William
A. Ingram, Senior District Judge, ruled in
competitor's favor, based on finding that statute did
not authorize the requested discovery.
Microprocessor company appealed. The United
States Court of Appeals for the Ninth Circuit,
Michael Daly Hawkins, Circuit Judge 292 F.3d 664,
reversed and remanded. Certiorari was granted.

**Holdings:** The Supreme Court, Justice Ginsburg,
held that:

(1) district court had authority to entertain discovery
request, but was not required to provide judicial
assistance;

(2) complainant qualified as "interested person"
within compass of statute;

(3) Commission was "tribunal" under statute when it
acted as first-instance decisionmaker;

(4) proceeding before foreign tribunal did not have
to be pending or at least imminent for applicant to
invoke federal statute successfully; abrogating In re
Ishihara Chemical Co., 251 F.3d 120;

(5) federal statute permitting domestic discovery for
use in foreign proceedings did not impose foreign
discoverability requirement; abrogating In re
Application of Asta Medica, S.A., 981 F.2d 1, In re
Request for Assistance from Ministry of Legal Affairs

of Trinidad and Tobago, 848 F.2d 1151;

(6) applicant also did not have to show that United
States law would allow discovery in domestic
litigation analogous to foreign proceeding; and

(7) Supreme Court would not exercise its
supervisory authority to adopt rules barring
discovery, instead allowing lower courts to
determine, on remand using relevant factors outlined
by Court, what if any discovery assistance was
appropriate.
Affirmed.

Justice Scalia filed opinion concurring in judgment.

Justice Breyer filed dissenting opinion.

Justice O'Connor did not participate.

West Headnotes

**[1] Federal Civil Procedure** ⌖1312
170Ak1312 Most Cited Cases
Under statute permitting domestic discovery for use
in foreign proceedings, district court had authority to
entertain discovery request by antitrust complainant
before Commission of the European Communities.
28 U.S.C.A. § 1782(a).

**[2] Federal Civil Procedure** ⌖1312
170Ak1312 Most Cited Cases
Statute permitting domestic discovery for use in
foreign proceedings authorizes, but does not require,
federal district court to provide assistance to
complainant in European Commission proceeding
that leads to dispositive ruling, i.e., final
administrative action both responsive to complaint
and reviewable in court. 28 U.S.C.A. § 1782(a).

**[3] Federal Civil Procedure** ⌖1312
170Ak1312 Most Cited Cases
Complainant before Commission of the European
Communities qualifies as "interested person" within
compass of federal statute permitting domestic
discovery for use in foreign proceedings; statute
makes discovery available to complainants who do
not have status of private litigants and are not
sovereign agents. 28 U.S.C.A. § 1782(a).

**[4] Federal Civil Procedure** ⌖1312

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

124 S.Ct. 2466                                                                              Page 2
542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355, 72 USLW 4528, 2004-1 Trade Cases P 74,453, 58 Fed.R.Serv.3d 696, 71 U.S.P.Q.2d 1001, 64 Fed. R. Evid. Serv. 742, 04 Cal. Daily Op. Serv. 5382, 2004 Daily Journal D.A.R. 7371
**(Cite as: 542 U.S. 241,  124 S.Ct. 2466)**

170Ak1312 Most Cited Cases
Commission of the European Communities is "tribunal" under federal statute permitting domestic discovery for use in foreign proceedings when it acts as first-instance decisionmaker.    28 U.S.C.A. § 1782(a).

**[5] Federal Civil Procedure** ⬤➞1312
170Ak1312 Most Cited Cases
Federal statute permitting domestic discovery for use in foreign proceedings does not come into play only when adjudicative proceedings are "pending" or "imminent" and instead requires only that dispositive ruling by European Commission, reviewable by the European courts, be within reasonable contemplation; abrogating *In re Ishihara Chemical Co., 251 F.3d 120.* 28 U.S.C.A. § 1782(a).

**[6] Federal Civil Procedure** ⬤➞1312
170Ak1312 Most Cited Cases
Federal statute permitting domestic discovery for use in foreign proceedings does not impose blanket "foreign discoverability" requirement that evidence sought from district court be discoverable under law governing foreign proceeding; abrogating *In re Application of Asta Medica, S.A., 981 F.2d 1, In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago, 848 F.2d 1151.* 28 U.S.C.A. § 1782(a).

**[7] Federal Civil Procedure** ⬤➞1312
170Ak1312 Most Cited Cases
Applicant under federal statute permitting domestic discovery for use in foreign proceedings need not show that United States law would allow discovery in domestic litigation analogous to the foreign proceeding. 28 U.S.C.A. § 1782(a).

**[8] Federal Civil Procedure** ⬤➞1312
170Ak1312 Most Cited Cases
When person from whom discovery is sought under federal statute permitting domestic discovery for use in foreign proceedings is participant in foreign proceeding, need for statutory aid generally is not as apparent as it ordinarily is when evidence is sought from nonparticipant in matter arising abroad as foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence; in contrast, nonparticipants in foreign proceeding may be outside foreign tribunal's jurisdictional reach and hence, their evidence, available in United States, may be unobtainable

absent aid of statute.  28 U.S.C.A. § 1782(a).

**[9] Federal Civil Procedure** ⬤➞1312
170Ak1312 Most Cited Cases
Court presented with request for domestic discovery for use in foreign proceeding may take into account nature of foreign tribunal, character of proceedings underway abroad, and receptivity of foreign government or court or agency abroad to U.S. federal-court judicial assistance; furthermore, other grounds may be relevant in determining whether discovery order should be granted in particular case. 28 U.S.C.A. § 1782(a).

**[10] Federal Civil Procedure** ⬤➞1312
170Ak1312 Most Cited Cases
In ruling on request for domestic discovery to be used in foreign proceeding, district court can consider whether statutory request conceals attempt to circumvent foreign proof-gathering restrictions or other policies of foreign country or United States; also, unduly intrusive or burdensome requests may be rejected or trimmed. 28 U.S.C.A. § 1782(a).

**[11] Federal Courts** ⬤➞444
170Bk444 Most Cited Cases

**[11] Federal Courts** ⬤➞462
170Bk462 Most Cited Cases
Supreme Court would not exercise its supervisory authority to adopt rules barring domestic discovery by foreign antitrust complainant for use in proceedings before European Commission; instead, Court would allow lower courts to determine on remand, using relevant factors it had outlined, what, if any, discovery assistance was appropriate. 28 U.S.C.A. § 1782(a).
                   **\*\*2468 \*241 Syllabus  [FN\*]**

FN\* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.  See *United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.*

In 1964, pursuant to a recommendation by the Commission on International Rules of Judicial Procedure (Rules Commission), and as part of an endeavor to improve judicial assistance between the United States and foreign countries, Congress completely revised 28 U.S.C. § 1782(a).  In its current form, § 1782(a) provides that a federal

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

124 S.Ct. 2466                                                                                        Page 3
542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355, 72 USLW 4528, 2004-1 Trade Cases P 74,453, 58 Fed.R.Serv.3d 696, 71 U.S.P.Q.2d 1001, 64 Fed. R. Evid. Serv. 742, 04 Cal. Daily Op. Serv. 5382, 2004 Daily Journal D.A.R. 7371
**(Cite as: 542 U.S. 241, 124 S.Ct. 2466)**

district court "may order" a person residing or found in the district to give testimony or produce documents "for use in a proceeding in a foreign or international tribunal ... upon the application of any interested person." The 1964 overhaul of § 1782(a) deleted the prior law's words, "in any judicial proceeding *pending* in any court in a foreign country." (Emphasis added.)

Respondent Advanced Micro Devices, Inc. (AMD), filed an antitrust complaint against petitioner Intel Corporation (Intel) with the Directorate-General for Competition (DG-Competition) of the Commission of the European Communities (Commission), **2469 alleging that Intel had violated European competition law. After the DG-Competition declined AMD's recommendation to seek documents Intel had produced in a private antitrust suit in an Alabama federal court, AMD petitioned the District Court for the Northern District of California under § 1782(a) for an order directing Intel to produce those documents. The District Court concluded that § 1782(a) did not authorize such discovery. The Ninth Circuit reversed and remanded with instructions to rule on the application's merits. The appeals court observed that § 1782(a) includes matters before bodies of a quasi-judicial or administrative nature, and, since 1964, has contained no limitation to foreign proceedings that are "pending." A proceeding judicial in character, the Ninth Circuit noted, was a likely sequel to the Commission investigation. The Court of Appeals rejected Intel's argument that § 1782(a) called for a threshold showing that the documents AMD sought, if located in the European Union, would have been discoverable in the Commission investigation. Nothing in § 1782(a)'s language or legislative history, the Ninth Circuit said, required a "foreign-discoverability" rule of that order.

*Held:* Section 1782(a) authorizes, but does not require, the District Court to provide discovery aid to AMD. Pp. 2477-2484.

1. To provide context, the Court summarizes how the Commission, acting through the DG-Competition, enforces European competition *242 laws. Upon receiving a complaint, or *sua sponte,* the DG-Competition conducts a preliminary investigation into alleged violations of those laws. The DG-Competition may consider information provided by a complainant, and it may seek information from a complaint's target. The DG-Competition's

investigation results in a formal written decision whether to pursue the complaint. If the DG-Competition decides not to proceed, its decision may be reviewed by the Court of First Instance and, ultimately, the Court of Justice for the European Communities (European Court of Justice). When the DG-Competition pursues a complaint, it typically serves the investigation's target with a formal "statement of objections" and advises the target of its intention to recommend a decision finding an antitrust violation. The target is entitled to a hearing before an independent officer, who provides a report to the DG-Competition. Once the DG-Competition makes its recommendation, the Commission may dismiss the complaint or issue a decision holding the target liable and imposing penalties. The Commission's final action is subject to review in the Court of First Instance and the European Court of Justice. Lacking formal "litigant" status in Commission proceedings, a complainant nonetheless has significant procedural rights. Important here, a complainant may submit relevant information to the DG-Competition and seek judicial review of the Commission's disposition. P. 2477.

2. Section 1782(a)'s language, confirmed by its context, warrants the conclusion that the provision authorizes, but does not require, a federal district court to provide assistance to a complainant in a Commission proceeding that leads to a dispositive ruling. The Court therefore rejects the categorical limitations Intel would place on the statute's reach. Pp. 2477- 2482.

(a) A complainant before the Commission, such as AMD, qualifies as an "interested person" within § 1782(a)'s compass. The Court rejects Intel's contention that "interested person[s]" does not include complainants, but encompasses only litigants, foreign sovereigns, and a sovereign's designated agents. To support its **2470 reading, Intel highlights § 1782's caption, "[a]ssistance to foreign and international tribunals and to *litigants* before such tribunals" (emphasis added). A statute's caption, however, cannot undo or limit its text's plain meaning. *Trainmen v. Baltimore & Ohio R. Co.,* 331 U.S. 519, 529, 67 S.Ct. 1387, 91 L.Ed. 1646. Section 1782(a) plainly reaches beyond the universe of persons designated "litigant." With significant participation rights in Commission proceedings, the complainant qualifies as an "interested person" within any fair construction of that term. P. 2478.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

124 S.Ct. 2466                                                                                                          Page 4
542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355, 72 USLW 4528, 2004-1 Trade Cases P 74,453, 58 Fed.R.Serv.3d
696, 71 U.S.P.Q.2d 1001, 64 Fed. R. Evid. Serv. 742, 04 Cal. Daily Op. Serv. 5382, 2004 Daily Journal D.A.R.
7371
**(Cite as: 542 U.S. 241, 124 S.Ct. 2466)**

(b) The assistance AMD seeks meets § 1782(a)'s specification "for use in a foreign or international tribunal." The Commission qualifies *243 as a "tribunal" when it acts as a first-instance decisionmaker. Both the Court of First Instance and the European Court of Justice are tribunals, but not proof-takers. Their review is limited to the record before the Commission. Hence, AMD could "use" evidence in those reviewing courts only by submitting it to the Commission in the current, investigative stage. In adopting the Rules Commission's recommended replacement of the term "any judicial proceeding" with the words "a proceeding in a foreign or international tribunal," Congress opened the way for judicial assistance in foreign administrative and quasi-judicial proceedings. This Court has no warrant to exclude the Commission, to the extent that it acts as a first-instance decisionmaker, from § 1782(a)'s ambit. P. 2479.

(c) The "proceeding" for which discovery is sought under § 1782(a) must be within reasonable contemplation, but need not be "pending" or "imminent." The Court rejects Intel's argument that the Commission *investigation* launched by AMD's complaint does not qualify for § 1782(a) assistance. Since the 1964 revision, which deleted the prior law's reference to "pending," Congress has not limited judicial assistance under § 1782(a) to "pending" adjudicative proceedings. This Court presumes that Congress intends its statutory amendments to have real and substantial effect. *Stone v. INS,* 514 U.S. 386, 397, 115 S.Ct. 1537, 131 L.Ed.2d 465. The 1964 revision's legislative history corroborates Congress' recognition that judicial assistance would be available for both foreign proceedings and *investigations.* A 1996 amendment clarifies that § 1782(a) covers "criminal investigations conducted before formal accusation." Nothing in that amendment, however, suggests that Congress meant to rein in, rather than to confirm, by way of example, the range of discovery § 1782(a) authorizes. Pp. 2479-2480.

(d) Section 1782(a) does not impose a foreign-discoverability requirement. Although § 1782(a) expressly shields from discovery matters protected by legally applicable privileges, nothing in § 1782(a)'s text limits a district court's production-order authority to materials discoverable in the foreign jurisdiction if located there. Nor does the legislative history suggest that Congress intended to impose a blanket foreign-discoverability rule on § 1782(a) assistance. The Court rejects two policy concerns raised by Intel in support of a foreign-discoverability limitation on § 1782(a) aid--avoiding offense to foreign governments, and maintaining parity between litigants. While comity and parity concerns may be legitimate touchstones for a district court's exercise of discretion in particular cases, they do not warrant construction of § 1782(a)'s text to include a generally applicable foreign-discoverability rule. Moreover, the Court questions whether foreign governments would be offended by a domestic prescription permitting, but not requiring, *244 judicial assistance. **2471 A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions; such reasons do not necessarily signal objection to aid from United States federal courts. A foreign tribunal's reluctance to order production of materials present in the United States similarly may signal no resistance to the receipt of evidence gathered pursuant to § 1782(a). When the foreign tribunal would readily accept relevant information discovered in the United States, application of a categorical foreign-discoverability rule would be senseless. Concerns about parity among adversaries in litigation likewise provide no sound basis for a cross-the-board foreign-discoverability rule. When information is sought by an "interested person," a district court can condition relief upon reciprocal information exchange. Moreover, the foreign tribunal can place conditions on its acceptance of information, thereby maintaining whatever measure of parity it deems appropriate. The Court also rejects Intel's suggestion that a § 1782(a) applicant must show that United States law would allow discovery in domestic litigation analogous to the foreign proceeding. Section 1782 is a provision for assistance to tribunals abroad. It does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist here. Comparisons of that order can be fraught with danger. For example, the United States has no close analogue to the Commission regime, under which AMD lacks party status and can participate only as a complainant. Pp. 2480-2482.

3. Whether § 1782(a) assistance is appropriate in this case is yet unresolved. To guide the District Court on remand, the Court notes factors relevant to that question. First, when the person from whom discovery is sought is a participant in the foreign proceeding, as Intel is here, the need for § 1782(a)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

124 S.Ct. 2466

Page 5

542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355, 72 USLW 4528, 2004-1 Trade Cases P 74,453, 58 Fed.R.Serv.3d 696, 71 U.S.P.Q.2d 1001, 64 Fed. R. Evid. Serv. 742, 04 Cal. Daily Op. Serv. 5382, 2004 Daily Journal D.A.R. 7371

**(Cite as: 542 U.S. 241, 124 S.Ct. 2466)**

aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid. Second, a court presented with a § 1782(a) request may consider the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government, court, or agency to federal-court judicial assistance. Further, the grounds Intel urged for categorical limitations on § 1782(a)'s scope may be relevant in determining whether a discovery order should be granted in a particular case. Specifically, a district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign *245 country or the United States. Also, unduly intrusive or burdensome requests may be rejected or trimmed. The Court declines, at this juncture, Intel's suggestion that it exercise its supervisory authority to adopt rules barring § 1782(a) discovery here. Any such endeavor should await further experience with § 1782(a) applications in the lower courts. Several facets of this case remain largely unexplored. While Intel and its *amici* are concerned that granting AMD's application in any part may yield disclosure of confidential information, encourage "fishing expeditions," and undermine the Commission's program offering prosecutorial leniency for admissions of wrongdoing, no one has suggested that AMD's complaint to the Commission is pretextual. Nor has it been shown that § 1782(a)'s preservation of legally applicable privileges and the controls **2472 on discovery available under Federal Rule of Civil Procedure 26(b)(2) and (c) would be ineffective to prevent discovery of Intel's confidential information. The Court leaves it to the courts below, applying closer scrutiny, to assure an airing adequate to determine what, if any, assistance is appropriate. Pp. 2482-2484.

292 F.3d 664, affirmed.

GINSBURG, J., delivered the opinion of the Court, in which REHNQUIST, C.J., and STEVENS, KENNEDY, SOUTER, and THOMAS, JJ., joined. SCALIA, J., filed an opinion concurring in the judgment. BREYER, J., filed a dissenting opinion.

O'CONNOR, J., took no part in the consideration or decision of the case.

Seth P. Waxman, Washington, DC, for petitioner.

Carter G. Phillips, Washington, DC, for Commission of the European Communities as amicus curiae, by special leave of the Court, supporting the petitioner.

Patrick Lynch, Los Angeles, CA, for respondent.

Jeffrey P. Minear, Washington, DC, for United States as amicus curiae, by special leave of the Court, supporting respondent.

Patrick Lynch, Counsel of Record, O'Melveny & Myers LLP, Los Angeles, California, Jonathan D. Hacker, O'Melveny & Myers LLP, Washington, D.C., for respondent.

Joseph Kattan Gibson, Dunn & Crutcher LLP, Washington, D.C., James A. Murray, Intel Corporation, Santa Clara, CA, Seth P. Waxman, Counsel of Record, Jonathan E. Nuechterlein, Jonathan H. Siegelbaum, Wilmer, Cutler & Pickering, Washington, D.C., for petitioner.

*246 Justice GINSBURG delivered the opinion of the Court.

This case concerns the authority of federal district courts to assist in the production of evidence for use in a foreign or international tribunal. In the matter before us, respondent Advanced Micro Devices, Inc. (AMD) filed an antitrust complaint against petitioner Intel Corporation (Intel) with the Directorate-General for Competition of the Commission of the European Communities (European Commission or Commission). In pursuit of that complaint, AMD applied to the United States District Court for the Northern District of California, invoking 28 U.S.C. § 1782(a), for an order requiring Intel to produce potentially relevant documents. Section 1782(a) provides that a federal district court "may order" a person "resid[ing]" or "found" in the district to give testimony or produce documents "for use in a proceeding in a foreign or international tribunal ... upon the application of any interested person."

[1] Concluding that § 1782(a) did not authorize the requested discovery, the District Court denied AMD's application. The Court of Appeals for the Ninth

124 S.Ct. 2466                                                          Page 6
542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355, 72 USLW 4528, 2004-1 Trade Cases P 74,453, 58 Fed.R.Serv.3d 696, 71 U.S.P.Q.2d 1001, 64 Fed. R. Evid. Serv. 742, 04 Cal. Daily Op. Serv. 5382, 2004 Daily Journal D.A.R. 7371
(Cite as: 542 U.S. 241, 124 S.Ct. 2466)

Circuit reversed that determination and remanded the case, instructing the District Court to rule on the merits of AMD's application. In accord with the Court of Appeals, we hold that the District Court had authority under § 1782(a) to entertain AMD's discovery request. The statute, we rule, does not categorically bar the assistance AMD seeks: (1) A complainant before the European Commission, such as AMD, qualifies as an "interested person" within § 1782(a)'s compass; (2) the Commission **2473 is a § 1782(a) "tribunal" when it acts as a first-instance *247 decisionmaker; (3) the "proceeding" for which discovery is sought under § 1782(a) must be in reasonable contemplation, but need not be "pending" or "imminent"; and (4) § 1782(a) contains no threshold requirement that evidence sought from a federal district court would be discoverable under the law governing the foreign proceeding. We caution, however, that § 1782(a) authorizes, but does not require, a federal district court to provide judicial assistance to foreign or international tribunals or to "interested person[s]" in proceedings abroad. Whether such assistance is appropriate in this case is a question yet unresolved. To guide the District Court on remand, we suggest considerations relevant to the disposition of that question.

## I
### A

Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals. Congress first provided for federal-court aid to foreign tribunals in 1855; requests for aid took the form of letters rogatory forwarded through diplomatic channels. See Act of Mar. 2, 1855, ch. 140, § 2, 10 Stat. 630 (circuit court may appoint "a United States commissioner designated ... to make the examination of witnesses" on receipt of a letter rogatory from a foreign court); Act of Mar. 3, 1863, ch. 95, § 1, 12 Stat. 769 (authorizing district courts to respond to letters rogatory by compelling witnesses here to provide testimony for use abroad in "suit[s] for the recovery of money or property"). [FN1] In 1948, Congress substantially broadened the scope of assistance *248 federal courts could provide for foreign proceedings. That legislation, codified as § 1782, eliminated the prior requirement that the government of a foreign country be a party or have an interest in the proceeding. The measure allowed district courts to designate persons to preside at depositions "to be used in *any civil action* pending in any court in a foreign country with which the United

States is at peace." Act of June 25, 1948, ch. 646, § 1782, 62 Stat. 949 (emphasis added). The next year, Congress deleted "civil action" from § 1782's text and inserted " judicial proceeding." Act of May 24, 1949, ch. 139, § 93, 63 Stat. 103. See generally, Jones, International Judicial Assistance: Procedural Chaos and a Program for Reform, 62 Yale L.J. 515 (1953).

> FN1. "[A] *letter rogatory* is the request by a domestic court to a foreign court to take evidence from a certain witness." Jones, International Judicial Assistance: Procedural Chaos and a Program for Reform, 62 Yale L.J. 515, 519 (1953). See Smit, International Litigation under the United States Code, 65 Colum. L.Rev. 1015, 1027 (1965) (hereinafter Smit, International Litigation) (noting foreign courts' use of letters rogatory to request evidence-gathering aid from United States courts).

In 1958, prompted by the growth of international commerce, Congress created a Commission on International Rules of Judicial Procedure (Rules Commission) to "investigate and study existing practices of judicial assistance and cooperation between the United States and foreign countries with a view to achieving improvements." Act of Sept. 2, Pub.L. 85-906, § 2, 72 Stat. 1743; S.Rep. No. 2392, 85th Cong., 2d Sess., p. 3 (1958); Smit, International Litigation under the United States Code, 65 Colum. L.Rev. 1015-1016 (1965) (hereinafter Smit, International Litigation). Six years later, in 1964, Congress unanimously adopted legislation recommended by the Rules Commission; [FN2] the **2474 legislation included a complete revision of § 1782. See Act of Oct. 3, Pub.L. 88-619, § 9, 78 Stat. 997; Smit, International Litigation 1026-1035.

> FN2. The Rules Commission also drafted amendments to the Federal Rules of Civil and Criminal Procedure and a Uniform Interstate and International Procedure Act, recommended for adoption by individual States. See Fourth Annual Report of the Commission on International Rules of Judicial Procedure, H.R. Doc. No. 88, 88th Cong., 1st Sess., 2 (1963).

As recast in 1964, § 1782 provided for assistance in obtaining documentary and other tangible evidence as well as testimony. Notably, Congress deleted the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

124 S.Ct. 2466                                                                        Page 7
542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355, 72 USLW 4528, 2004-1 Trade Cases P 74,453, 58 Fed.R.Serv.3d
696, 71 U.S.P.Q.2d 1001, 64 Fed. R. Evid. Serv. 742, 04 Cal. Daily Op. Serv. 5382, 2004 Daily Journal D.A.R.
7371
(Cite as: 542 U.S. 241, 124 S.Ct. 2466)

words "in any judicial proceeding *pending* in any court in a foreign country," and replaced them with the phrase "in a proceeding in a foreign *249 or international tribunal." Brief for United States as *Amicus Curiae* 6, 4a-5a (emphasis added). While the accompanying Senate Report does not account discretely for the deletion of the word "pending," [fn3] IT EXPLAINS THAT CONgress introduced THe word "tribunal" to ensure that "assistance is not confined to proceedings before conventional courts," but extends also to "administrative and quasi-judicial proceedings." S.Rep. No. 1580, 88th Cong., 2d Sess., p. 7 (1964), U.S.Code Cong. & Admin.News 1964, pp. 3782, 3788; see H.R.Rep. No. 1052, 88th Cong., 1st Sess., p. 9 (1963) (same). Congress further amended § 1782(a) in 1996 to add, after the reference to "foreign or international tribunal," the words " including criminal investigations conducted before formal accusation." National Defense Authorization Act for Fiscal Year 1996, Pub.L. 104-106, § 1342(b), 110 Stat. 486. Section 1782(a)'s current text reads:

> FN3. See Smit, International Litigation 1026-1027, n. 72 (commenting that Congress eliminated the word "pending" in order "to facilitate the gathering of evidence prior to the institution of litigation abroad").

"The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person .... The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing ... [or may be] the Federal Rules of Civil Procedure.
"A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."

*250 B
AMD and Intel are "worldwide competitors in the microprocessor industry." 292 F.3d 664, 665 (C.A.9

2002). In October 2000, AMD filed an antitrust complaint with the Directorate-General for Competition (DG-Competition) of the European Commission. Ibid.; App. 41. "The European Commission is the executive and administrative organ of the European Communities." Brief for Commission of European Communities as *Amicus Curiae* 1 (hereinafter European Commission *Amicus Curiae*). The Commission exercises responsibility over the wide range of subject areas covered by the European Union treaty; those areas include the treaty provisions, and regulations thereunder, governing competition. See ibid.; Consolidated Versions of Treaty on **2475 European Union and Treaty Establishing European Community, Arts. 81 and 82, 2002 O.J. (C 325) 33, 64-65, 67 (hereinafter EC Treaty). The DG-Competition, operating under the Commission's aegis, is the European Union's primary antitrust law enforcer. European Commission *Amicus Curiae* 2. Within the DG-Competition's domain are anticompetitive agreements (Art. 81) and abuse of dominant market position (Art. 82). Ibid.; EC Treaty 64-65.

AMD's complaint alleged that Intel, in violation of European competition law, had abused its dominant position in the European market through loyalty rebates, exclusive purchasing agreements with manufacturers and retailers, price discrimination, and standard-setting cartels. App. 40-43; Brief for Petitioner 13. AMD recommended that the DG-Competition seek discovery of documents Intel had produced in a private antitrust suit, titled *Intergraph Corp. v. Intel Corp.*, brought in a Federal District Court in Alabama. 3 F.Supp.2d 1255 (N.D.Ala.1998), vacated 195 F.3d 1346 (C.A.Fed.1999), remanded, 88 F.Supp.2d 1288 (N.D.Ala.2000), aff'd 253 F.3d 695 (C.A.Fed.2001); App. 111; App. to Pet. for *251 Cert. 13a-14a. [FN4] After the DG-Competition declined to seek judicial assistance in the United States, AMD, pursuant to § 1782(a), petitioned the District Court for the Northern District of California [FN5] for an order directing Intel to produce documents discovered in the *Intergraph* litigation and on file in the federal court in Alabama. App. to Pet. for Cert. 13a-14a. AMD asserted that it sought the materials in connection with the complaint it had filed with the European Commission. Ibid. [FN6]

> FN4. The Alabama federal court granted summary judgment in Intel's favor in the *Intergraph* litigation, and the Court of

124 S.Ct. 2466                                                                                              Page 8
542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355, 72 USLW 4528, 2004-1 Trade Cases P 74,453, 58 Fed.R.Serv.3d
696, 71 U.S.P.Q.2d 1001, 64 Fed. R. Evid. Serv. 742, 04 Cal. Daily Op. Serv. 5382, 2004 Daily Journal D.A.R.
7371
(Cite as: 542 U.S. 241, 124 S.Ct. 2466)

Appeals for the Federal Circuit affirmed. See 253 F.3d, at 699. A protective order, imposed by the Alabama federal court, governs the confidentiality of all discovery in that case. App. 72-73.

FN5. Both Intel and AMD are headquartered in the Northern District of California. *Id.,* at 113.

FN6. AMD's complaint to the Commission alleges, *inter alia,* "that Intel has monopolized the worldwide market for Windows-capable i.e. x86, microprocessors." *Id.,* at 55-56. The documents from the *Intergraph* litigation relate to: "(a) the market within which Intel x86 microprocessors compete; (b) the power that Intel enjoys within that market; (c) actions taken by Intel to preserve and enhance its position in the market; and (d) the impact of the actions taken by Intel to preserve and enhance its market position." App. 55.

The District Court denied the application as "[un]supported by applicable authority." *Id.,* at 15a. Reversing that determination, the Court of Appeals for the Ninth Circuit remanded the case for disposition on the merits. 292 F.3d, at 669. The Court of Appeals noted two points significant to its decision: § 1782(a) includes matters before " 'bodies of a quasi-judicial or administrative nature,' " *id., at 667* (quoting *In re Letters Rogatory from Tokyo District,* 539 F.2d 1216, 1218-1219 (C.A.9 1976)); and, since 1964, the statute's text has contained "[no] requirement that the proceeding be 'pending,' " *ibid.* (quoting *252United States v. Sealed 1, Letter of Request for Legal Assistance from the Deputy Prosecutor Gen. of Russian Federation,* 235 F.3d 1200, 1204 (C.A.9 2000)); see *supra,* at 2474. A proceeding judicial in character, the Ninth Circuit further observed, was a likely sequel to the European Commission's investigation: "[The European Commission is] a body authorized to enforce the EC Treaty with written, binding decisions, enforceable through fines and penalties. [The Commission's] **2476 decisions are appealable to the Court of First Instance and then to the [European] Court of Justice. Thus, the proceeding for which discovery is sought is, at minimum, one leading to quasi-judicial proceedings." 292 F.3d, at 667; see *infra,* at 2477 (presenting synopsis of Commission proceedings and

judicial review of Commission decisions).

The Court of Appeals rejected Intel's argument that § 1782(a) called for a threshold showing that the documents AMD sought in the California federal court would have been discoverable by AMD in the European Commission investigation had those documents been located within the Union. 292 F.3d, at 668. Acknowledging that other Courts of Appeals had construed § 1782(a) to include a "foreign-discoverability" rule, the Ninth Circuit found "nothing in the plain language or legislative history of Section 1782, including its 1964 and 1996 amendments, to require a threshold showing [by] the party seeking discovery that what is sought be discoverable in the foreign proceeding," *id., at 669.* A foreign-discoverability threshold, the Court of Appeals added, would disserve § 1782(a)'s twin aims of "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Ibid.*

On remand, a Magistrate Judge found AMD's application "overbroad," and recommended an order directing AMD to submit a more specific discovery request confined to documents directly relevant to the European Commission investigation. App. to Brief in Opposition 1a-6a; Brief for Petitioner 15, n. 9. The District Court has stayed further *253 proceedings pending disposition of the questions presented by Intel's petition for certiorari. *iBid.;* see oRder VAcating hEaring dAte, nO. c 01-7033 MISC JW (ND CAl., nOv. 30, 2003) (stating "Intel may renotice its motion for de novo review of the Magistrate Judge's decision after the Supreme Court issues its ruling").

We granted certiorari, 540 U.S. 1003, 124 S.Ct. 531, 157 L.Ed.2d 408 (2003), in view of the division among the Circuits on the question whether § 1782(a) contains a foreign-discoverability requirement. [FN7] We now hold that § 1782(a) does not impose such a requirement. We also granted review on two other questions. First, does § 1782(a) make discovery available to complainants, such as AMD, who do not have the status of private "litigants" and are not sovereign agents? See Pet. for Cert. (i). Second, must a "proceeding" before a foreign "tribunal" be "pending" or at least "imminent" for an applicant to invoke § 1782(a) successfully? Compare *In re Letter of Request from Crown Prosecution Serv. of United Kingdom,* 870 F.2d 686,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

124 S.Ct. 2466
Page 9

542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355, 72 USLW 4528, 2004-1 Trade Cases P 74,453, 58 Fed.R.Serv.3d 696, 71 U.S.P.Q.2d 1001, 64 Fed. R. Evid. Serv. 742, 04 Cal. Daily Op. Serv. 5382, 2004 Daily Journal D.A.R. 7371

**(Cite as: 542 U.S. 241, 124 S.Ct. 2466)**

691 (C.A.D.C.1989) (proceeding must be "within reasonable contemplation"), with *In re Ishihara Chemical Co.,* 251 F.3d 120, 125 (C.A.2 2001) (proceeding must be "imminent--**2477 very likely to occur and very soon to occur"); *254In re International Judicial Assistance (Letter Rogatory) for Federative Republic of Brazil,* 936 F.2d 702, 706 (C.A.2 1991) (same). Answering "yes" to the first question and "no" to the second, we affirm the Ninth Circuit's judgment.

FN7. The First and Eleventh Circuits have construed § 1782(a) to contain a foreign-discoverability requirement. See *In re Application of Asta Medica, S. A.,* 981 F.2d 1, 7 (C.A.1 1992); *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago,* 848 F.2d 1151, 1156 (C.A.11 1988). The Fourth and Fifth Circuits have held that no such requirement exists if the § 1782(a) applicant is a foreign sovereign. See *In re Letter of Request from Amtsgericht Ingolstadt, F.R.G.,* 82 F.3d 590, 592 (C.A.4 1996); *In re Letter Rogatory from First Court of First Instance in Civil Matters, Caracas, Venezuela,* 42 F.3d 308, 310-311 (C.A.5 1995). In alignment with the Ninth Circuit, the Second and Third Circuits have rejected a foreign-discoverability requirement. See *In re Application of Gianoli Aldunate,* 3 F.3d 54, 59-60 (C.A.2 1993); *In re Bayer AG,* 146 F.3d 188, 193-194 (C.A.3 1998).

II

To place this case in context, we sketch briefly how the European Commission, acting through the DG-Competition, enforces European competition laws and regulations. The DG-Competition's "overriding responsibility" is to conduct investigations into alleged violations of the European Union's competition prescriptions. See European Commission *Amicus Curiae* 6. On receipt of a complaint or *sua sponte,* the DG-Competition conducts a preliminary investigation. *Ibid.* In that investigation, the DG-Competition "may take into account information provided by a complainant, and it may seek information directly from the target of the complaint." *Ibid.* "Ultimately, DG Competition's preliminary investigation results in a formal written decision whether to pursue the complaint. If [the DG-Competition] declines to proceed, that decision is subject to judicial review" by the Court of First

Instance and, ultimately, by the court of last resort for European Union matters, the Court of Justice for the European Communities (European Court of Justice). *Id.,* at 7; App. 50; see, *e.g.,* case T-241/97, *Stork Amsterdam BV v. Commission,* 2000 E.C.R. II-309, [2000] 5 C.M.L.R. 31 (Ct. 1st Instance 2000) (annulling Commission's rejection of a complaint). [FN8]

FN8. The Court of First Instance, which is "attached to the [European] Court of Justice," was established "to improve the judicial protection of individual interests, particularly in cases requiring the examination of complex facts, whilst at the same time reducing the workload of the [European] Court of Justice." C. Kerse, E.C. Antitrust Procedure 37 (3d ed.1994).

If the DG-Competition decides to pursue the complaint, it typically serves the target of the investigation with a formal "statement of objections" and advises the target of its intention to recommend a decision finding that the target has violated European competition law. European Commission *255 Amicus Curiae* 7. The target is entitled to a hearing before an independent officer, who provides a report to the DG-Competition. *Ibid.;* App. 18-27. Once the DG-Competition has made its recommendation, the European Commission may " dismis[s] the complaint, or issu[e] a decision finding infringement and imposing penalties." European Commission *Amicus Curiae* 7. The Commission's final action dismissing the complaint or holding the target liable is subject to review in the Court of First Instance and the European Court of Justice. *Ibid.;* App. 52-53, 89-90.

Although lacking formal "party" or "litigant" status in Commission proceedings, the complainant has significant procedural rights. Most prominently, the complainant may submit to the DG-Competition information in support of its allegations, and may seek judicial review of the Commission's disposition of a complaint. See European Commission *Amicus Curiae* 7-8, and n. 5; *Stork Amsterdam,* [2000] E.C.R. II, at 328-329, ¶¶ 51-53.

III

[2] As "in all statutory construction cases, we begin [our examination of § 1782] with the language of the statute." *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). The

124 S.Ct. 2466

Page 10

542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355, 72 USLW 4528, 2004-1 Trade Cases P 74,453, 58 Fed.R.Serv.3d 696, 71 U.S.P.Q.2d 1001, 64 Fed. R. Evid. Serv. 742, 04 Cal. Daily Op. Serv. 5382, 2004 Daily Journal D.A.R. 7371

(Cite as: 542 U.S. 241, 124 S.Ct. 2466)

language of § 1782(a), confirmed **2478 by its context, our examination satisfies us, warrants this conclusion: The statute authorizes, but does not require, a federal district court to provide assistance to a complainant in a European Commission proceeding that leads to a dispositive ruling, *i.e.*, a final administrative action both responsive to the complaint and reviewable in court. [FN9] Accordingly, we reject the categorical limitations Intel would place on the statute's reach.

> FN9. The dissent suggests that the Commission "more closely resembles a prosecuting authority, say, the Department of Justice's Antitrust Division, than an administrative agency that adjudicates cases, say, the Federal Trade Commission." *Post*, at 2486. That is a questionable suggestion in view of the European Commission's authority to determine liability and impose penalties, dispositions that will remain final unless overturned by the European courts. See *supra*, at 2477.

*256 A

[3] We turn first to Intel's contention that the catalog of "interested person[s]" authorized to apply for judicial assistance under § 1782(a) includes only "litigants, foreign sovereigns, and the designated agents of those sovereigns," and excludes AMD, a mere complainant before the Commission, accorded only "limited rights." Brief for Petitioner 10-11, 24, 26-27. Highlighting § 1782's caption, "[a]ssistance to foreign and international tribunals *and* to *litigants* before such tribunals," Intel urges that the statutory phrase "any interested person" should be read, correspondingly, to reach only "litigants." *Id.*, at 24 (internal quotation marks omitted, emphasis in original).

The caption of a statute, this Court has cautioned, "cannot undo or limit that which the [statute's] text makes plain." *Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 529, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947). The text of § 1782(a), "upon the application of any interested person," plainly reaches beyond the universe of persons designated "litigant." No doubt litigants are included among, and may be the most common example of, the "interested person [s]" who may invoke § 1782; we read § 1782's caption to convey no more. See, *e.g.*, *Whitman v. American Trucking Assns., Inc.*, 531 U.S. 457, 482-483, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001) (rejecting narrow

reading of 42 U.S.C. § 7511(a) based on caption in light of "specifically" broader coverage of provision's text).

The complainant who triggers a European Commission investigation has a significant role in the process. As earlier observed, see *supra*, at 2477, in addition to prompting an investigation, the complainant has the right to submit information for the DG-Competition's consideration, and may proceed to court if the Commission discontinues the investigation or dismisses the complaint. App. 52-53. Given these participation rights, a complainant "possess[es] a reasonable interest in obtaining [judicial] assistance," and therefore qualifies as an "interested person" within any fair construction of that term. See Smit, International Litigation *257 1027 ("any interested person" is "intended to include not only litigants before foreign or international tribunals, but also foreign and international officials as well as any other person whether he be designated by foreign law or international convention or merely possess a reasonable interest in obtaining the assistance"). [FN10]

> FN10. The term "interested person," Intel notes, also appears in 28 U.S.C. § 1696(a), a provision enacted concurrently with the 1964 revision of § 1782. Brief for Petitioner 27. Section 1696(a) authorizes federal district courts to "order service ... of any document issued in connection with a [foreign] proceeding" pursuant to a request made by the foreign tribunal "or upon application of any interested person." Intel reasons that "[t]he class of private parties qualifying as 'interested persons' for [service] purposes *must* of course be limited to litigants, because private parties ... cannot serve 'process' unless they have filed suit." *Ibid.* (emphasis in original). Section 1696(a), however, is not limited to service of *process;* it allows service of "any document" issued in connection with a foreign proceeding. As the Government points out by way of example: "[I]f the European Commission's procedures were revised to require a complainant to serve its complaint on a target company, but the complainant's role in the Commission's proceedings otherwise remained unchanged, [§ ]1696 would authorize the district court to provide that 'interested [person]' with

542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355, 72 USLW 4528, 2004-1 Trade Cases P 74,453, 58 Fed.R.Serv.3d
696, 71 U.S.P.Q.2d 1001, 64 Fed. R. Evid. Serv. 742, 04 Cal. Daily Op. Serv. 5382, 2004 Daily Journal D.A.R.
7371
**(Cite as: 542 U.S. 241, 124 S.Ct. 2466)**

assistance in serving that document." Brief for United States as *Amicus Curiae* 20, n. 11.

**\*\*2479 B**

[4] We next consider whether the assistance in obtaining documents here sought by an "interested person" meets the specification "for use in a foreign or international tribunal." Beyond question the reviewing authorities, both the Court of First Instance and the European Court of Justice, qualify as tribunals. But those courts are not proof-taking instances. Their review is limited to the record before the Commission. See Tr. of Oral Arg. 17. Hence, AMD could "use" evidence in the reviewing courts only by submitting it to the Commission in the current, investigative stage.

Moreover, when Congress established the Commission on International Rules of Judicial Procedure in 1958, see *supra*, at 2473-2474, it instructed the Rules Commission to recommend **\*258** procedural revisions "for the rendering of assistance to foreign courts *and quasi-judicial agencies*." § 2, 72 Stat. 1743 (emphasis added). Section 1782 had previously referred to "any judicial proceeding." The Rules Commission's draft, which Congress adopted, replaced that term with "a proceeding in a foreign or international tribunal." See *supra*, at 2474. Congress understood that change to " provid[e] the possibility of U.S. judicial assistance in connection with [administrative and quasi-judicial proceedings abroad]." S.Rep. No. 1580, at 7-8, U.S.Code Cong. & Admin.News 1964, pp. 3782, 3788; see Smit, International Litigation 1026-1027, and nn. 71, 73 ("[t]he term 'tribunal' ... includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts"; in addition to affording assistance in cases before the European Court of Justice, § 1782, as revised in 1964, "permits the rendition of proper aid in proceedings before the [European] Commission in which the Commission exercises quasi-judicial powers"). See also European Commission *Amicus Curiae* 9 ("[W]hen the Commission acts on DG Competition's final recommendation ... the investigative function blur[s] into decisionmaking."). We have no warrant to exclude the European Commission, to the extent that it acts as a first-instance decisionmaker, from § 1782(a)'s ambit. See 292 F.3d, at 667; *supra*, at 2478, n. 9.

**C**

[5] Intel also urges that AMD's complaint has not progressed beyond the investigative stage; therefore, no adjudicative action is currently or even imminently on the Commission's agenda. Brief for Petitioner 27-29.

Section 1782(a) does not limit the provision of judicial assistance to "pending" adjudicative proceedings. In 1964, when Congress eliminated the requirement that a proceeding be "judicial," Congress also deleted the requirement that a proceeding be "pending." See *supra*, at 2474. "When **\*259** Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." **\*\*2480***Stone v. INS*, 514 U.S. 386, 397, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995). The legislative history of the 1964 revision is in sync; it reflects Congress' recognition that judicial assistance would be available "whether the foreign or international proceeding *or investigation* is of a criminal, civil, administrative, or other nature." S.Rep. No. 1580, at 9, U.S.Code Cong. & Admin.News 1964, pp. 3782, 3789 (emphasis added).

In 1996, Congress amended § 1782(a) to clarify that the statute covers "criminal investigations conducted before formal accusation." See § 1342(b), 110 Stat. 486; *supra*, at 2474. Nothing suggests that this amendment was an endeavor to rein in, rather than to confirm, by way of example, the broad range of discovery authorized in 1964. See S.Rep. No. 1580, at 7, U.S.Code Cong. & Admin.News 1964, pp. 3782, 3788 ("[T]he [district] court[s] have discretion to grant assistance when proceedings are pending before investigating magistrates in foreign countries.").

In short, we reject the view, expressed in *In re Ishihara Chemical Co.*, that § 1782 comes into play only when adjudicative proceedings are "pending" or "imminent." See 251 F.3d, at 125 (proceeding must be "imminent--very likely to occur and very soon to occur" (internal quotation marks omitted)). Instead, we hold that § 1782(a) requires only that a dispositive ruling by the Commission, reviewable by the European courts, be within reasonable contemplation. See *Crown Prosecution Serv. of United Kingdom*, 870 F.2d, at 691; *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1155, and n. 9 (C.A.11 1988); Smit, International Litigation 1026 ("It is not necessary ... for the [adjudicative] proceeding to be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355, 72 USLW 4528, 2004-1 Trade Cases P 74,453, 58 Fed.R.Serv.3d 696, 71 U.S.P.Q.2d 1001, 64 Fed. R. Evid. Serv. 742, 04 Cal. Daily Op. Serv. 5382, 2004 Daily Journal D.A.R. 7371
(Cite as: 542 U.S. 241, 124 S.Ct. 2466)

pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding.").

D

[6] We take up next the foreign-discoverability rule on which lower courts have divided: Does § 1782(a) categorically bar a *260 district court from ordering production of documents when the foreign tribunal or the " interested person" would not be able to obtain the documents if they were located in the foreign jurisdiction? See *supra*, at 2476-2477, and n. 7.

We note at the outset, and count it significant, that § 1782(a) expressly shields privileged material: "A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." See S.Rep. No. 1580, at 9, U.S.Code Cong. & Admin.News 1964, pp. 3782, 3789-90 ("[N]o person shall be required under the provisions of [§ 1782] to produce any evidence in violation of an applicable privilege."). Beyond shielding material safeguarded by an applicable privilege, however, nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there. "If Congress had intended to impose such a sweeping restriction on the district court's discretion, at a time when it was enacting liberalizing amendments to the statute, it would have included statutory language to that effect." *In re Application of Gianoli Aldunate*, 3 F.3d 54, 59 (C.A.2 1993); accord *Four Pillars Enterprises Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1080 (C.A.9 2002); 292 F.3d, at 669 (case below); *In re Bayer AG*, 146 F.3d 188, 193-194 (C.A.3 1998). [FN11]

> FN11. Section § 1782(a) instructs that a district court's discovery order "may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing ... [or may be] the Federal Rules of Civil Procedure." This mode-of-proof-taking instruction imposes no substantive limitation on the discovery to be had.

**2481 Nor does § 1782(a)'s legislative history suggest that Congress intended to impose a blanket foreign-discoverability rule on the provision of assistance under § 1782(a). The Senate Report observes in this regard that § 1782(a) "leaves the issuance of an appropriate order to the discretion of the court *261 which, in proper cases, may refuse to issue an order or may impose conditions it deems desirable." S.Rep. No. 1580, at 7, U.S.Code Cong. & Admin.News 1964, pp. 3782, 3788.

Intel raises two policy concerns in support of a foreign-discoverability limitation on § 1782(a) aid-- avoiding offense to foreign governments, and maintaining parity between litigants. Brief for Petitioner 23-24; Reply Brief 5, 13-14; see *In re Application of Asta Medica, S. A.*, 981 F.2d 1, 6 (C.A.1 1992) ("Congress did not seek to place itself on a collision course with foreign tribunals and legislatures, which have carefully chosen the procedures and laws best suited to their concepts of litigation."). While comity and parity concerns may be important as touchstones for a district court's exercise of discretion in particular cases, they do not permit our insertion of a generally applicable foreign-discoverability rule into the text of § 1782(a).

We question whether foreign governments would in fact be offended by a domestic prescription permitting, but not requiring, judicial assistance. A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions--reasons that do not necessarily signal objection to aid from United States federal courts. See *Bayer*, 146 F.3d, at 194 ("[T]here is no reason to assume that because a country has not adopted a particular discovery procedure, it would take offense at its use."); Smit, Recent Developments in International Litigation, 35 S. Tex. L.Rev. 215, 235-236 (1994) (hereinafter Smit, Recent Developments) (same). [FN12] A foreign tribunal's reluctance to order *262 production of materials present in the United States similarly may signal no resistance to the receipt of evidence gathered pursuant to § 1782(a). See *South Carolina Ins. Co. v. Assurantie Maatschappij "De Zeven Provincien" N.V.*, [1987] 1 App. Cas. 24 (House of Lords ruled that nondiscoverability under English law did not stand in the way of a litigant in English proceedings seeking assistance in the United States under § 1782). [FN13] When the foreign tribunal would readily accept relevant information discovered in the United States, application of a foreign-discoverability **2482 rule would be senseless. The rule in that situation would serve only to thwart § 1782(a)'s

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

124 S.Ct. 2466                                                                                          Page 13
542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355, 72 USLW 4528, 2004-1 Trade Cases P 74,453, 58 Fed.R.Serv.3d
696, 71 U.S.P.Q.2d 1001, 64 Fed. R. Evid. Serv. 742, 04 Cal. Daily Op. Serv. 5382, 2004 Daily Journal D.A.R.
7371
(Cite as: 542 U.S. 241, 124 S.Ct. 2466)

objective to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws.

> FN12. Most civil-law systems lack procedures analogous to the pretrial discovery regime operative under the Federal Rules of Civil Procedure. See ALI, ALI/Unidroit Principles and Rules of Transnational Civil Procedure, Proposed Final Draft, Rule 22, Comment R-22E (2004) ( "Disclosure and exchange of evidence under the civil-law systems are generally more restricted, or nonexistent."); Hazard, Discovery and the Role of the Judge in Civil Law Jurisdictions, 73 Notre Dame L.Rev. 1017, 1018-1019 (1998) (same). See also Smit, Recent Developments 235, n. 93 ("The drafters of § 1782] were quite aware of the circumstance that civil law systems generally do not have American type pretrial discovery, and do not compel the production of documentary evidence.").

> FN13. See Smit, American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited, 25 Syracuse J. Int'l L. & Comm. 1, 13, and n. 63 (1998) (hereinafter Smit, American Assistance) (noting that "[a] similar decision was rendered by the President of the Amsterdam District Court").

Concerns about maintaining parity among adversaries in litigation likewise do not provide a sound basis for a cross-the-board foreign-discoverability rule. When information is sought by an "interested person," a district court could condition relief upon that person's reciprocal exchange of information. See *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (C.A.2 1995); Smit, Recent Developments 237. Moreover, the foreign tribunal can place conditions on its acceptance of the information to maintain whatever measure of parity it concludes is appropriate. See *Euromepa*, 51 F.3d, at 1101. [FN14]

> FN14. A civil-law court, furthermore, might attend to litigant-parity concerns in its merits determination: "In civil law countries, documentary evidence is generally

submitted as an attachment to the pleadings or as part of a report by an expert .... A civil law court generally rules upon the question of whether particular documentary evidence may be relied upon only in its decision on the merits." Smit, Recent Developments 235-236, n. 94.

[7] *263 We also reject Intel's suggestion that a § 1782(a) applicant must show that United States law would allow discovery in domestic litigation analogous to the foreign proceeding. Brief for Petitioner 19-20 (" [I]f AMD were pursuing this matter in the United States, U.S. law would preclude it from obtaining discovery of Intel's documents."). Section 1782 is a provision for assistance to tribunals abroad. It does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist here. Comparisons of that order can be fraught with danger. [fn15] FOR EXAMPLE, WE HAVe in the united states no cLose anAlogue to the European Commission regime under which AMD is not free to mount its own case in the Court of First Instance or the European Court of Justice, but can participate only as complainant, an "interested person," in Commission-steered proceedings. See L. Ritter, W. Braun, & F. Rawlinson, European Competition Law: A Practitioner's Guide 824-826 (2d ed.2000) (describing a complaint as a potentially "more certain (and cheaper) alternative to private enforcement through the [European Union's member states'] courts"). [FN16]

> FN15. Among its proposed rules, the dissent would exclude from § 1782(a)'s reach discovery not available "under foreign law" *and* "under domestic law in analogous circumstances." *Post*, at 2486. Because comparison of systems is slippery business, the dissent's rule is infinitely easier to state than to apply. As the dissent's examples tellingly reveal, see *post*, at 2485-2486, a foreign proceeding may have no direct analogue in our legal system. In light of the variety of foreign proceedings resistant to ready classification in domestic terms, Congress left unbounded by categorical rules the determination whether a matter is proceeding "in a foreign or international tribunal." While we reject the rules the dissent would inject into the statute, see *post*, at 2486-2488, we do suggest guides for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

124 S.Ct. 2466                                                                                          Page 14
542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355, 72 USLW 4528, 2004-1 Trade Cases P 74,453, 58 Fed.R.Serv.3d
696, 71 U.S.P.Q.2d 1001, 64 Fed. Rev. Evid. Serv. 742, 04 Cal. Daily Op. Serv. 5382, 2004 Daily Journal D.A.R.
7371
(Cite as: 542 U.S. 241, 124 S.Ct. 2466)

the exercise of district-court discretion, see *infra*, at 2482-2484.

FN16. At oral argument, counsel for AMD observed: "In the United States, we could have brought a private action in the district court for these very same violations. In Europe, our only Europe-wide remedy was to go to the [European Commission]." Tr. of Oral Arg. 33.

*264 IV

As earlier emphasized, see *supra*, at 2481, a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so. See **2483*United Kingdom v. United States, 238 F.3d 1312, 1319 (C.A.11 2001)* ("a district court's compliance with a § 1782 request is not mandatory"). We note below factors that bear consideration in ruling on a § 1782(a) request.

[8] First, when the person from whom discovery is sought is a participant in the foreign proceeding (as Intel is here), the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. App. to Reply Brief 4a ("When th[e] person [who is to produce the evidence] is a party to the foreign proceedings, the foreign or international tribunal can exercise its own jurisdiction to order production of the evidence.") (quoting Decl. of H. Smit in *In re Application of Ishihara Chemical Co., Ltd., For order to Take discovery of Shipley Company, L.L.C., Pursuant to 28 U.S.C. § 1782,* Misc. 99-232(FB) (EDNY, May 18, 2000)). In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid. See App. to Reply Brief 4a.

[9][10] Second, as the 1964 Senate Report suggests, a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance. See S.Rep. No. 1580, at 7. Further, the grounds Intel urged for categorical limitations on § 1782(a)'s scope may be relevant in determining whether a discovery order should be granted in a particular case. See Brief for United States as *Amicus Curiae* 23. Specifically, *265 a district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States. See *id.,* at 27. Also, unduly intrusive or burdensome requests may be rejected or trimmed. See *Bayer,* 146 F.3d, at 196 (remanding for district-court consideration of "appropriate measures, if needed, to protect the confidentiality of materials"); *in rE application OF esses,* 101 F.3d 873, 876 (C.A.2 1996) (affirming limited discovery that is neither "burdensome [n]or duplicative").

[11] Intel maintains that, if we do not accept the categorical limitations it proposes, then, at least, we should exercise our supervisory authority to adopt rules barring § 1782(a) discovery here. Brief for Petitioner 34-36; cf. *Thomas v. Arn,* 474 U.S. 140, 146-147, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) (this Court can establish rules of "sound judicial practice" (internal quotation marks omitted)). We decline, at this juncture, to adopt supervisory rules. Any such endeavor at least should await further experience with § 1782(a) applications in the lower courts. [FN17] The **2484 European Commission has stated in *amicus curiae* briefs to this Court that it does not need or want the District Court's assistance. See European Commission *Amicus Curiae* 11-16; Brief for European Commission as *Amicus Curiae* in Support *266 of Pet. for Cert. 4-8. It is not altogether clear, however, whether the Commission, which may itself invoke § 1782(a) aid, means to say "never" or "hardly ever" to judicial assistance from United States courts. Nor do we know whether the European Commission's views on § 1782 (a)'s utility are widely shared in the international community by entities with similarly blended adjudicative and prosecutorial functions.

FN17. The dissent sees a need for "categorical limits" to ward off "expensive, time-consuming battles about discovery." *Post,* at 2485. That concern seems more imaginary than real. There is no evidence whatsoever, in the 40 years since § 1782(a)'s adoption, see *supra,* at 2473-2474, of the costs, delays, and forced settlements the dissent hypothesizes. See Smit, American Assistance 1, 19-20 ("The revised section 1782 ... has been applied in scores of cases .... All in all, Section 1782 has largely served the purposes for which it was

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

124 S.Ct. 2466                                                                          Page 15
542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355, 72 USLW 4528, 2004-1 Trade Cases P 74,453, 58 Fed.R.Serv.3d
696, 71 U.S.P.Q.2d 1001, 64 Fed. R. Evid. Serv. 742, 04 Cal. Daily Op. Serv. 5382, 2004 Daily Journal D.A.R.
7371
**(Cite as: 542 U.S. 241, 124 S.Ct. 2466)**

enacted.... [T]here appears to be no reason for seriously considering, at this time, any statutory amendments.").

The Commission, we note, is not obliged to respond to a discovery request of the kind AMD has made. The party targeted in the complaint and in the § 1782(a) application would no doubt wield the laboring oar in opposing discovery, as Intel did here. Not only was there no "need for the Commission to respond," *post,* at 2487, the Commission in fact made no submission at all in the instant matter before it reached this Court.

Several facets of this case remain largely unexplored. Intel and its *amici* have expressed concerns that AMD's application, if granted in any part, may yield disclosure of confidential information, encourage "fishing expeditions," and undermine the European Commission's Leniency Program. See Brief for Petitioner 37; European Commission *Amicus Curiae* 11-16. [FN18] Yet no one has suggested that AMD's complaint to the Commission is pretextual. Nor has it been shown that § 1782(a)'s preservation of legally applicable privileges, see *supra,* at 2480, and the controls on discovery available to the District Court, see, *e.g.,* Fed. Rule Civ. Proc. 26(b)(2) and (c), would be ineffective to prevent discovery of Intel's business secrets and other confidential information.

> FN18. The European Commission's "Leniency Program" allows "cartel participants [to] confess their own wrongdoing" in return for prosecutorial leniency. European Commission *Amicus Curiae* 14-15; Brief for European Commission as *Amicus Curiae* in Support of Pet. for Cert. 6.

On the merits, this case bears closer scrutiny than it has received to date. Having held that § 1782(a) authorizes, but does not require, discovery assistance, we leave it to the courts below to assure an airing adequate to determine what, if any, assistance is appropriate. [FN19]

> FN19. The District Court might also consider the significance of the protective order entered by the District Court for the Northern District of Alabama. See App. 73; *supra,* at 2475, n. 4; cf. *Four Pillars Enterprises Co. v. Avery Dennison Corp.,*

308 F.3d 1075, 1080 (C.A.9 2002) (affirming district-court denial of discovery that "would frustrate the protective order of [another] federal [district] court").

* * *

**\*267** For the reasons stated, the judgment of the Court of Appeals for the Ninth Circuit is

*Affirmed.*

Justice O'CONNOR took no part in the consideration or decision of this case.

Justice SCALIA, concurring in the judgment.

As today's opinion shows, the Court's disposition is required by the text of the statute. None of the limitations urged by petitioner finds support in the categorical language of 28 U.S.C. § 1782(a). That being so, it is not only (as I think) improper but also quite unnecessary to seek repeated support in the words of a Senate Committee Report--which, as far as we know, not even the full committee, much less the full Senate, much much less the House, and much much much less the President who signed the bill, agreed with. Since, moreover, I have not read the entire so-called legislative history, and have no **2485** need or desire to do so, so far as I know the statements of the Senate Report may be contradicted elsewhere.

Accordingly, because the statute--the only sure expression of the will of Congress--says what the Court says it says, I join in the judgment.

Justice BREYER, dissenting.

The Court reads the scope of 28 U.S.C. § 1782 to extend beyond what I believe Congress might reasonably have intended. Some countries allow a private citizen to ask a court to review a criminal prosecutor's decision not to prosecute. On the majority's reading, that foreign private citizen could ask an American court to help the citizen obtain information, even if the foreign prosecutor were indifferent or unreceptive. See, *e.g.,* Mann, Criminal Procedure, in Introduction to the Law of Israel 278 (A. Shapira & K. **\*268** DeWitt-Arar eds.1995). Many countries allow court review of decisions made by any of a wide variety of nonprosecutorial, nonadjudicative bodies. On the majority's reading, a British developer, hoping to persuade the British

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

124 S.Ct. 2466                                                                                                Page 16
542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355, 72 USLW 4528, 2004-1 Trade Cases P 74,453, 58 Fed.R.Serv.3d
696, 71 U.S.P.Q.2d 1001, 64 Fed. R. Evid. Serv. 742, 04 Cal. Daily Op. Serv. 5382, 2004 Daily Journal D.A.R.
7371
(Cite as: 542 U.S. 241, 124 S.Ct. 2466)

Housing Corporation to grant it funding to build a low-income housing development, could ask an American court to demand that an American firm produce information designed to help the developer obtain the British grant. Cf., *e.g.,* Mayer, The Housing Corporation: Multiple Lines of Accountability, in Quangos, Accountability and Reform: The Politics of Quasi-Government 111, 114 (M. Flinders & M. Smith eds.1999). This case itself suggests that an American firm, hoping to obtain information from a competitor, might file an antitrust complaint with the European antitrust authorities, thereby opening up the possibility of broad American discovery--contrary to the antitrust authorities' desires.

One might ask why it is wrong to read the statute as permitting the use of America's court processes to obtain information in such circumstances. One might also ask why American courts should not deal *case by case* with any problems of the sort mentioned. The answer to both of these questions is that discovery and discovery-related judicial proceedings take time, they are expensive, and cost and delay, or threats of cost and delay, can themselves force parties to settle underlying disputes. See The Brookings Institution, Justice For All: Reducing Costs and Delay in Civil Litigation, Report of a Task Force 6-7 (1989) (lawyers surveyed estimated that 60% of litigation costs in a typical federal case are attributable to discovery and agreed that high litigation costs are often attributable to abuse of the discovery process); Federal Judicial Center, T. Willging, J. Shapard, D. Stienstra, & D. Milfich, Discovery and Disclosure Practice, Problems, and Proposals for Change 1-2, 4, 8, 14-16 (Tables 3-5) (1997) (study outlining costs of discovery). To the extent that expensive, time-consuming battles about discovery proliferate, they deflect the attention of foreign authorities *269 from other matters those authorities consider more important; they can lead to results contrary to those that foreign authorities desire; and they can promote disharmony among national and international authorities, rather than the harmony that § 1782 seeks to achieve. They also use up domestic judicial resources and crowd our dockets.

That is why I believe the statute, while granting district courts broad authority to order discovery, nonetheless must be read as subject to some categorical limits, at least at the outer bounds--a matter that today's decision makes even more important. Those limits should rule out instances in which it is virtually certain that discovery (**2486 if considered case by case) would prove unjustified.

This case does not require us to find a comprehensive set of limits. But it does suggest two categorical limitations, which I would adopt. First, when a foreign entity possesses few tribunal-like characteristics, so that the applicability of the statute's word "tribunal" is in serious doubt, then a court should pay close attention to the foreign entity's own view of its "tribunal"-like or non-"tribunal"-like status. By paying particular attention to the views of the very foreign nations that Congress sought to help, courts would better achieve Congress' basic cooperative objectives in enacting the statute. See Act of Sept. 2, 1958, Pub.L. 85-906, § 2, 72 Stat. 1743 (creating Commission on International Rules of Judicial Procedure to investigate and improve judicial "cooperation" between the United States and other countries).

The concept of paying special attention to administrative views is well established in American law. Cf. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944). Like American administrators, foreign administrators are likely to understand better than American courts their own job and, for example, how discovery rights might affect their ability to carry out their responsibilities. I can think of no reason why Congress would have intended a *270 court to pay *less* attention to the foreign entity's view of the matter than courts ordinarily pay to a domestic agency's understanding of the workings of its own statute.

Second, a court should not permit discovery where both of the following are true: (1) A private person seeking discovery would not be entitled to that discovery under foreign law, *and* (2) the discovery would not be available under domestic law in analogous circumstances. The Federal Rules of Civil Procedure, for example, make only limited provisions for nonlitigants to obtain certain discovery. See Fed. Rule Civ. Proc. 27. The limitations contained in the Rules help to avoid discovery battles launched by firms simply seeking information from competitors. Where there is benefit in permitting such discovery, and the benefit outweighs the cost of allowing it, one would expect either domestic law or foreign law to authorize it. If, notwithstanding the fact that it would

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355, 72 USLW 4528, 2004-1 Trade Cases P 74,453, 58 Fed.R.Serv.3d 696, 71 U.S.P.Q.2d 1001, 64 Fed. R. Evid. Serv. 742, 04 Cal. Daily Op. Serv. 5382, 2004 Daily Journal D.A.R. 7371
**(Cite as: 542 U.S. 241,  124 S.Ct. 2466)**

not be allowed under either domestic or foreign law, there is some special need for the discovery in a particular instance, one would expect to find foreign governmental or intergovernmental authorities making the case for that need.  Where *none* of these circumstances is present, what benefit could offset the obvious costs to the competitor and to our courts?  I cannot think of any.

Application of either of these limiting principles would require dismissal of this discovery proceeding.  First, the Commission of the European Communities' (Commission) antitrust authority's status as a "tribunal" is questionable.  In many respects, the Commission more closely resembles a prosecuting authority, say, the Department of Justice's Antitrust Division, than an administrative agency that adjudicates cases, say, the Federal Trade Commission.  To my knowledge, those who decide whether to bring an antitrust prosecution on the Commission's behalf are not judges.  See App. 96; Wils, The Combination of the Investigative and Prosecutorial Function and the Adjudicative Function in EC Antitrust Enforcement:  A Legal and Economic Analysis, 27 *271 World Competition Law and Economics Review 201, 207 (June 2004) (explaining, in an article written by a **2487 member of the Commission's Legal Service, that "in European Commission proceedings there is no independent initial adjudicator ... and the Commissioners do not sit as judges hearing directly both sides of the case").  They do not adjudicate adversary proceedings on the basis of proofs and argument.  *Id.,* at 207.  Nor, as the majority appears to recognize, does the later availability of a reviewing court matter where " review is limited to the record before the Commission," and "AMD could 'use' evidence in the reviewing courts only by submitting it to the Commission in the current, investigative stage." *Ante,* at 2479.  At a minimum, then, the question whether the Commission is a "tribunal" is unclear.  See Wils, *supra,* at 207-209 (noting the scholarly and legal debate as to whether the Commission's antitrust investigation and enforcement activities qualify it as an " 'independent and impartial tribunal' " for purposes of the European Convention on Human Rights).

At the same time, the Commission has told this Court that it is not a  "tribunal" under the Act. It has added that, should it be considered, against its will, a "tribunal," its "ability to carry out its governmental responsibilities" will be seriously threatened.  Brief for Commission of the European Communities as *Amicus Curiae* 2. Given the potential need for the Commission to respond when a private firm (including an American company) files a complaint with the Commission and seeks discovery in an American court (say, from a competitor), its concerns are understandable.

The Commission's characterization of its own functions is, in my view, entitled to deference.  The majority disregards the Commission's opinion and states categorically that "the Commission is a § 1782(a) 'tribunal' when it acts as a first-instance decisionmaker." *Ante,* at 2472-2473.  In so ignoring the Commission, the majority undermines the comity interests § 1782 was designed to serve and disregards the maxim *272 that we construe statutes so as to "hel[p] the potentially conflicting laws of different nations work together in harmony--a harmony particularly needed in today's highly interdependent commercial world." *F. Hoffmann-LaRoche Ltd. v. Empagran S. A.,* ---U.S. ----, ----, 124 S.Ct. 2359, 2366, --- L.Ed.2d ---- (2004).

The second limiting factor is also present.  Neither AMD nor any comparable private party would be able to obtain the kind of discovery AMD seeks, either in Europe or in the United States.  In respect to Europe, the Commission has told us that any person in the world is free to file a complaint with the Commission, but it is the Commission that then investigates.  The private complainant lacks any authority to obtain discovery of business secrets and commercial information.  See Brief for Commission of the European Communities as *Amicus Curiae* 13, and n. 15.  In respect to the United States, AMD is a nonlitigant, apart from this discovery proceeding.  Conditions under which a nonlitigant may obtain discovery are limited.  AMD does not suggest that it meets those conditions, or that it is comparable in any other way to one who might obtain discovery under roughly analogous circumstances.  In addition, the material it seeks is under a protective order.  See *ante,* at 2475, n. 4.

What is the legal source of these limiting principles?  In my view, they, and perhaps others, are implicit in the statute itself, given its purpose and use of the terms "tribunal" and "interested person." § 1782(a).  But even if they are not, this Court's "supervisory powers ... permit, at the least, the promulgation of procedural rules governing the management of litigation," **2488 not to mention " 'procedures

124 S.Ct. 2466                                                                                    Page 18
542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355, 72 USLW 4528, 2004-1 Trade Cases  P 74,453, 58 Fed.R.Serv.3d
696, 71 U.S.P.Q.2d 1001, 64 Fed. R. Evid. Serv. 742, 04 Cal. Daily Op. Serv. 5382, 2004 Daily Journal D.A.R.
7371
**(Cite as: 542 U.S. 241,  124 S.Ct. 2466)**

deemed desirable from the viewpoint of sound judicial practice although in nowise commanded by statute or by the Constitution.' " _Thomas v. Arn, 474 U.S. 140, 146-147, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985)_ (quoting _Cupp v. Naughten, 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)_). See also _Dickerson v. United States, 530 U.S. 428, 437, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000)_ ("This Court has supervisory authority over the federal courts, and we may *273 use that authority to prescribe rules of evidence and procedure that are binding in those tribunals").  Intel Corp. has asked us to exercise those powers in this case.  Brief for Petitioner 34-38.  We should do so along the lines that I suggest; consequently, we should reverse the judgment below and order the complaint in this case dismissed.

I respectfully dissent from the Court's contrary determination.

542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355, 72 USLW 4528, 2004-1 Trade Cases  P 74,453, 58 Fed.R.Serv.3d 696, 71 U.S.P.Q.2d 1001, 64 Fed. R. Evid. Serv. 742, 04 Cal. Daily Op. Serv. 5382, 2004 Daily Journal D.A.R. 7371

**Briefs and Other Related Documents** (Back to top)

• 2004 WL 954709, 41 USLW 3686 (Oral Argument) Oral Argument (Apr. 20, 2004)

• 2004 WL 577504 (Appellate Brief) Reply Brief for Petitioner (Mar. 19, 2004)

• 2004 WL 297864 (Appellate Brief) Brief for Respondent (Feb. 13, 2004)

• 2004 WL 214306 (Appellate Brief) Brief for the United States as Amicus Curiae Supporting Affirmance (Jan. 30, 2004)

• 2003 WL 23112943 (Appellate Brief) Brief of Product Liability Advisory Council, Inc. as Amicus Curiae in Support of Petitioner (Dec. 31, 2003)

• 2003 WL 23112944 (Appellate Brief) Brief of the Chamber of Commerce of the United States as Amicus Curiae in Support of Petitioners (Dec. 31, 2003)

• 2003 WL 23138394 (Appellate Brief) Brief for Petitioner (Dec. 31, 2003)

• 2003 WL 23310882 (Joint Appendix) (Dec. 31, 2003)

• 2003 WL 23138389 (Appellate Brief) Brief of Amicus Curiae the Commission of the European Communities Supporting Reversal (Dec. 23, 2003)

• 2003 WL 22458815 (Appellate Petition, Motion and Filing) Respondent%7Ds Supplemental Brief in Support of Certiorari (Oct. 21, 2003)Original Image of this Document (PDF)

• 2003 WL 22812410 (Appellate Petition, Motion and Filing) Supplemental Brief for Petitioner (Oct. 21, 2003)Original Image of this Document (PDF)

• 2003 WL 22490503 (Appellate Petition, Motion and Filing) Brief for the United States as Amicus Curiae (Oct. 06, 2003)

• 2002 WL 32151598 (Appellate Petition, Motion and Filing) Petition for a Writ of Certiorari (Nov. 15, 2002)

• 2002 WL 32157391 (Appellate Petition, Motion and Filing) Brief of the Commission of the European Communities as Amicus Curiae in Support of Petitioner (Nov. 15, 2002)

• 2002 WL 32157392 (Appellate Petition, Motion and Filing) Brief Amicus Curiae of the National Association of Manufacturers in Support of Petitioner (Nov. 15, 2002)

• 2002 WL 32157390 (Appellate Petition, Motion and Filing) Brief of the Chamber of Commerce of the United States as Amicus Curiae in Support of Petitioner (Nov. 2002)

• 02-572 (Docket) (Oct. 16, 2002)

• 2002 WL 32509024 (Appellate Petition, Motion and Filing) Petition for a Writ of Certiorari (Oct. 11, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit C

# COVINGTON & BURLING

ONE FRONT STREET
SAN FRANCISCO, CA 94111
TEL 415.591.6000
FAX 415.591.6091
WWW.COV.COM

SAN FRANCISCO
WASHINGTON, DC
NEW YORK
LONDON
BRUSSELS

RICHARD ALLEN JONES
TEL 415.591.7056
FAX 415.955.6555
RJONES @ COV.COM

March 7, 2006

Morgan, Lewis & Bockius LLP and Jeffrey Kingston
One Market, Spear Street Tower
San Francisco, CA 94105

Re:    Subpoena - Case No.: 06-80038 JF (PVT)

Dear Sir or Madam,

Enclosed is a subpoena authorized by the United States District Court for the Northern District of California. A copy of the Court's Order is also enclosed. Consistent with the requirements of that Order, we are prepared to confer with you or your counsel concerning an alternative date and time for the deposition, if the stated date cannot be met. To discuss alternative scheduling, please contact:

Josh Wolson
Covington & Burling
(202) 662-6000
JWolson@cov.com

Very truly yours,

Richard A. Jones

RAJ//kmq
Enclosure

SF: 79058-6

○ AO88 (Rev. 1/94) Subpoena in a Civil Case

### Issued by the

## UNITED STATES DISTRICT COURT

__Northern__ DISTRICT OF __California__

In re Application of Microsoft Corp.

V.

**SUBPOENA IN A CIVIL CASE**

Case Number:¹ 06-80038 JF (PVT)

TO: Morgan Lewis & Bockius LLP and Jeffrey Kingston
One Market, Spear Street Tower
San Francisco, CA 94105

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Covington & Burling, One Front Street, San Francisco, CA 94111 | March 23, 2006, 9:30 AM |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached Exhibit A

| PLACE | DATE AND TIME |
|---|---|
| Covington & Burling, One Front Street, San Francisco, CA 94111 | March 21, 2006 9:30 AM |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICERS SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) *(atty for Applicant)* | DATE 3/7/06 |
|---|---|

ISSUING OFFICERS NAME, ADDRESS AND PHONE NUMBER

Richard Jones, Covington & Burling, One Front Street, San Francisco, CA 94111, (415) 591-6000 (telephone) (415) 591-6091 (facsimile)

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

¹ If action is pending in district other than district of issuance, state district under case number.

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## DEFINITIONS

1.      "You" and "Your" shall mean "Morgan Lewis & Bockius LLP" including, without limitation, Jeffrey Kingston, as well as all other partners, employees, directors, attorneys, advisors, counsel, shareholders, subsidiaries, affiliates, agents, and any entity affiliated with Morgan Lewis & Bockius LLP.

2.      "Documents" shall be defined to the broadest extent permitted by Fed. R. Civ. P. 34(a) and include, wherever applicable and without limitation, all written, printed, typed, photographed or recorded matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated or made, in any form, including but not limited to originals (or copies where originals are unavailable) and all non-identical copies of all writings, letters, minutes, correspondence, telegrams, telexes, bulletins, instructions, notes, notations, sound or video recordings of any type, computerized records, lists, letters, envelopes, summaries, memoranda, inter-office communications, studies, analyses, reports, catalogues, results of investigations, contracts, licenses, agreements, working papers, statistical records, ledgers, books of account, vouchers, invoices, telephone records, charge slips, time sheets or logs, computer diskettes, tapes or data, stenographers' notebooks, diaries, desk calendars, or papers similar to any of the foregoing, however denominated. "Documents" also include all electronic data, e-mail or other electronic communication, whether stored on personal computers, a computer network or backup system, or computer tapes or discs.

3.      "And" as well as "or" shall be construed disjunctively as well as conjunctively, as necessary, so as to bring within the scope of this subpoena any information or

DC: 2060155-1

documents which might otherwise be considered to be outside of its scope. Similarly, references to the singular shall include the plural and references to the plural shall include the singular.

4.     The word "all" shall be construed as "any and all," the word "any" shall be construed as "any and all," and the word "each" shall be construed as "all and each," so as to bring within the scope of this subpoena any information or documents which might otherwise be considered to be outside of its scope.

5.     "2004 Decision" means the Decision issued by the Commission on or about March 24, 2004, finding in part that Microsoft infringed Article 82 of the EC Treaty and Article 54 of the EEA Agreement by refusing to disclose certain "Interoperability Information" to competing vendors of work group server operating system products.

6.     "Article 24(1) Decision" means the decision adopted by the Commission on or about November 10, 2005, claiming that Microsoft had not complied with Articles 5(a) and (c) of the 2004 Decision.

7.     "Commission" means the European Commission.

8.     "Interoperability Information" means documentation made available by Microsoft in response to the Commission's decisions of March 2004 and/or November 2005 relating to work group server operating system products.

9.     "Microsoft" means Microsoft Corporation.

10.     "Monitoring Trustee" refers to Neil Barrett or anyone else performing any task pursuant to the decision adopted by the Commission on July 28, 2005, in Case COMP/C-3/37.792 Microsoft, C(2005) 2988 final, establishing a monitoring mechanism.

11.     "OTR" means OTR Group.

- 2 -

12.    "SO" means the Statement of Objections adopted by the Commission on or about December 21, 2005, relating to the Interoperability Information that Microsoft had made available in response to the 2004 Decision.

13.    "Sun" means Sun Microsystems, Inc.

## GENERAL INSTRUCTIONS

These instructions incorporate by reference the instructions set forth in Fed. R. Civ. P 45.

1.    You are requested to produce all documents designated below which are in your possession, custody or control, or in the possession, custody or control of your agents, attorneys, employees or representatives.

2.    You are requested to produce the original and all non-identical copies, including all drafts, of each document requested.  If you are not able to produce the original of any document, produce the best available copy and all non-identical copies, including drafts.

3.    You are requested to produce all documents in the order and as they are kept in the usual course of business with any identifying labels, file markings, or similar identifying features.  If any portion of a document is responsive, produce the entire document. If there are no documents responsive to any particular Request or category, state so in writing.

4.    If you claim any privilege as a basis for not answering any Request or any portion thereof or for withholding any otherwise responsive document, set forth in your response with respect to each such document, in sufficient detail to identify the particular document, and to allow the court to adjudicate the validity of your claim of privilege, information about the document and your claim of privilege including, without disclosing the information that is claimed to be privileged, the following:

i)    The type of document (*e.g.*, letter, memorandum, report, etc.);

- 3 -

ii)   The document's title and file reference, if any;

iii)  The subject matter of the document in sufficient detail to allow Microsoft to bring your claim of privilege before the Court for review;

iv)   The name, title, employer and address (or last known title, employer and address if current information is unavailable) of each person who drafted, revised, signed, provided information for, or received such document, and state for each such person whether he or she is an attorney and, if so, on whose behalf he or she was acting; and

v)    The basis of your claim of privilege, and each fact upon which you rely in claiming the privilege.

5.   If any document requested herein was at one time in existence, but has been lost, discarded or destroyed, identify each such document including its date, author and subject matter.

6.   Comply with the schedule set by the Court in the accompanying Order.

## REQUEST FOR DOCUMENTS TO BE PRODUCED

1.  All documents that contain, constitute, reflect, evidence, or refer to any communication or correspondence between You and the Commission, whether on behalf of Sun, another client, or yourself, relating to the Interoperability Information or to the proper interpretation of the terms "Interoperability" or "Interoperability Information" as used in the 2004 Decision.

- 4 -

2.  All documents that contain, constitute, reflect, evidence, or refer to any communication or correspondence between You and the Monitoring Trustee, whether on behalf of Sun, another client, or yourself, relating to the Interoperability Information or to the proper interpretation of the terms "Interoperability" or "Interoperability Information" as used in the 2004 Decision.

3.  All documents that contain, constitute, reflect, evidence, or refer to any communication or correspondence between You and OTR or any other consultant retained or consulted by the Commission, whether on behalf of Sun, another client, or yourself, relating to the Interoperability Information or to the proper interpretation of the terms "Interoperability" or "Interoperability Information" as used in the 2004 Decision.

4.  All documents that contain, constitute, reflect, evidence, or refer to any communication between You and any other third party, whether on behalf of Sun, another client, or yourself, relating to the Interoperability Information or to the proper interpretation of the terms "Interoperability" or "Interoperability Information" as used in the 2004 Decision.

5.  All documents since March 24, 2004, that contain, constitute, reflect, evidence, or refer to any communication between You and the Commission, whether on behalf of Sun, another client, or yourself, about Microsoft's compliance or alleged failure to comply with European Community competition laws, including without limitation the 2004 Decision, the Article 24(1) Decision, or the SO.

6.  All documents since March 24, 2004, that contain, constitute, reflect, evidence, or refer to any communication between You and the Monitoring Trustee, whether on behalf of Sun, another client, or yourself, about Microsoft's compliance or alleged failure to

- 5 -

comply with European Community competition laws, including without limitation the 2004 Decision, the Article 24(1) Decision, or the SO.

7. All documents since March 24, 2004, that contain, constitute, reflect, evidence, or refer to any communication between You and OTR or any other consultant retained or consulted by the Commission, whether on behalf of Sun, another client, or yourself, about Microsoft's compliance or alleged failure to comply with European Community competition laws, including without limitation the 2004 Decision, the Article 24(1) Decision, or the SO.

8. All documents since March 24, 2004, that contain, constitute, reflect, evidence, or refer to any communication between You and any other third party, whether on behalf of Sun, another client, or yourself, about Microsoft's compliance or alleged failure to comply with European Community competition laws, including without limitation the 2004 Decision, the Article 24(1) Decision, or the SO.

## SUBJECTS FOR DEPOSITION

1. Any communication or correspondence between You and the Commission, whether on behalf of Sun, another client, or yourself, relating to the Interoperability Information or to the proper interpretation of the terms "Interoperability" or "Interoperability Information" as used in the 2004 Decision.

2. Any communication or correspondence between You and the Monitoring Trustee, whether on behalf of Sun, another client, or yourself, relating to the Interoperability Information or to the proper interpretation of the terms "Interoperability" or "Interoperability Information" as used in the 2004 Decision.

3. Any communication or correspondence between You and OTR or any other consultant retained or consulted by the Commission, whether on behalf of Sun, another client, or

- 6 -

yourself, relating to the Interoperability Information or to the proper interpretation of the terms "Interoperability" or "Interoperability Information" as used in the 2004 Decision.

4. Any communication between You and any other third party, whether on behalf of Sun, another client, or yourself, relating to the Interoperability Information or to the proper interpretation of the terms "Interoperability" or "Interoperability Information" as used in the 2004 Decision.

5. Any communication since March 24, 2004, between You and the Commission, whether on behalf of Sun, another client, or yourself, about Microsoft's compliance or alleged failure to comply with European Community competition laws, including without limitation the 2004 Decision, the Article 24(1) Decision, or the SO.

6. Any communication since March 24, 2004, between You and the Monitoring Trustee, whether on behalf of Sun, another client, or yourself, about Microsoft's compliance or alleged failure to comply with European Community competition laws, including without limitation the 2004 Decision, the Article 24(1) Decision, or the SO.

7. Any communication since March 24, 2004, between You and OTR or any other consultant retained or consulted by the Commission, whether on behalf of Sun, another client, or yourself, about Microsoft's compliance or alleged failure to comply with European Community competition laws, including without limitation the 2004 Decision, the Article 24(1) Decision, or the SO.

8. All documents since March 24, 2004, that contain, constitute, reflect, evidence, or refer to any communication between You and any other third party, whether on behalf of Sun, another client, or yourself, about Microsoft's compliance or alleged failure to

comply with European Community competition laws, including without limitation the 2004 Decision, the Article 24(1) Decision, or the SO.

    9.    The authenticity of the documents produced pursuant to this subpoena and the circumstances of their preparation.

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT
9             NORTHERN DISTRICT OF CALIFORNIA
10                    SAN JOSE DIVISION
11

12  *In re*                              )    Case No.: C 06-80038 JF (PVT)
                                         )
13  Application of                       )    ORDER GRANTING *EX PARTE*
                                         )    APPLICATION FOR ORDER ALLOWING
14  MICROSOFT CORPORATION,               )    DISCOVERY PURSUANT TO 28 U.S.C.
                                         )    § 1782; AND
15                   Applicant.          )
                                         )    SETTING DEADLINES FOR OBJECTIONS
16  _____ )    AND MOTIONS TO QUASH

17

18       On March 3, 2006, Applicant Microsoft Corporation ("Microsoft") filed an Application for

19  Order Allowing Discovery Pursuant to 28 U.S.C. § 1782.[1]  Based on the brief presented,

20       IT IS HEREBY ORDERED that Microsoft's motion is GRANTED; Microsoft is authorized

21  to serve the forms of subpoena attached to its Application (the "Subpoenas"), however, the form of

22  each subpoena must be revised to include the name, address, phone number, and fax number of the

23  attorney who issues the subpoena.  The form of each subpoena shall also be revised to state the date,

24  time and place for the subpoenaed deposition and for the document production.  Microsoft shall

25  provide notice of no less than 10 days for the depositions and document productions.  Microsoft may

26  set the dates and times for deposition without first consulting the deponent, but concurrently with

27  _____

28       [1]     The holding of this court is limited to the facts and the particular circumstances
         underlying the present motion.

                              ORDER, *page 1*

1  service of the subpoenas Microsoft shall offer to confer regarding the deponent's scheduling needs

2  and the possibility of adjusting the date and/or time for the deposition if necessary. A copy of this

3  order shall be served with each subpoena.

4      IT IS FURTHER ORDERED that any person or entity objecting to a subpoena shall promptly

5  commence meeting and conferring with Microsoft. Any objections shall be served (by fax and

6  overnight courier for earliest delivery time) no more than three court days after the subject subpoena

7  is served. Any motion to quash shall be served (by fax and overnight courier for earliest delivery

8  time) and filed no more than five court days after the subject subpoena is served, regardless of

9  whether meet and confer efforts are continuing. Opposition to any motion to quash shall be served

10  (by fax and overnight courier for earliest delivery time) and filed no more than five court days after

11  the motion is filed. The court will contact the parties if it wishes to schedule reply briefs and/or oral

12  argument.

13      IT IS FURTHER ORDERED that, in the event Microsoft believes a motion to compel is

14  warranted, it shall serve (by fax and overnight courier for earliest delivery time) and file its moving

15  papers as soon as possible. Any opposition to a motion to compel shall be served (by fax and

16  overnight courier for earliest delivery time) and filed no more than five court days after the subject

17  motion is filed. The court will contact the parties if it wishes to schedule reply briefs and/or oral

18  argument.

19  Dated: 3/06/06

20

21                               PATRICIA V. TRUMBULL
                             United States Magistrate Judge

22

23

24

25

26

27

28

*United States District Court*

*For the Northern District of California*

ORDER, *page 2*

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE



| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

**SERVED ON (PRINT NAME)** | **MANNER OF SERVICE**

**SERVED BY (PRINT NAME)** | **TITLE**

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER