# Exhibit D

Dockets.Justia.com

# COVINGTON & BURLING

ONE FRONT STREET
SAN FRANCISCO, CA 94111
TEL 415 591 6000
FAX 415.591.6091
WWW.COV.COM

SAN FRANCISCO
WASHINGTON, DC
NEW YORK
LONDON
BRUSSELS

RICHARD ALLEN JONES
TEL 415.591 7065
FAX 415.955.6585
RJONES@COV.COM

March 7, 2006

Sun Microsystems, Inc.
4150 Network Circle
Santa Clara, CA  95054

Re:    Subpoena - Case No.: 06-80038 JF (PVT)

Dear Sir or Madam,

Enclosed is a subpoena authorized by the United States District Court for the Northern District of California.  A copy of the Court's Order is also enclosed.  Consistent with the requirements of that Order, we are prepared to confer with you or your counsel concerning an alternative date and time for the deposition, if the stated date cannot be met.  To discuss alternative scheduling, please contact:

Josh Wolson
Covington & Burling
(202) 662-6000
JWolson@cov.com

Very truly yours,

Richard A. Jones

RAJ//kmq
Enclosure

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

In re Application of Microsoft Corp.

**V.**

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 06-80038 JF (PVT)

TO: Sun Microsystems, Inc.
4150 Network Circle
Santa Clara, CA 95054

YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

✓ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Covington & Burling, One Front Street, San Francisco, CA 94111 | March 23, 2006, 9.30 AM |

✓ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached Exhibit A

| PLACE | DATE AND TIME |
|---|---|
| Covington & Burling, One Front Street, San Francisco, CA 94111 | March 22, 2006, 9.30 AM |

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6)

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| (ATTY FOR APPLICANT) | 3/8/06 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Richard Jones, Covington & Burling, One Front Street, San Francisco, CA 94111, (415) 591-6000(telephone) (415) 591-6091 (facsimile)

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)  (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)  (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)  fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden

(B) If a subpoena

(i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## DEFINITIONS

1.    "You" and "Your" shall mean "Sun Microsystems, Inc.," including without limitation, all divisions, subsidiaries, affiliates, parent companies and predecessors and their respective present and former employees, agents, advisors, consultants, officers, directors, nominees, and in-house and outside counsel, including, without limitation, Jeffrey Kingston or any other person at Morgan, Lewis & Bockius LLP or any affiliated entity.

2.    "Documents" shall be defined to the broadest extent permitted by Fed. R. Civ. P. 34(a) and include, wherever applicable and without limitation, all written, printed, typed, photographed or recorded matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated or made, in any form, including but not limited to originals (or copies where originals are unavailable) and all non-identical copies of all writings, letters, minutes, correspondence, telegrams, telexes, bulletins, instructions, notes, notations, sound or video recordings of any type, computerized records, lists, letters, envelopes, summaries, memoranda, inter-office communications, studies, analyses, reports, catalogues, results of investigations, contracts, licenses, agreements, working papers, statistical records, ledgers, books of account, vouchers, invoices, telephone records, charge slips, time sheets or logs, computer diskettes, tapes or data, stenographers' notebooks, diaries, desk calendars, or papers similar to any of the foregoing, however denominated. "Documents" also include all electronic data, e-mail or other electronic communication, whether stored on personal computers, a computer network or backup system, or computer tapes or discs.

3.    "And" as well as "or" shall be construed disjunctively as well as conjunctively, as necessary, so as to bring within the scope of this subpoena any information or

documents which might otherwise be considered to be outside of its scope. Similarly, references to the singular shall include the plural and references to the plural shall include the singular.

4.    The word "all" shall be construed as "any and all," the word "any" shall be construed as "any and all," and the word "each" shall be construed as "all and each," so as to bring within the scope of this subpoena any information or documents which might otherwise be considered to be outside of its scope.

5.    "2004 Decision" means the Decision issued by the Commission on or about March 24, 2004, finding in part that Microsoft infringed Article 82 of the EC Treaty and Article 54 of the EEA Agreement by refusing to disclose certain "Interoperability Information" to competing vendors of work group server operating system products.

6.    "Article 24(1) Decision" means the decision adopted by the Commission on or about November 10, 2005, claiming that Microsoft had not complied with Articles 5(a) and (c) of the 2004 Decision.

7.    "Commission" means the European Commission.

8.    "Interoperability Information" means documentation made available by Microsoft in response to the Commission's decisions of March 2004 and/or November 2005 relating to work group server operating system products.

9.    "Microsoft" means Microsoft Corporation.

10.    "Monitoring Trustee" refers to Neil Barrett or anyone else performing any task pursuant to the decision adopted by the Commission on July 28, 2005, in Case COMP/C-3/37.792 Microsoft, C(2005) 2988 final, establishing a monitoring mechanism.

11.    "OTR" means OTR Group.

- 2 -

12.     "SO" means the Statement of Objections adopted by the Commission on or about December 21, 2005, relating to the Interoperability Information that Microsoft had made available in response to the 2004 Decision.

## GENERAL INSTRUCTIONS

These instructions incorporate by reference the instructions set forth in Fed. R. Civ. P 45.

1.     You are requested to produce all documents designated below which are in your possession, custody or control, or in the possession, custody or control of your agents, attorneys, employees or representatives.

2.     You are requested to produce the original and all non-identical copies, including all drafts, of each document requested. If you are not able to produce the original of any document, produce the best available copy and all non-identical copies, including drafts.

3.     You are requested to produce all documents in the order and as they are kept in the usual course of business with any identifying labels, file markings, or similar identifying features. If any portion of a document is responsive, produce the entire document. If there are no documents responsive to any particular Request or category, state so in writing.

4.     If you claim any privilege as a basis for not answering any Request or any portion thereof or for withholding any otherwise responsive document, set forth in your response with respect to each such document, in sufficient detail to identify the particular document, and to allow the court to adjudicate the validity of your claim of privilege, information about the document and your claim of privilege including, without disclosing the information that is claimed to be privileged, the following:

i)      The type of document (*e.g.*, letter, memorandum, report, etc.);

ii)     The document's title and file reference, if any;

- 3 -

    iii)   The subject matter of the document in sufficient detail to allow Microsoft to bring your claim of privilege before the Court for review;

    iv)   The name, title, employer and address (or last known title, employer and address if current information is unavailable) of each person who drafted, revised, signed, provided information for, or received such document, and state for each such person whether he or she is an attorney and, if so, on whose behalf he or she was acting; and

    v)   The basis of your claim of privilege, and each fact upon which you rely in claiming the privilege.

5.    If any document requested herein was at one time in existence, but has been lost, discarded or destroyed, identify each such document including its date, author and subject matter.

6.    Comply with the schedule set by the Court in the accompanying Order.

## REQUEST FOR DOCUMENTS TO BE PRODUCED

1.    All documents that contain, constitute, reflect, evidence, or refer to any communication or correspondence between You and the Commission relating to the Interoperability Information or to the proper interpretation of the terms "Interoperability" or "Interoperability Information" as used in the 2004 Decision.

2.    All documents that contain, constitute, reflect, evidence, or refer to any communication or correspondence between You and the Monitoring Trustee relating to the

- 4 -

Interoperability Information or to the proper interpretation of the terms "Interoperability" or "Interoperability Information" as used in the 2004 Decision.

3. All documents that contain, constitute, reflect, evidence, or refer to any communication or correspondence between You and OTR or any other consultant retained or consulted by the Commission relating to the Interoperability Information or to the proper interpretation of the terms "Interoperability" or "Interoperability Information" as used in the 2004 Decision.

4. All documents that contain, constitute, reflect, evidence, or refer to any communication between You and any other third party relating to the Interoperability Information or to the proper interpretation of the terms "Interoperability" or "Interoperability Information" as used in the 2004 Decision.

5. All documents since March 24, 2004, that contain, constitute, reflect, evidence, or refer to any communication between You and the Commission about Microsoft's compliance or alleged failure to comply with European Community competition laws, including without limitation the 2004 Decision, the Article 24(1) Decision, or the SO.

6. All documents since March 24, 2004, that contain, constitute, reflect, evidence, or refer to any communication between You and the Monitoring Trustee about Microsoft's compliance or alleged failure to comply with European Community competition laws, including without limitation the 2004 Decision, the Article 24(1) Decision, or the SO.

7. All documents since March 24, 2004, that contain, constitute, reflect, evidence, or refer to any communication between You and OTR or any other consultant retained or consulted by the Commission about Microsoft's compliance or alleged failure to comply with

European Community competition laws, including without limitation the 2004 Decision, the Article 24(1) Decision, or the SO.

       8.  All documents since March 24, 2004, that contain, constitute, reflect, evidence, or refer to any communication between You and any other third party about Microsoft's compliance or alleged failure to comply with European Community competition laws, including without limitation the 2004 Decision, the Article 24(1) Decision, or the SO.

### SUBJECTS FOR DEPOSITION

       1.  Any communication or correspondence between You and the Commission relating to the Interoperability Information or to the proper interpretation of the terms "Interoperability" or "Interoperability Information" as used in the 2004 Decision.

       2.  Any communication or correspondence between You and the Monitoring Trustee relating to the Interoperability Information or to the proper interpretation of the terms "Interoperability" or "Interoperability Information" as used in the 2004 Decision.

       3.  Any communication or correspondence between You and OTR or any other consultant retained or consulted by the Commission relating to the Interoperability Information or to the proper interpretation of the terms "Interoperability" or "Interoperability Information" as used in the 2004 Decision.

       4.  Any communication between You and any other third party relating to the Interoperability Information or to the proper interpretation of the terms "Interoperability" or "Interoperability Information" as used in the 2004 Decision.

       5.  Any communication since March 24, 2004, between You and the Commission about Microsoft's compliance or alleged failure to comply with European Community

competition laws, including without limitation the 2004 Decision, the Article 24(1) Decision, or the SO.

      6.   Any communication since March 24, 2004, between You and the Monitoring Trustee about Microsoft's compliance or alleged failure to comply with European Community competition laws, including without limitation the 2004 Decision, the Article 24(1) Decision, or the SO.

      7.  Any communication since March 24, 2004, between You and OTR or any other consultant retained or consulted by the Commission about Microsoft's compliance or alleged failure to comply with European Community competition laws, including without limitation the 2004 Decision, the Article 24(1) Decision, or the SO.

      8.  Any communication since March 24, 2004, between You and any other third party about Microsoft's compliance or alleged failure to comply with European Community competition laws, including without limitation the 2004 Decision, the Article 24(1) Decision, or the SO.

      9.  The authenticity of the documents produced pursuant to this subpoena and the circumstances of their preparation.



1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  NORTHERN DISTRICT OF CALIFORNIA
10                        SAN JOSE DIVISION
11

12   *In re*                        )    Case No.: C 06-80038 JF (PVT)
                                     )
13   Application of                  )    ORDER GRANTING *EX PARTE*
                                     )    APPLICATION FOR ORDER ALLOWING
14   MICROSOFT CORPORATION,          )    DISCOVERY PURSUANT TO 28 U.S.C.
                                     )    § 1782; AND
15              Applicant.           )
                                     )    SETTING DEADLINES FOR OBJECTIONS
16   _____)    AND MOTIONS TO QUASH
17

18        On March 3, 2006, Applicant Microsoft Corporation ("Microsoft") filed an Application for

19   Order Allowing Discovery Pursuant to 28 U.S.C. § 1782.[1]  Based on the brief presented,

20        IT IS HEREBY ORDERED that Microsoft's motion is GRANTED; Microsoft is authorized

21   to serve the forms of subpoena attached to its Application (the "Subpoenas"), however, the form of

22   each subpoena must be revised to include the name, address, phone number, and fax number of the

23   attorney who issues the subpoena.  The form of each subpoena shall also be revised to state the date,

24   time and place for the subpoenaed deposition and for the document production.  Microsoft shall

25   provide notice of no less than 10 days for the depositions and document productions.  Microsoft may

26   set the dates and times for deposition without first consulting the deponent, but concurrently with

27

28   _____
          [1]     The holding of this court is limited to the facts and the particular circumstances
     underlying the present motion.

                           ORDER, *page 1*

1   service of the subpoenas Microsoft shall offer to confer regarding the deponent's scheduling needs

2   and the possibility of adjusting the date and/or time for the deposition if necessary. A copy of this

3   order shall be served with each subpoena.

4          IT IS FURTHER ORDERED that any person or entity objecting to a subpoena shall promptly

5   commence meeting and conferring with Microsoft. Any objections shall be served (by fax and

6   overnight courier for earliest delivery time) no more than three court days after the subject subpoena

7   is served. Any motion to quash shall be served (by fax and overnight courier for earliest delivery

8   time) and filed no more than five court days after the subject subpoena is served, regardless of

9   whether meet and confer efforts are continuing. Opposition to any motion to quash shall be served

10  (by fax and overnight courier for earliest delivery time) and filed no more than five court days after

11  the motion is filed. The court will contact the parties if it wishes to schedule reply briefs and/or oral

12  argument.

13         IT IS FURTHER ORDERED that, in the event Microsoft believes a motion to compel is

14  warranted, it shall serve (by fax and overnight courier for earliest delivery time) and file its moving

15  papers as soon as possible. Any opposition to a motion to compel shall be served (by fax and

16  overnight courier for earliest delivery time) and filed no more than five court days after the subject

17  motion is filed. The court will contact the parties if it wishes to schedule reply briefs and/or oral

18  argument.

19  Dated: 3/06/06

20                                   _Patricia V. Trumbull_
21                                   PATRICIA V. TRUMBULL
                                     United States Magistrate Judge

22

23

24

25

26

27

28


ORDER, *page 2*

AO88 (Rev. 1/94) Subpoena in a Civil Case



I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

# Exhibit E

FILED

2004 OCT -4 P 3:45

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST OF CA. S.J.

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADVANCED MICRO DEVICES, Inc., | NO. C 01-7033 MISC JW |
| Plaintiff, | **ORDER DENYING IN FULL AMD'S AMENDED APPLICATION PURSUANT TO 28 U.S.C. §1782(a)** |
| v. | |
| INTEL CORPORATION, | |
| Defendant. | |

## I. INTRODUCTION

Advanced Micro Devices, Inc. ("AMD") initiated this miscellaneous action to obtain discovery from Intel Corporation ("Intel") pursuant to 28 U.S.C. §1782(a).  The Court referred the action to Magistrate Judge Lloyd, who issued an "Order Granting in Part AMD's Amended Application For Order Directing Intel To Produce Documents Pursuant To 28 U.S.C. §1782 And Denying Intel's Cross-Application."  On September 27, 2004, the Court heard argument on Intel's Motion for de novo Determination of AMD's Amended Application and Intel's Cross-Application Pursuant to 28 U.S.C. §1782; Objections To Magistrate Judge's Recommended Decision.  Having conducted a de novo review, and based upon all papers filed to date and the comments of counsel, the Court denies in full AMD's amended application for discovery.

## II. BACKGROUND

In October of 2000, AMD filed a complaint with he European Commission ("EC") against Intel for engaging in alleged anti-competitive behavior in violation of European laws.  AMD describes the complaint as including the following three major charges:

United States District Court
For the Northern District of California

1        (1) that Intel uses "Intel Inside" and other "market development fund" programs as

2        loyalty rebates to secure the agreement of PC manufacturers and retailers to deal

3        exclusively in Intel-based PCs,

4        (2) that Intel withholds product allocations, roadmap information, or technology to

5        coerce PC manufacturers and retailers to deal exclusively with Intel, and

6        (3) that Intel forms private, standard-setting cartels that establish interfaces between

7        microprocessors and other components of the PC system, and by excluding AMD and

8        other disfavored firms from access to this critical information Intel promotes its

9        monopoly on microprocessors.

10  In pursuit of that complaint, AMD filed an application in this Court for an order directing Intel to

11  produce documents pursuant to 28 U.S.C. §1782. Section 1782(a) provides that a federal district

12  court "may order" a person "resid[ing]" or "found" in the district to give testimony or produce

13  documents "for use in a proceeding in a foreign or international tribunal. . . upon application of any

14  interested person." In its present form, AMD's application consists of seventy (70) document

15  requests, sixty-seven (67) of which essentially seek Intel documents produced to Intergraph

16  Corporation in an action between the parties in the Northern District of Alabama, Intergraph

17  Corporation v. Intel Corporation, CV 97-N-3023-NE (the "Intergraph case"). Intel produced

18  approximately 500,00 pages of confidential business information in the course of the Intergraph case.

19        The Intergraph case included allegations of patent infringement, state law violations, and

20  antitrust claims. Intergraph's antitrust claims were reportedly based upon assertions that Intel's

21  decision not to supply Intergraph with the patented Intel sample and pre-release microprocessors

22  constituted monopolization of the microprocessor market; that Intel violated Section 2 of the

23  Sherman Act by using its monopoly microprocessors to leverage a competitive advantage in the

24  downstream markets of workstations, graphics accelerators and chipsets; and that Intel conspired

25  with Intergraph workstation competitors to hinder Intergraph's sale of workstations to selected

26  digital animation customers.  Intergraph's antitrust claims were rejected on summary judgment.

27  Intergraph Corp. v. Intel Corp., 88 F.Supp.2d 1288 (N.D. Ala. 2000), aff'd 253 F.3d 695 (Fed. Cir.

28  2001).

**United States District Court**
For the Northern District of California

**III. DISCUSSION**

This Court has the benefit of the Supreme Court's determination that Section 1782(a) authorizes, but does not require a federal district court to authorize the discovery sought in this case. Intel Corp. v. Advanced Micro Devices, Inc., 124 S.Ct. 2466 (2004).[1] To guide this Court on remand, the Supreme Court delineated four main factors that "bear consideration" in ruling on a §1782 request. First, the Supreme Court found that "when the person from whom discovery is sought is a participant in the foreign proceeding (as Intel is here), the need for §1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." Id. at 2483. The Supreme Court reasoned as follows:

> A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. . . . In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent §1782(a) aid.

Id. Second, the Supreme Court found that the district court faced with a §1782(a) request "may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." Id. Third, the Supreme Court also stated that "a district court could consider whether the §1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Id. Fourth, the Supreme Court instructed that "unduly intrusive or burdensome requests may be rejected or trimmed." Id.

Having considered the factors set forth by the Supreme Court, this Court, in its discretion, holds that AMD's application for discovery should be denied in full. First, the Supreme Court has

---

[1] In reaching this conclusion, the Supreme Court resolved three key issues. First, it held that Section 1782 does not contain a "foreign-discoverability" requirement. Id. at 2476. Thus, AMD is not required in this case to make a threshold showing that the discovery it seeks would have been discoverable in the European Commission investigation had those documents been located within the Union. Second, the Supreme Court held that Section 1782(a) makes discovery available to complainants, such as AMD, who do not have the status of private "litigants" and are not sovereign agents. Id. Third, the Supreme Court held that a "proceeding" before a foreign "tribunal" need not be "pending" nor "imminent" for an applicant to invoke §1782(a). Id. Instead, "§1782(a) requires only that a dispositive ruling by the Commission, reviewable by the European courts, be within reasonable contemplation." Id. at 2480.

3

**United States District Court**
For the Northern District of California

1   already determined that Intel is a participant in the EC proceedings, and that participant-status is

2   significant because the EC has jurisdiction over Intel, and therefore could simply ask Intel to produce

3   any or all of the discovery AMD now seeks.  The EC, however, has not sought the documents AMD

4   now seeks.  Therefore, the first factor weighs against granting AMD's application.

5          Second, the EC is not receptive to judicial assistance in this case.  On this issue, it is

6   significant to this Court that the Supreme Court cited to the EC's two <u>amicus curiae</u> briefs to support

7   the finding that the EC "does not need or want" this Court's assistance in obtaining the documents

8   AMD seeks.  <u>See</u> European Commission <u>Amicus Curiae</u> 11-16; Brief for European Commission as

9   <u>Amicus Curiae</u> in Support of Pet. for Cert. 4-8.  The EC also stated that it "does not consider it

10  necessary to request or even subsequently to review the documents sought" by AMD in this case.

11  Brief for European Commission as <u>Amicus Curiae</u> in Support of Pet. for Cert. 4.  Moreover, the EC

12  has stated that granting AMD's §1782(a) request would jeopardize "vital Commission interests."

13  <u>See</u> European Commission <u>Amicus Curiae</u> 15.

14         Third, AMD's §1782(a) application appears to be an attempt to circumvent the EC decision

15  not to pursue such discovery.  <u>See</u> European Commission <u>Amicus Curiae</u> 6.

16         Because three out of the four factors discussed above clearly weigh against granting AMD's

17  application, the Court finds it largely unnecessary and purely academic to address the final factor,

18  namely whether the requests are unduly intrusive or burdensome.  Nevertheless, for the sake of

19  completeness, the Court finds that the documents sought in AMD's application are unduly intrusive

20  and burdensome.  AMD has made no attempt to tailor its application to the subject matter of the EC

21  complaint.  For example, AMD's document requests do not contain the words "Europe" or

22  "European," the name of any European country, or the name or description of any European OEM or

23  retailer.  Instead, it appears that AMD intentionally kept the requests broad, essentially lifting 67 out

24  of its 70 document requests verbatim from requests served on Intel by Intergraph.  The breadth of

25  AMD's application, when considered in light of the EC's determination that the requested

26  documents are unwanted and unlikely to be reviewed, weighs against granting any portion of AMD's

27  application.

28

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

### IV.  CONCLUSION

For the reasons set forth above, AMD's amended application for discovery is denied in full. Intel's cross-application is denied as moot.

Dated: October 4, 2004

01misc7033

JAMES WARE
United States District Judge

5

OCT 07 '04 03:44PM GD&C LA 5353                                P.6

**United States District Court**
For the Northern District of California

1    **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN MAILED TO:**

2

3    Patrick Lynch
     David Hurwitz
     O'MELVENY & MYERS
4    400 South Hope Street
     Los Angeles, CA 90071-2899

5

6    Robert Cooper
     GIBSON, DUNN & CRUTCHER
     333 South Grand Ave.
7    Los Angeles, CA 90071-3197

8    James Murray
     Intel Corp.
9    2200 Mission College Blvd., SC4-202
     Santa Clara, CA 95052-8119

10

11   Dated: October 4, 2004            Richard W. Wieking, Clerk

12

13                           By: 
                              Ronald L. Davis
14                             Courtroom Deputy

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit F



**PRESS RELEASES**     *Rapid*

nt legal notice

English

EUROPA > European Commission > Press Room > Press Releases     Contact | Search on EUROPA

Midday Express    Recent Press Releases    Select a topic      Search

**PRESS RELEASES** *Rapid*

→ Login

→ Register

→ Documentation

→ What's New

→ About

## Competition: Commission sends new letter to Microsoft on compliance with decision

Reference: IP/06/298   Date: 10/03/2006

     HTML: EN FR DE
     PDF:   EN FR DE
     DOC:  EN FR DE

**IP/06/298**

Brussels, 10th March 2006

**Competition: Commission sends new letter to Microsoft on compliance with decision**

*The European Commission has sent a letter to Microsoft setting out its preliminary view on how Microsoft is still not in compliance with its obligations under the March 2004 Commission decision (see IP/04/382). In particular, the letter includes a report from the Monitoring Trustee (see IP/05/1215) that contains factual information supporting the Commission's objections outlined in a Statement of Objections (SO) of 21 December 2005 (see IP/05/1695). The SO indicated that Microsoft had not yet complied with the obligation, imposed by the Commission's March 2004 decision that Microsoft infringed EC Treaty rules on abuse of a dominant position (Article 82), to disclose complete and accurate interface documentation which would allow non-Microsoft work group servers to achieve full interoperability with Windows PCs and servers. The letter sent today brings this information to Microsoft's immediate attention, in order to provide Microsoft the opportunity to make its views known in writing.*

Professor Neil Barrett, the Monitoring Trustee, is a computer science expert appointed by the Commission (see IP/05/1215) on the basis of a shortlist of candidates submitted by Microsoft. He provides technical advice to the Commission on issues relating to Microsoft's compliance with the Commission's March 2004 Decision. For factual information on the Monitoring Trustee and his role, see MEMO/06/119.

The Commission has also sent Microsoft a report from TAEUS Europe Ltd, the European subsidiary of TAEUS International Corporation, a Colorado-based firm that specialises in intellectual property valuation, reverse engineering, litigation support and expert testimony, recruited by the Commission as expert advisors in December 2005.

The obligations imposed by the March 2004 Decision were suspended pending the Court of First Instance's consideration of Microsoft's request for interim measures, a request denied on 22 December 2004 (see MEMO/04/305). After that date, the Commission discussed with Microsoft its compliance, and market tested Microsoft's proposals on interoperability (see IP/05/673). In light of the results of that market

test, the Commission issued a decision on 10 November 2005 pursuant to Article 24 (1) of Regulation 1/2003. This warned that should Microsoft not comply by 15 December 2005 with its obligation to: (i) supply complete and accurate interoperability information; and (ii) make that information available on reasonable terms, it would face a daily fine of up to €2 million. The Commission then sent a Statement of Objections to Microsoft on 22 December 2005.

Following the Statement of Objections, Microsoft provided the Trustee with revised interoperability documentation on 29 December 2005 and the Trustee met with Microsoft's engineers on 30 and 31 January 2006. The Trustee's latest report, which he began as soon as he received the revised documentation, was recently completed. Having analysed the latest reports from the Trustee and TAEUS, the Commission takes the preliminary view that this information continues to be incomplete and inaccurate.

The Monitoring Trustee notes that although it was improved slightly, "*nothing substantial was added to the Technical Documentation*" compared to the previous version, and that the material continues to be incomplete, inaccurate and unusable. The improvements required to the documentation are not merely refinements or improvements to the text: the documentation as it stands is unusable.

TAEUS has analysed the reports from the Trustee cited in the 21 December Statement of Objections and has also looked at Microsoft's documentation. The report describes various parts of the documentation as "*entirely inadequate*", "*devoted to obsolete functionality*" and "*self-contradictory*". TAEUS concludes that Microsoft's documentation was written "*primarily to maximize volume (page count) while minimizing useful information.*"

In addition, both reports point out that Microsoft appears to assume that it is for users of the documentation to report incorrect, incomplete or inaccurate information which Microsoft would then correct. Professor Barrett concludes: "*The response that such 'bugs' in the documentation are unavoidable is understandable, but to expect that all such subsequent problems will be encountered and reported by users... is not sufficient. It is Microsoft's responsibility to present suitable documentation...*".

TAEUS compares this to a car manufacturer responding to a customer complaint that a car had been delivered without wheels: "this would be like the manufacturer supplying wheels only to have the next deficiency come up – namely that the automobile has no engine, and then no steering wheel, then no brakes, etc."

Microsoft has requested an Oral Hearing, scheduled for 30 and 31 March 2006. The Commission may then, after consulting the Advisory Committee of Member State Competition Authorities, issue a decision pursuant to Article 24(2) of Regulation 1/2003 imposing a fine on Microsoft for every day between 15 December 2005 and the date of that Article 24(2) decision. The Commission may then take other steps to continue the daily fine until Microsoft complies with the March 2004 Decision.

Exhibit G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN THE MATTER OF APPLICATION OF
DIETER WINKLER,

                        Petitioner,

                              )
                              )      **M 19-88 (RCC)**
                              )
                              )      **ORDER**
                              )
                              )

**RICHARD CONWAY CASEY, United States District Judge:**

     **WHEREAS,** Dieter Winkler ("Petitioner") seeks the assistance of this Court under 28

U.S.C. § 1782 to obtain discovery from three law firms ("Respondents") to be used in a lawsuit

currently pending in the Federal Republic of Germany against Deutsche Telekom AG ("German

Action"), such discovery consisting primarily of documents that were seized by the Bonn Public

Prosecution Office as part of a German criminal investigation and produced for use in In re Deutsche

Telekom AG Sec. Litig., No. 00 Civ. 9475 (SHS) ("American Action") in reliance on the protections

afforded by a Stipulation and Order Governing the Production and Use of Confidential Material that

was entered by Judge Stein on October 21, 2001 ("Confidentiality Order"); and

     **WHEREAS,** the Court, sitting in Part I, heard oral argument on this matter on November

21, 2005; and

     **WHEREAS,** Petitioner has met the statutory requirements of § 1782, see 28 U.S.C. § 1782,

In re Edelman, 295 F.3d 171, 175-76 (2d Cir. 2002), but the Court nevertheless has "broad

discretion" as to whether to order discovery under § 1782, see id. at 181, In re Schmitz, 259 F. Supp.

2d 294, 295, 297 (S.D.N.Y. 2003), and in exercising that discretion must consider "the twin aims

of the statute: providing efficient means of assistance to participants in international litigation in our

federal courts and encouraging foreign countries by example to provide similar assistance to our

courts," In re Metallgesellschaft AG, 121 F.3d 77, 79 (2d Cir. 1997) (internal quotation marks and

citation omitted), which includes consideration of "the receptivity of the foreign government or the

court or the agency abroad to U.S. federal-court judicial assistance," Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264 (2004); and

**WHEREAS**, the Court is in possession of a copy of a letter dated November 9, 2005 from Dr. Hansjörg Geiger, State Secretary of the German Federal Ministry of Justice in Berlin, to Deputy Attorney General Robert D. McCallum, Jr. of the United States Department of Justice, expressing the German government's concern that a ruling granting Petitioner's application for judicial assistance would circumvent the final and binding decision by the Bonn Regional Court that granted Petitioner only limited access to the documents sought, and could therefore "threaten German sovereign rights"; and

**WHEREAS**, to avoid undermining the purposes of § 1782, "it is legitimate to take Germany's explicitly stated sovereignty concerns into account," Schmitz, 259 F. Supp. 2d at 298 (denying an almost identical request for judicial assistance under § 1782 by plaintiffs in lawsuits against Deutsche Telekom AG in the Federal Republic of Germany based on a similar letter from Dr. Geiger to the Deputy Attorney General indicating that disclosure of the documents at issue could jeopardize German sovereign rights, a similar denial by German authorities to grant access to those documents sought, and the fact that, as here, the documents had originally been made available by the Bonn Public Prosecution Office on the condition that they be used solely for purposes of the American Action), see also Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 81, 85 (2d Cir. 2004) (affirming the district court's judgment on the ground that the German government had made clear that it was unreceptive to judicial assistance such that granting discovery "would run counter to the statute's aims of assisting foreign courts and litigants and encouraging foreign jurisdictions to provide reciprocal assistance to American courts," and further noting that "[i]t is hard to imagine a discovery order that could have effectively eliminated the concerns raised by

German authorities and fulfilled the aims of § 1782"); and

**WHEREAS**, the Court finds that Petitioner's application is a clear attempt to end-run the

Bonn Regional Court's decision allowing access only to those documents deemed necessary to

support claims under German civil law, <u>see</u> <u>Intel</u>, 542 U.S. at 265 (noting that a district court may

consider whether a request under § 1782 "conceals an attempt to circumvent foreign proof-gathering

restrictions or other policies of a foreign country or the United States");

**IT IS ORDERED** that the Court hereby **DENIES** Petitioner's application for judicial

assistance under 28 U.S.C. § 1782.

**So Ordered:**  New York, New York
            November 21, 2005

Richard Conway Casey, U.S.D.J.