Richard A. Jones (SBN: 135248)
COVINGTON & BURLING
One Front Street
San Francisco, CA 94111
TEL: (415) 591-6000
FAX: (415) 591-6091
E-MAIL: rjones@cov.com

E. Edward Bruce (*pro hac vice pending*)
William D. Iverson (*pro hac vice*)
Joshua D. Wolson (*pro hac vice*)
COVINGTON & BURLING
1201 Pennsylvania Avenue N.W.
Washington, D.C. 20004
TEL: (202) 662-6000
FAX: (202) 662-6291
E-MAIL: ebruce@cov.com
         wiverson@cov.com
         jwolson@cov.com

Attorneys for Applicant Microsoft Corp.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| *In re*<br><br>Application Of<br><br>MICROSOFT CORPORATION,<br><br>        Applicant. | Case No. 06-80038 JF (PVT)<br><br>**MICROSOFT CORPORATION'S CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTIONS TO QUASH SUBPOENAS**<br><br>Date: TBD<br>Time: TBD<br>Before: Magistrate Patricia Trumbull<br>Place: Courtroom Five, Fourth Floor |

# TABLE OF CONTENTS

STATEMENT OF FACTS ....................................................................................... 3

The Commission's Proceedings Against Microsoft. ............................................. 3

    The Commission's 2004 Decision, Article 24(1) Decision and Statement of
        Objections .................................................................................................. 3

    The Role of the Monitoring Trustee. ............................................................. 5

Microsoft's Efforts To Obtain Relevant Documents From The Commission. ........... 6

Respondents' Contacts With The Trustee, OTR, And The Commission. .................. 8

Microsoft's § 1782 Discovery Requests (As Narrowed March 18, 2006). ............... 10

ARGUMENT ..................................................................................................... 11

I.     THE NARROWED SUBPOENAS SEEK DISCOVERABLE
       INFORMATION UNDER SECTION 1782 .................................................... 11

     A.    Respondents' Communications With OTR Or The Monitoring Trustee
          Are Discoverable. ..................................................................................... 11

          1.    Respondents' communications with the Monitoring Trustee or
              OTR comprise important parts of Microsoft's defense against
              the SO. .......................................................................................... 11

          2.    Discovery of Respondents' communications with the
              Monitoring Trustee or OTR will further the purpose of Section
              1782. ............................................................................................. 13

          3.    Sun's and Oracle's reliance on *Intel* is misplaced. ....................... 14

     B.    Respondents' Communications With The Commission Are
          Discoverable. ..................................................................................... 21

          1.    Respondents' communications with the Commission comprise
               important parts of Microsoft's defense against the SO. .................. 21

          2.    Discovery of Respondents' communications with the
               Commission will further the purpose of section 1782. .................... 21

II.    RESPONDENTS' REMAINING OBJECTIONS DO NOT JUSTIFY
       DENYING MICROSOFT THE DISCOVERY OF RELEVANT
       INFORMATION REQUESTED BY THE SUBPOENAS AS NARROWED. ....... 22

CONCLUSION ................................................................................................... 24

# TABLE OF AUTHORITIES

## <u>Cases</u>

Case T-30/91, *Solvay S.A. v. Comm'n of the European Communities*, 1995 E.C.R. II.1775.................................................................................................................. 13

*Four Pillars Enterprises Co., Ltd. v. Avery Dennison Corp.*, 308 F.3d 1075 (9th Cir. 2002) ........................................................................................................................ 14

*In re Application of Euromepa, S.A.*, 51 F.3d 1095 (2d Cir. 1995)....................................... 14, 18

*In re Application of Malev Hungarian Airlines*, 964 F.2d 97 (2d Cir. 1992)............................ 18

*In re Application of Metallgesellschaft AG*, 121 F.2d 77 (2d Cir. 1997) .............................. 14, 18

*In re Application of Schmitz*, 259 F. Supp. 2d 294 (S.D.N.Y. 2003), *aff'd* 376 F.3d 79 (2d Cir. 2004)......................................................................................................... 14

Joined Cases T-67/00, T-68/00, T-71/00, and T-78/00, *JFE Eng. Corp. et al.*, [not yet reported].............................................................................................................. 18, 20

*Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45 (D.D.C. 2005) ....................................................................................................................... 23

*Schmitz v. Bernstein Liebhard & Lifschitz LLP*, 376 F.3d 79 (2d Cir. 2004)............................ 20

## <u>Statutes</u>

28 U.S.C. § 1782................................................................................................................. passim

## <u>Other Authorities</u>

Council Reg. 1/2003 ................................................................................................................. 4

Council Reg. 2005/C-325/07 .................................................................................................. 21

S. Rep. No. 1580, 88th Cong. 2d Sess. ............................................................................... 14, 16

## <u>Rules</u>

Fed. R. Civ. P. 26.............................................................................................................. 18, 24

MICROSOFT CORPORATION'S CONSOLIDATED
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTIONS TO QUASH SUBPOENAS
Case No. 06-80038 JF (PVT)

ii

Microsoft has applied, pursuant to 28 U.S.C. § 1782, for this Court's assistance to obtain discovery that is highly relevant to Microsoft's defense in a proceeding before the European Commission ("Commission") in which Microsoft faces fines of up to €2 million per day, dating back to December 15, 2005.  Microsoft seeks discovery that will undermine the credibility and neutrality of the expert testimony relied upon by the Commission.  A hearing officer for the Commission has already concluded that Microsoft would be entitled to the type of information it has requested if that information were contained in the Commission's file of its investigation of Microsoft.  In addition, Microsoft's request is consistent with the Commission's announced policies favoring transparency and with recent decisions of the European Court of the First Instance recognizing the importance of "unfettered evaluation of evidence."

In an effort to avoid these central facts justifying discovery, Oracle's and Sun's[1] motions to quash rest upon assertions that "of paramount importance for judicial assistance under [28 U.S.C.] § 1782(a) is whether the foreign government or agency is receptive to judicial assistance from a U.S. court."  Oracle Mem. 13; *see also* Sun Mem. 4 ("Section 1782 is designed to assist and aid foreign tribunals").  These assertions, as well as the copious references to and quotes from a March 10, 2006 letter and annex from the Directorate-General for Competition ("DG Comp"), a "service of the [European] Commission," are based upon a misreading – indeed, a distortion – of the plain meaning of § 1782 and the Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).  Respondents build upon that distortion by overstating DG Comp's position in the annex and by ignoring the Commission's publicly announced policies and rulings in its prosecution of Microsoft.

_____

[1] Unless otherwise noted, "Sun" refers collectively to Sun Microsystems, Inc., Morgan Lewis & Bockius LLP ("Morgan Lewis"), and Jeffrey Kingston, who filed a joint motion to quash, and "Oracle" refers collectively to Oracle Corp., Clifford Chance LLP ("Clifford Chance"), Daniel Harris, and Ronald Alepin, who also filed a joint motion to quash.  Sun and Oracle are referred to collectively as "Respondents."  This Memorandum addresses both Sun's and Oracle's motions.

1    The very title of § 1782 – "Assistance to Foreign and International Tribunals and

2    *to Litigants Before Such Tribunals*" (emphasis added) – refutes Respondents'

3    mischaracterizations of the statute.  So do § 1782's plain terms:  "The order [regarding

4    discovery] may be made pursuant to a . . . request made, by a foreign or international tribunal *or*

5    *upon the application of any interested person . . .*" (emphasis added).  Microsoft, as it stands

6    before the Commission accused of violating European competition law and confronting

7    penalties of €2 million per day, is the quintessential "interested person" that can invoke the

8    assistance of the United States Courts under § 1782 to help prepare its defenses.  *See Intel*, 542

9    U.S. at 256 ("No doubt litigants are included among, and may be the most common example of,

10    the 'interested persons' who may invoke § 1782").  Accordingly, the Supreme Court's *Intel*

11    decision necessarily rejected the proposition that this statute was enacted for the benefit only of

12    international tribunals, as opposed to U.S. businesses and individuals who are confronted with

13    enforcement proceedings before those tribunals.

14    In rejecting the Commission's argument that it was exempt from § 1782, the

15    Court recognized, 542 U.S. at 257, that both

16    the Court of First Instance and the European Court of Justice, qualify as
      tribunals.  But those courts are not proof-taking instances…. Hence AMD
17    [the complainant] could 'use' evidence [obtained under § 1782] only by
      submitting it to the Commission….

18    The same is true here:  The evidence that Microsoft seeks in this proceeding is necessary to

19    permit the European courts to review the evidence that has prompted the enormous €2

20    million/day penalty that Microsoft confronts.  Moreover, Microsoft's best opportunity before the

21    Commission to challenge the self-serving views of the "interoperability" issue put forward by

22    Sun, Oracle, Novell, and IBM to warp the impartiality of the Commission's "experts" – and thus

23    to preserve the issue for appeal to the Court of First Instance – will be in the hearings now

24    scheduled for March 30 and 31.

25    Nothing decided by the district court on remand from *Intel* is of any relevance

26    here.  *See Advanced Micro Devices v. Intel Corp.*, No. C01-7033, 2004 WL 2282320 (N.D. Cal.

27    Oct. 4, 2004) (submitted as Ex. G to Declaration of James Penrod).  There, a complainant in a

28    Commission proceeding sought discovery under § 1782 to assist the Commission in a possible

MICROSOFT CORPORATION'S CONSOLIDATED
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTIONS TO QUASH SUBPOENAS
Case No. 06-80038 JF (PVT)

2

prosecution of Intel.  The Commission's position in that case – that it did not want or need such assistance to decide whether to exercise its own prosecutorial discretion – was important to the exercise of the district court's discretion not to grant the discovery sought.

Here, in complete contrast, Microsoft is seeking information that will bolster its defenses against imposition of penalties by the Commission.  The Commission confronts Microsoft – not as an unwanted ally seeking to assist the prosecution of someone else, as in *Intel* – but rather as a defendant, which having been charged by DG Comp, seeks to persuade the Commission not to impose breath-taking daily fines.  In these circumstances, the predictable views of DG Comp that Microsoft does not need the information sought by its subpoena should be given no weight by this Court.

To do otherwise would convert § 1782 into a procedure that the Commission and other tribunals could invoke to prosecute U.S. businesses and citizens, but that defendant "litigants" before the Commission and other tribunals could only use to support their defenses in the unlikely event that DG Comp or other prosecutors would agree to such discovery.  If Congress had intended to include such a restriction in § 1782, it would have done so.  Instead, it amended the statute to ensure its availability to litigants in foreign administrative and quasi-judicial proceedings.

## STATEMENT OF FACTS

**The Commission's Proceedings Against Microsoft.**

### The Commission's 2004 Decision, Article 24(1) Decision and Statement of Objections

On March 24, 2004, in response to a complaint filed by Sun, the Commission decided that Microsoft infringed Article 82 of the EC Treaty and Article 54 of the EEA Agreement[2] by refusing to disclose certain "Interoperability Information" to vendors of work

_____

[2] Both Article 82 and Article 54 relate to abuse of a dominant market position, somewhat like section 2 of the Sherman Act.

MICROSOFT CORPORATION'S CONSOLIDATED
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTIONS TO QUASH SUBPOENAS
Case No. 06-80038 JF (PVT)

3

group server operating system products (the "2004 Decision").[3]  (Burt Decl. Ex. A (submitted in support of Microsoft Application).)  Microsoft has appealed this Decision, and the Court of First Instance has scheduled an extraordinary five-day hearing starting April 24 before a Grand Chamber of 13 judges – similar to an *en banc* proceeding – to hear Microsoft's appeal.

To comply with the 2004 Decision, Microsoft created and made available to prospective licensees extensive Interoperability Information (the electronic equivalent of over 12,000 printed pages).  Despite Microsoft's compliance, on November 10, 2005, the Commission adopted a decision (the "Article 24(1) Decision") which asserted that Microsoft had violated the 2004 Decision by failing to make available fully adequate Interoperability Information to prospective licensees, and by proposing excessively high royalty rates to license the Interoperability Information.[4]  To support these allegations, the Commission relied principally on two reports from the OTR Group ("OTR"), an outside consulting firm retained by the Commission as independent experts.  It also referred to critical comments on Microsoft's Interoperability Information by four of Microsoft's competitors, including Sun and Oracle.

The Article 24(1) Decision instructed Microsoft to come into compliance by December 15, 2005, or face a daily fine of €2 million.[5]  Microsoft complied with the Article 24(1) Decision and made revised documentation available on December 15.

Just six days later, however, without reviewing the revised Microsoft documentation, the Commission adopted a Statement of Objections ("SO") charging that

---

[3] "Interoperability Information" is defined by Article 1(1) of the 2004 Decision to include specifications for communication protocols used by Windows work group server operating systems to deliver certain services to Windows networks.  The 2004 Decision is available at http://europa.eu.int/comm/competition/antitrust/cases/decisions/37792/en.pdf

[4] "Article 24(1)" is part of Council Regulation 1/2003 of December 16, 2002, on the implementation of competition laid down in Articles 81 and 82 of the EC Treaty, OJ L 1, 4.1.2003, p 1/1 (available at http://europa.eu.int/eur-lex/pri/en/oj/dat/2003/l_001/l_00120030104en00010025.pdf).

[5] The proposed fine represents the first time the Commission has invoked the greatly expanded authority to levy fines of up to 5% of an undertaking's average daily turnover (revenue), compared with the previous limit of €1,000 a day.  *See* Regulation 1/2003, *supra*, Article 24.

MICROSOFT CORPORATION'S CONSOLIDATED
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTIONS TO QUASH SUBPOENAS
Case No. 06-80038 JF (PVT)

4

1   Microsoft had failed to comply with the 2004 Decision and the Article 24(1) Decision because it

2   had not provided adequate Interoperability Information.  The SO represented the first step

3   toward actually imposing the fine threatened by the Article 24(1) Decision and triggered

4   Microsoft's "rights of defence," including its right to access the file compiled by the

5   Commission in its investigation and Microsoft's right to a hearing.  The Commission based its

6   allegations in the SO on evaluations of earlier versions of Microsoft's documentation contained

7   in (1) two reports by a "Monitoring Trustee" who had been appointed to monitor Microsoft's

8   compliance with the 2004 Decision, (2) the earlier two OTR reports cited in the Article 24(1)

9   Decision, and (3) the comments the Commission had received from Microsoft's competitors,

10  including Sun and Oracle, as also cited in the Article 24(1) Decision.  Microsoft filed a response

11  on February 15, 2006.  However, that response was not able to address the documents showing

12  the deep involvement of Sun and Oracle with the Trustee and OTR because the Commission did

13  not release those documents to Microsoft until February 13.  On March 2, Microsoft filed a

14  Supplemental Response to the SO, addressing those documents and arguing that its "rights of

15  defence" had been abridged.

16          **The Role of the Monitoring Trustee.**

17          As noted, the Commission based its SO in part on two reports by a Monitoring

18  Trustee, who was appointed to review Microsoft's compliance under a decision adopted by the

19  Commission dated July, 28, 2005 (the "Monitoring Trustee Decision").[6]  Most importantly here,

20  Article 2.2 of that decision provided that the Trustee should "carry out its mandate impartially."

21  The Trustee was also instructed to establish procedural safeguards to protect Microsoft's due

22  process rights and ensure a transparent record of communications between the Monitoring

23  Trustee and others.  For example, the Trustee "may have access to any compilation of

24  documents… that Microsoft or any third party is requested or required *to submit to the*

_____

26  [6] Available at

27  http://europa.eu.int/comm./competition/antitrust/cases/decisions/37792/trustee.pdf.

*Commission* for the purpose of monitoring Microsoft's compliance with the" 2004 Decision. *Id.*, Art. 3(2)(b) (emphasis added). Thus, any documents the Trustee received under Article 3(2)(b) should have been placed in the Commission's file, giving Microsoft access to them or the right to have them identified as documents being withheld (and why).

Second, the Monitoring Trustee was directed to establish a procedure for third parties to lodge complaints with the Trustee concerning Microsoft's compliance with the 2004 Decision. *Id,*, Art. 3(3). But the Trustee was also directed to send a copy of the complaint to the Commission, thereby insuring its inclusion in the Commission's file to which Microsoft presumptively has access, *id.*, as well as to provide a non-confidential version of any complaint to Microsoft and allow Microsoft to respond, *id.*[7]

However, the Trustee has not set up the complaint procedure required by the Monitoring Trustee Decision, and Microsoft has thus not been afforded an opportunity to respond to the Monitoring Trustee's communications with third parties, or even to receive copies of documents setting forth such communications, even though the Monitoring Trustee has had communications with Sun and Oracle that have not been disclosed to Microsoft in which Sun and Oracle sought to "educate" the Monitoring Trustee. (Burt Decl. Ex. H.)

**Microsoft's Efforts To Obtain Relevant Documents From The Commission.**

The SO was accompanied by an annex purportedly providing a "List of Documents in the [Commission's] file." (Burt Decl. Ex. B.) The "file," as the Commission defined it in its initial disclosure to Microsoft, included primarily correspondence between Microsoft and the Commission, as well as the reports from OTR and the Monitoring Trustee on which the SO relied. It also included formal requests for information sent by the Commission to Sun, Oracle, IBM, and Novell, and each company's response. However, the file index

---

[7] A complaint could be "confidential" only to the extent that it contained proprietary information about the business of a third-party. Article 3(3) also allows the Trustee to preserve the anonymity of the complaint, in appropriate cases.

MICROSOFT CORPORATION'S CONSOLIDATED
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTIONS TO QUASH SUBPOENAS
Case No. 06-80038 JF (PVT)

6

1  accompanying the SO did not include any other communications with Sun or Oracle, nor did the

2  Commission state that it was withholding such documents.

3  On December 24, 2005, Microsoft wrote to the Commission hearing officer who

4  rules on procedural matters pointing out that the file index appeared to be plainly incomplete

5  and requesting access to the full file. (Burt Decl. Ex. C.)  On January 13, 2006, the hearing

6  officer instructed the Commission to provide a list of documents that the Commission had

7  withheld from Microsoft.  (Burt Decl. Ex. D.)  The Commission provided a list on January 20,

8  which revealed that the Commission had withheld as "Confidential" more than 40 documents

9  reflecting correspondence between the Commission and Microsoft's competitors, including 22

10  involving Sun or Oracle ("A" and "B" respectively on the list).  (Burt Decl. Ex. E.)  This was

11  the first time that the Commission acknowledged that it failed to provide to Microsoft a number

12  of communications with third parties such as Sun and Oracle.

13  On January 30, Microsoft sent a letter to the hearing officer requesting access to

14  the Commission's correspondence with Sun, Oracle, Novell, or IBM.  The letter also requested

15  copies of OTR's or the Monitoring Trustee's communications with those companies.  (Burt

16  Decl. Ex. F.)[8]

17  On February 8, the hearing officer directed the Commission to provide copies of

18  its own communications with third parties, including Sun and Oracle.  She also agreed that

19  communications the Trustee or OTR had with these and other third parties could not be withheld

20  as internal to the Commission.  Nonetheless, she noted that the Commission's file indexes

21  identified only one such document, tacitly taking the view that if the Commission had not

22  received such documents and placed them in its "file," Microsoft's right of access to the file (its

23  sole avenue of anything resembling discovery in the proceeding) was not triggered.  (Burt Decl.

24  Ex. G.)  The Commission complied with the hearing officer's directive on February 13, more

25  _____

26  [8] Sun and Oracle mistakenly assert that this request was not made until March 2, suggesting that
the hearing officer and the Commission have not had time to respond; in fact, its request was

27  made on January 30.

28

MICROSOFT CORPORATION'S CONSOLIDATED
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTIONS TO QUASH SUBPOENAS
Case No. 06-80038 JF (PVT)

7

than seven weeks after it issued the SO and only two days before Microsoft's response to the SO was due on February 15.  As a result, Microsoft filed a Supplemental Response to the SO on March 2, describing the significance of those documents and stressing that its competitors' extensive contacts with the Trustee and OTR, facilitated and encouraged by the Commission, compromised the objectivity of their reports.  (Burt Decl. Ex. L.)

**Respondents' Contacts With The Trustee, OTR, And The Commission.**

The documents that the Commission provided Microsoft on February 13 show that both Sun and Oracle, among others, have been actively engaged, with the assistance and sometimes the encouragement of the Commission, in efforts to "educate" the putatively independent Trustee and OTR, at the expense of Microsoft.  Microsoft contends as part of its "rights of defence" that this has been done in a manner inconsistent with the Commission's role as neutral regulator, the Trustee's role as an "impartial" monitor, or OTR's role as independent expert.  The documents Microsoft has obtained to date provide part of the story.  Microsoft seeks § 1782 discovery to get the full story.

Thus, among the contacts revealed by the presently available documents are:

- The Commission tried to initiate a meeting between the Monitoring Trustee and Sun in order to give the Monitoring Trustee a "first impression of what is at stake" and to "introduce [the Trustee] to the issues."  (Burt Decl. Ex. H.)  Sun agreed that such a meeting would be useful, noting that it would "begin what will be *a huge education process*."  (*Id.* (emphasis added).)   When Sun could not make a meeting on a date proposed by the Commission, the Commission told Sun, "That's really unfortunate.  We would have appreciated to present [the Trustee] with your view *before he meets with Microsoft for the first time*."  (*Id.* (emphasis added).)  Sun, the Commission, and the Monitoring Trustee then scheduled a conference call for October 27, 2005, to be followed by a personal meeting on November 9;

- In November 2005, Sun's lawyers, including Mr. Kingston of Morgan Lewis, e-mailed the Commission to propose a schedule for meetings between Sun, the Trustee, and the Commission's case team before and after Sun visited Microsoft to view its documentation.  The e-mail then explains that the Trustee should not accompany Sun's representatives on their visit to Microsoft because "*[t]here is fear at Sun that this will expose too much to MS* [Microsoft]*.*"   (Burt Decl. Ex. J (emphasis added).)

- In September 2005, Oracle arranged for Mr. Alepin, a "technology advisor" employed by a San Francisco law firm, to inspect the documentation that Microsoft had made available to comply with the Commission's 2004 Decision.  Mr. Alepin sent an e-mail to Oracle's outside lawyers reporting that he had taken extensive notes on Microsoft's documentation.  Seven minutes later, Oracle's counsel forwarded the message to the Commission's Head of Unit in charge of the Microsoft case asking whether Mr. Alepin should be asked to cancel a vacation scheduled for the next week, noting that he –

MICROSOFT CORPORATION'S CONSOLIDATED
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTIONS TO QUASH SUBPOENAS
Case No. 06-80038 JF (PVT)

8

Oracle's counsel – would be willing to have Mr. Alepin's vacation cancelled because "*Oracle has made a large investment in this, so I need to do what is necessary to ensure that you can effectively use the results of our efforts*." (*Id.* Ex. K (emphasis added).) Mr. Harris of Clifford Chance received a copy of this e-mail.

Microsoft was not informed of these meetings or communications, much less invited to participate to ensure that the communications were fair and unbiased. Nor has Microsoft received any record of what took place during these various calls or meetings, such as notes or reports.

OTR's report to the Commission dated September 28, 2005, upon which the Commission relies to support its Article 24(1) Decision and the SO, starkly reveals the extent of the impact that these unreported communications have had. From August 29-31, 2005, Sun conducted a three-day evaluation of the documentation that Microsoft made available. Sun then submitted a report to the Commission, at its request, containing Sun's views of Microsoft's documentation. During the same period, the Commission asked OTR to evaluate the same documentation. After Sun reported to the Commission but before OTR issued its September 28 report, the Commission organized a conference call between Sun and OTR "on Sun's findings in Redmond …," which apparently occurred on September 20, 2005. (Burt Decl. Ex. I.) Microsoft has not received any documents showing what transpired on that call. However, it is clear that there are very substantial similarities between Sun's report to the Commission and OTR's September 28 report. Indeed, both reports use the same language in a number of places, as well the same turns of phrase to describe various aspects of Microsoft's documentation. (See accompanying Declaration of Joshua Wolson, to which Exhibit A is a table showing the close similarities between the September 28 OTR report (Exhibit B) and the Sun report to the Commission (Exhibit C).) Thus, Sun's views as a Microsoft competitor appear to have been transformed, apparently with the encouragement of the Commission, into a report by a putatively independent and objective expert upon which the Commission relies.

MICROSOFT CORPORATION'S CONSOLIDATED
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTIONS TO QUASH SUBPOENAS
Case No. 06-80038 JF (PVT)

9

**Microsoft's § 1782 Discovery Requests (As Narrowed March 18, 2006).**

After receiving authorization from the Court, Microsoft served subpoenas on the Respondents seeking documents and depositions.[9]  With its subpoenas, Microsoft seeks to gather the same type of information that the Commission's hearing officer had ordered disclosed, but that Microsoft did not receive from the Commission's file because the Commission never received or did not retain the documents.  In short, Microsoft seeks through the subpoenas at issue to supplement the record with documents that, if they were in the Commission's file, would have to be disclosed to Microsoft pursuant to the rulings of the Commission hearing officer, and to obtain discovery on those subjects.  For example, Microsoft's subpoenas seek communications between Sun or Oracle on the one hand and the Monitoring Trustee or OTR on the other hand.  The Commission's hearing officer has already held that such communications cannot be withheld as internal documents.  But no documents setting forth these communications appear in the Commission's file.  Therefore, the only way for Microsoft to supplement the record is through discovery of Sun and Oracle, among others.  As explained below, these documents are highly relevant to Microsoft's defense against the SO.

Sun and Oracle have objected to Microsoft's subpoena in its entirety.  Their objections, like their motions to quash, rely primarily on DG Comp's annex, which claimed that Microsoft's rights of defence were adequately protected by the Commission's rules on access to the file (even though important documents are not contained in that file).  Notably, the annex does *not* say that the documents Microsoft is seeking would be inadmissible before the Commission or would not be considered by the Court of First Instance.

---

[9] Microsoft also served subpoenas on Novell in the District of Massachusetts and on IBM and its counsel Cleary Gottlieb Steen & Hamilton in the Southern District of New York.  Oracle suggests that Microsoft served subpoenas because those parties evaluated Microsoft's Interoperability Information.  In reality, Microsoft served its subpoenas on each party whose communications with the Commission was initially withheld from the "file" that it made available to Microsoft.

MICROSOFT CORPORATION'S CONSOLIDATED
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTIONS TO QUASH SUBPOENAS
Case No. 06-80038 JF (PVT)

10

Sun and Oracle also assert a variety of other objections to Microsoft's discovery, particularly on grounds of burdensomeness. Microsoft met and conferred with both Sun and Oracle concerning their objections, but the parties were unable to reach an agreement. Nonetheless, based on the Respondents' burdensomeness concerns and in order to be able to obtain the most important discovery needed as promptly as possible, Microsoft has informed the Respondents that it will narrow the subpoenas in letters sent to their counsel on March 18, 2006. (Accompanying Declaration of Joshua Wolson ["Wolson Decl."] Exs. D, E) In particular, Microsoft has narrowed the subpoenas to request only documents that "contain, constitute, or summarize any communication with" OTR, the Monitoring Trustee, or the Commission relating to Microsoft's Interoperability Information or to Microsoft's failure to comply with Articles 5(a) and (c) of the 2004 Decision, the Article 24(1) Decision, or the SO.[10] Microsoft also narrowed its subpoenas to Morgan Lewis, Clifford Chance, and Mr. Alepin to include only communications had on behalf of Sun (for Morgan Lewis) or Oracle (for Clifford Chance and Mr. Alepin). Microsoft believes that as thus narrowed, the subpoenas should be enforced.

**ARGUMENT**

I.    **THE NARROWED SUBPOENAS SEEK DISCOVERABLE INFORMATION UNDER SECTION 1782.**

A.    **Respondents' Communications With OTR Or The Monitoring Trustee Are Discoverable.**

1.    **Respondents' communications with the Monitoring Trustee or OTR comprise important parts of Microsoft's defense against the SO.**

The SO relies on evidence from the Monitoring Trustee and OTR, and also cites comments by third parties such as Sun and Oracle. The motives of Microsoft's competitors are obvious. Less obvious, however, is the way that Sun's or Oracle's self-serving views may have undermined the objectivity of the reports of the Monitoring Trustee and OTR. But we do know

---

[10] Recently, the Commission served Microsoft with "supplemental" evidence to support its SO, including a report by a newly disclosed expert, TAEUS International Corp. Microsoft's narrowed requests thus seek communications with TAEUS or any other expert that Respondents know or believe to have been retained by the Commission.

MICROSOFT CORPORATION'S CONSOLIDATED
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTIONS TO QUASH SUBPOENAS
Case No. 06-80038 JF (PVT)

11

from the documents that the Commission provided to Microsoft that Sun and Oracle had

extensive communications with both the Monitoring Trustee and OTR, which must have colored

their views of Microsoft's Interoperability Information.  For example, Sun undertook what it

described as a "huge education process" with the Monitoring Trustee.  (Burt Decl. Ex. H.)  It

also provided information to OTR that apparently formed the basis of OTR's September 28

report.  (Wolson Decl. Ex. A-C.)  Oracle in turn made a "huge investment" in its efforts to

provide information that could be used against Microsoft.  (Burt Decl. Ex. K.)

The importance of the Monitoring Trustee and OTR to the Commission's case

against Microsoft – and the value of Microsoft's requested discovery – is not lost on Sun or

Oracle.  As Sun notes, the Commission adopted the SO "[b]ased on the Trustee's reports" on

Microsoft's documentation.  Sun Mem. 7.  Perhaps Oracle says it best:

> The important thing to understand is that the Commission has
> relied on both a 'Monitoring Trustee' and input from Microsoft's
> potential licensees [Oracle *et al.*] to understand the adequacy of
> the interoperability disclosures . . . without the in-house technical
> resources required to determine the adequacy of the disclosures,
> the Commission needed to inform its analysis with input from
> private parties, technical experts and, since 2005, the Monitoring
> Trustee.

Oracle Mem. 4.  It is, of course, precisely this "input" from Oracle, Sun, and their allies, and its

impact upon the Trustee and OTR that Microsoft seeks under § 1782.[11]

Just as in a U.S. proceeding, the credibility of the evidence against Microsoft and

the experts sponsoring that evidence is relevant and admissible in a European proceeding,

including factors tending to show bias affecting the evidence.  (Declaration of Denis

Waelbroeck ¶¶ 52, 54-56.[12])  Notably, neither Respondents nor DG Comp claims that such

---

[11] Oracle's suggestion that Microsoft's position in this Court turns upon the purported
"inappropriate[ness] about the Trustee's contacts with companies like Oracle," Mem. 6, is a red
herring.  Microsoft is not seeking judicial review in the United States of the procedures used in
the Commission.  It is only seeking what § 1782 makes available to litigants before the
Commission – discovery of critically significant information.

[12] Because DG Comp's annex is largely silent on key aspects of European procedure, including
the admissibility of the evidence that Microsoft seeks, Microsoft has submitted Mr.
Waelbroeck's declaration.  Mr. Waelbroeck, a professor of Judicial Protection and EC
(continued…)

MICROSOFT CORPORATION'S CONSOLIDATED
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTIONS TO QUASH SUBPOENAS
Case No. 06-80038 JF (PVT)

12

evidence would be irrelevant or inadmissible before the Commission.  At most, DG Comp suggests that it does not see a need for such evidence, which is unsurprising since DG Comp is the prosecutor.  In any event, clearly Microsoft could present this evidence on appeal to the Court of First Instance.  (*Id.* ¶ 52.)  *See* Case T-30/91, *Solvay S.A. v. Comm'n of the European Communities*, 1995 E.C.R. II.1775, ¶ 83 (applicant's rights of defense were "excessively restricted" because it was not given access to all documents in Commission's file).

However, Microsoft's best opportunity to place this information in the record of the Commission's proceeding is the hearing currently scheduled for March 30 and 31.  This urgency, of course, is one reason why Microsoft filed its petition with this Court on March 3, because it expects Respondents to have documents that are not contained in the Commission's "file."[13]

### 2. Discovery of Respondents' communications with the Monitoring Trustee or OTR will further the purpose of Section 1782.

Microsoft's application presents a paradigm case for § 1782 discovery.  Microsoft has been charged by the Commission with violating European competition laws, and it must defend itself before that tribunal.  It faces daily fines of up to €2,000,000 a day that the Commission asserts began to accrue on December 15, 2005.  Microsoft has identified documents in the possession or control of Sun or Oracle, both found in this District, that could aid in its defense.  And the information that it seeks will be admissible in the foreign tribunal, for consideration in that proceeding or on appeal.  (Waelbroeck Decl. ¶ 52.)  Section 1782's

---

Competition Law at Universite libre de Bruxelles who specializes in European Community law, is the co-author of a leading text book on European Community procedural law entitled "Judicial Protection in the European Union."  He has also been involved in more than 300 cases before the Court of Justice of the European Communities.  (Waelbroeck Decl. ¶¶ 1-3.)

[13] Sun suggests that Microsoft's requested discovery is untimely because "Microsoft has known of the Commission's position as to its noncompliance with the [2004 Decision] for months."  Sun Mem. 18.  But Microsoft did not know of Sun's or Oracle's close involvement with OTR or the Monitoring Trustee until the Commission tardily released the documents made available to Microsoft on February 13.

MICROSOFT CORPORATION'S CONSOLIDATED
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTIONS TO QUASH SUBPOENAS
Case No. 06-80038 JF (PVT)

13

"underlying policy should generally prompt district courts to provide some sort of discovery assistance." *In re Application of Euromepa, S.A.*, 51 F.3d 1095, 1102 (2d Cir. 1995). This case presents no reason for an exception from this general rule.

When Congress amended section 1782 in 1964, it intended to "liberalize[] existing U.S. procedures for assisting foreign and international tribunals and litigants …." S. Rep. No. 1580, 88th Cong. 2d Sess. p. 7. The Senate report explained that in "view of the constant growth of administrative and quasi-judicial proceedings all over the world, the necessity for obtaining evidence in the United States may be as impelling before a foreign administrative tribunal or quasi-judicial agency as in proceedings before a conventional foreign court." *Id.*; *see also Intel*, 542 U.S. at 248-49. Congress did not make this relief available only to foreign administrative tribunals themselves, but also, and explicitly, to litigants who must defend themselves before such tribunals.

An applicant under § 1782 may seek discovery that is not available to it in the foreign proceeding. *See Intel*, 542 U.S. at 260. Moreover, the statute does not require the applicant to exhaust its possible remedies abroad before filing an application under § 1782. *See In re Application of Metallgesellschaft AG*, 121 F.2d 77, 79 (2d Cir. 1997). In deciding what discovery to order under § 1782, a court should take into account the circumstances under which the application arises. *See Four Pillars Enterprises Co., Ltd. v. Avery Dennison Corp.*, 308 F.3d 1075, 1079 (9th Cir. 2002) (affirming magistrate who had taken into account "a set of special circumstances"); *In re Application of Schmitz*, 259 F. Supp. 2d 294, 297 (S.D.N.Y. 2003), *aff'd* 376 F.3d 79 (2d Cir. 2004). Where possible, it is "far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *In re Application of Euromepa S.A.*, 51 F.3d 1095, 1101 (2d Cir. 1995).

3. **Sun's and Oracle's reliance on *Intel* is misplaced.**

Pursuing their distorted interpretation of section 1782 as being "paramount[ly]" for the benefit of foreign tribunals, as opposed to U.S. litigants before those tribunals (*see* Oracle Mem. 13; Sun Mem. 4), both Oracle and Sun lift out of context from the Supreme

MICROSOFT CORPORATION'S CONSOLIDATED
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTIONS TO QUASH SUBPOENAS
Case No. 06-80038 JF (PVT)

14

Court's decision in *Intel* a "non-exclusive list" of factors upon which they say this Court should rely to deny Microsoft the discovery that it seeks:

> the receptivity of the foreign government or the court or agency abroad to U.S. Federal-Court Judicial Assistance;
>
> whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions . . .; and
>
> whether the entity for whom discovery is sought is a participant in the foreign proceeding because a "foreign tribunal has jurisdiction over those appearing before it, and can itself to order them to produce evidence." Oracle Mem at 12; Sun Mem at 10-11.

While these three factors are recited in the Court's opinion in *Intel*, they were not set forth as general rules for all possible § 1782(a) cases. Instead, they addressed the particular circumstances before the Court in *Intel*, which were dramatically different than this case, and were designed to provide guidance to the District Court on remand in that case:

> "§ 1782(a) authorizes, but does not require, a federal district court to provide judicial assistance to foreign or international tribunals or to interested [persons] 'in proceedings abroad.' *Whether such assistance is appropriate in this case is a question yet unresolved.* To guide the District Court on remand, we suggest considerations relevant to the disposition of *that question*.

542 U.S. at 247 (emphasis added).

These three factors made perfect sense in *Intel*, where a complainant seeking to persuade the Commission to initiate a case sought to provide unsolicited help to a foreign tribunal. Obviously, the receptivity of the foreign tribunal to such "assistance," is and should be a significant – if not decisive – consideration for discovery under § 1782(a) in such circumstances. The same is true as to the second factor, the possible circumvention of foreign proof-gathering restriction. Investigative-prosecutorial tribunals that are barred by their own laws from obtaining evidence against a litigant defendant should not be aided by a third party who seeks to obtain such evidence for the benefit of the tribunal. As to the last factor, it is again obvious that a foreign tribunal that has jurisdiction over a litigant and can order the litigant to produce evidence does not need the "assistance" of a volunteer to obtain evidence against the litigant under § 1782. But none of these three factors is relevant to a case, like this one, that

MICROSOFT CORPORATION'S CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTIONS TO QUASH SUBPOENAS Case No. 06-80038 JF (PVT)

15

1    involves an attempt by a litigant who is a defendant before a foreign tribunal to obtain U.S.

2    discovery to support its defense.

3            The factors that the Court set forth in *Intel* to provide guidance to the district

4    court for that case were explicitly based on the 1964 Senate Report when the statute was

5    amended to broaden the availability of discovery under § 1782.  *Id*. at 264.  That Senate report

6    makes clear that

7            "in exercising its discretionary power, the court may take into account the
        nature and attitudes of the government of the *country from which the*
8            *request emanates* and the character of the proceedings in that country. . . ."

9    S. Rept. 88-1580 p. 7 (emphasis supplied).  Clearly the Senate contemplated that "the nature and

10   attitudes of the foreign government" would be of significance only when "the request emanates"

11   from the government of the country.  That, of course, was pertinent in *Intel*.  That emphatically

12   is not the case here.

13           The same is true of the foreign tribunal's lack of "receptivity" to "federal-court

14   judicial assistance" to allow the defendant to obtain discovery to support its defense.  The

15   "assistance" that is sought here – unlike *Intel* – is not for the benefit of the foreign tribunal.

16   Instead "assistance" is for benefit of the defendant.  It is hardly surprising, and of no relevance,

17   that the prosecutor in the foreign proceeding is not "receptive" to such evidence.  The only

18   relevant consideration is whether the defendant can present the evidence in the foreign

19   proceeding for consideration by the initial tribunal or a higher court on appeal.

20           Finally, the Supreme Court in *Intel* clearly *rejected* the argument that § 1782

21   cannot be used in cases, including this one, simply because the discovery is not available under

22   the procedures of the foreign tribunal.  *See* 542 U.S. at 260 ("nothing in the text of § 1782 limits

23   a district court's production-order authority to materials that could be discovered in the foreign

24   jurisdiction").  Thus, merely seeking relevant discovery that is not available under foreign

25   procedures is not tantamount to an effort to evade foreign proof-gathering restrictions, as

26   Respondents suggest.

27           One factor emphasized in *Intel*, 524 U.S. at 264, and explicitly referred to in the

28   Senate Report – "the character of the proceeding," which Sun and Oracle do not address –

MICROSOFT CORPORATION'S CONSOLIDATED
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTIONS TO QUASH SUBPOENAS
Case No. 06-80038 JF (PVT)

16

1  shows that discovery of their communications with OTR or the Monitoring Trustee is entirely

2  appropriate here. Indeed, taking account of the character of the Commission's proceeding

3  against Microsoft, it is clear that Microsoft is entitled to the discovery it requests.

4  First, Microsoft cannot seek discovery from the Respondents in the Commission

5  proceeding. Commission procedures permit Microsoft access to the Commission's file, but they

6  do not offer Microsoft any additional avenues of discovery. (Waelbroeck Decl. ¶¶ 25-28.)

7  Thus, to the extent documents in the Respondents' possession have not also made their way into

8  the Commission's "file," Microsoft can only seek discovery to support its defense by discovery

9  under § 1782.

10  Sun suggests that because it is subject to the Commission's "compulsory

11  process," the Court should deny Microsoft's discovery requests. (Sun Mem 15.) However, the

12  fact that a foreign tribunal such as the Commission may be able to initiate discovery on its own

13  behalf has nothing to do with the defendant's need for U.S. discovery to use in its defense

14  before the tribunal. What matters is the *defendant's* ability to obtain the discovery necessary to

15  its defense. And here Microsoft has no ability, as a defendant, to initiate discovery against its

16  competitors in the foreign tribunal. (Waelbroeck Decl. ¶¶ 25-28.)

17  Moreover, Microsoft's request to the Commission's hearing officer for

18  documents similar to those requested in its subpoenas to Respondents has no bearing on its

19  application before this Court. Section 1782 does not require an applicant to exhaust all means

20  of discovery in the foreign tribunals before seeking the same documents in the United States.[14]

21  _____

22  [14] Oracle suggests that Microsoft should not be allowed to obtain discovery under § 1782
   because it could appeal a denial of access to the Commission's file to the Court of First
23  Instance. Oracle Mem. 9. In the first place, there has been no denial of access to the documents
   sought from Respondents; the hearing officer has allowed Microsoft discovery of similar
24  documents that are in the Commission's file; the problem is that many are not. Even if
   Microsoft's right of appeal were relevant, Microsoft could not appeal until the Commission
25  finally resolved its Article 24 proceedings against Microsoft. (Waelbroeck Decl. ¶¶ 16-20.) An
   appeal after that could take years (as evidenced by the fact that the appeal of the 2004 Decision
26  has only been scheduled for argument in April 2006, more than two years after the decision.
   Microsoft would therefore have to risk billions of dollars in fines (which could continue to
27  accumulate at a rate of €2 million a day) to pursue such an appeal.

28

1    *See Metallgesellschaft*, 121 F.3d at 79 ("[W]e have held that a district court may not refuse a

2    request for discovery pursuant to § 1782 because a foreign tribunal has not yet had the

3    opportunity to consider the discovery request."); *In re Application of Malev Hungarian Airlines*,

4    964 F.2d 97, 100 (2d Cir. 1992) ("We find nothing in the text of 28 U.S.C. § 1782 which would

5    impose a quasi-exhaustion requirement of the sort imposed by the district court.").  Nonetheless,

6    Microsoft has made good faith efforts to obtain documents via Commission procedures before

7    turning to this Court.  That fact should support its right to seek discovery in this Court, not stand

8    as a barrier, as Respondents illogically argue.

9            <u>Second</u>, the Commission and – equally importantly – the Court of First Instance

10    will receive the evidence that Microsoft develops through discovery of Sun or Oracle, and such

11    evidence is entitled to consideration.  (Waelbroeck Decl. ¶ 52.)  The Court of First Instance has

12    pointed out that "the prevailing principle in [European] Community law is that of unfettered

13    valuation of evidence and the only criterion for assessing evidence produced lies in the

14    reliability thereof."  Joined Cases T-67/00, T-68/00, T-71/00, and T-78/00, *JFE Eng. Corp. et*

15    *al.*, [not yet reported], ¶ 273 (Wolson Decl. Ex. F.)  Even if this Court had a question about the

16    admissibility of the evidence before the Commission, it should resolve that question in favor of

17    an appropriately tailored discovery order."  *Euromepa*, 51 F.3d at 1101.

18            DG Comp merely states, in the annex appended to Director General Lowe's

19    letter, that Microsoft's proposed subpoenas are not "objectively necessary."  That, of course, is

20    not the standard for discovery in U.S. courts.  *See* Fed. R. Civ. P. 26(b)(1).  Nonetheless, from

21    that statement, Respondents leap to the assertion that the Commission is not receptive to the

22    evidence that Microsoft seeks.  However, neither the annex nor any other source identified by

23    Respondents suggests that the Commission or the Court of First Instance would refuse to admit

24    such evidence.  In addition, it would be improper when the foreign tribunal is prosecuting a

25    defendant to give weight to the prosecution's statements about whether it would welcome

26    discovery which seeks to challenge its case.  Indeed, if courts were to defer to the vies of DG

27    Comp and other prosecutors, defendants in foreign administrative tribunals – which often serve

28    as both prosecutor and judge – could obtain discovery under § 1782 only with the consent of

MICROSOFT CORPORATION'S CONSOLIDATED
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTIONS TO QUASH SUBPOENAS
Case No. 06-80038 JF (PVT)

18

1    their adversary.  This could not have been – and manifestly was not – Congress' intent when

2    enacting § 1782 and making it available to "litigants before foreign tribunals."  "If Congress had

3    intended to impose such a sweeping restriction on the district court's discretion, at a time when

4    it was enacting liberalizing amendments to the statute, it would have included statutory

5    language to that effect."  *Intel*, 542 U.S. at 260 (quotes omitted).

6            <u>Third</u>, Microsoft's subpoenas would not circumvent any proof-gathering

7    restriction of the Commission or otherwise undercut a Commission policy or sovereign interest.

8    (Waelbroeck Decl. ¶¶ 29-35.)  To the contrary, the Commission's publicly announced policies

9    and its rulings in this case demonstrate that the discovery that Microsoft seeks is consistent with

10   Commission policy.  The hearing officer has already ruled that Microsoft is entitled, under

11   Commission rules, to receive copies of communications between Sun or Oracle and the

12   Monitoring Trustee or OTR that are in the Commission's file.  On February 8, in response to a

13   Microsoft's request for access to documents in the Commission's file that had withheld, the

14   hearing officer explained that she "shared [Microsoft's] view that correspondence that OTR and

15   [the Monitoring Trustee] has had with third parties *cannot be considered internal to the*

16   *Commission*."  (Burt Decl. Ex. G (emphasis added).)  The hearing officer therefore ordered

17   production of the only such document that had made its way into the Commission's file.

18           The Commission's policy pronouncements further demonstrate that the

19   Commission favors disclosure of all evidence relevant to issues raised by its SO.  On December

20   13, 2005, the Commission issued a Notice on access to the file – a public statement of its

21   applicable rules and interpretation of Commission law – in cases under Articles 81 and 82 of the

22   EC Treaty, such as the proceeding against Microsoft.  That Notice explained that the

23   Commission file consists of all documents obtained or produced by the Commission in its

24   investigation, and that to enable parties responding to a statement of objections to "effectively

25   express their views on the preliminary conclusions reached by the Commission in its

26   objections," such parties are entitled to all such documents except those that are internal to the

27   Commission or contain business secrets or other confidential information.  (Burt Decl. Ex. O at

28   ¶¶ 8,10.)  The same day, the Commission issued a press release that the right of access had been

MICROSOFT CORPORATION'S CONSOLIDATED
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTIONS TO QUASH SUBPOENAS
Case No. 06-80038 JF (PVT)

19

1  broadened "to increase the transparency of competition procedures and underline the

2  Commission's commitment to due process and parties rights of defence," and to allow parties

3  "to see all of the evidence, whether it is incriminating or exonerating." (Burt Decl. Ex. P.) The

4  Court of First Instance has similarly emphasized the importance of "unfettered evaluation of

5  evidence" in Commission proceedings. *JFE Eng.*, *supra*. (Wolson Decl. Ex. F.); Waelbroeck

6  Decl. ¶¶ 37-38.

7         Respondents have not made a plausible argument that any Commission policy

8  interest or sovereignty concern would be threatened by ordering discovery here.[15]  In *Intel*, the

9  Supreme Court rejected Intel's attempt to engraft precisely this type of foreign discoverability

10 limitation onto section 1782.  542 U.S. at 260 ("nothing in the text of § 1782 limits a district

11 court's production-order authority to materials that could be discovered in the foreign

12 jurisdiction").[16]

13         Fourth, Microsoft has narrowed its subpoenas to address Respondents' burden

14 objections.  The narrowed subpoenas seek limited categories of documents for which

15 Respondents can assert no plausible argument of burdensomeness.

16

17 ───────────────────

[15] Sun suggests, without support, that ordering discovery could lead third parties to refuse to
18 cooperate with the Commission or other antitrust authorities.  (Sun Mem. 14-15.)  That concern
is inapplicable here, because the Commission has already disclosed Sun's and Oracle's
19 identities to Microsoft, and the Commission's hearing officer has already directed that the
Commission's communications with Oracle and Sun to be disclosed to Microsoft if they are in
20 the Commission's file.  Moreover, the Commission has available to it the means to preserve the
identities of third parties that communicate with it.  *See, e.g.,* Council Reg. 2005/C-325/07
21 defining rights of access to the file, ¶ 19 (Commission has power to maintain anonymity of third
parties complaining about anticompetitive conduct), available at http://europa.eu.int/eur-
22 lex/lex/LexUriServ/site/en/oj/2005/c_325/c_32520051222en00070015.pdf.

23 [16] This case is unlike *Schmitz v. Bernstein Liebhard & Lifschitz LLP*, 376 F.3d 79 (2d Cir.
2004), on which both Sun and Oracle rely.  Oracle Mem. 13; Sun Mem. 11-12.   In *Schmitz*, a
24 party to civil litigation in Germany sought discovery under § 1782.  Both the German Ministry
of Justice and the Bonn prosecutor's office opposed the request on the grounds that production
25 of the documents would have compromised an ongoing criminal investigation in Germany and
would have violated the rights of the potential criminal defendants there.  *Id.* at 81-82.  In view
26 of the threat that the discovery posed to specific German sovereign rights, the court denied
discovery, and the Second Circuit affirmed that decision.  Here, however, neither Respondents
27 nor DG Comp have identified an analogous sovereignty concern.

28

B.    **Respondents' Communications With The Commission Are Discoverable.**

1.    **Respondents' communications with the Commission comprise important parts of Microsoft's defense against the SO.**

The documents that the Commission provided on February 13 reveal that the Commission was active in facilitating and even initiating communications between the Respondents and the Trustee and OTR, and may have acted as a conduit for communications between Oracle and Sun, on the one hand, and OTR and the Monitoring Trustee, on the other hand. At a minimum, it is clear that the Commission sought to facilitate a meeting between Sun and the Monitoring Trustee in October 2005, and expressed its view as to the importance that the meeting take place before Microsoft had a chance to meet with the Monitoring Trustee. (Burt Decl. Ex. H.) The Commission apparently also sought to coordinate its own activities, the activities of the Monitoring Trustee, and Sun's activities. (Burt Decl. Ex. J.) Similarly, when Mr. Alepin reported to Oracle's counsel that he had taken extensive notes in reviewing Microsoft's documentation, Oracle's counsel within minutes asked the Commission case team whether Oracle should ask Mr. Alepin to cancel his vacation so that Oracle could recoup its "large investment" by getting his report to the Commission soon enough "to ensure that you can effectively use the results of our efforts." (Burt Decl. Ex. K.)

To the extent that the Commission passed along communications it received from the Respondents to the Trustee or OTR, those communications are relevant to Microsoft's defense for the same reason that Sun's and Oracle's direct communications with the Monitoring Trustee or OTR are relevant: They will tend to show that the reliability of the evidence against Microsoft was undermined by the self-serving views of Microsoft's competitors. Such evidence is admissible and relevant in Commission proceedings.

2.    **Discovery of Respondents' communications with the Commission will further the purpose of section 1782.**

The same interests that mandate discovery of Respondents' communications with OTR and the Trustee apply to their communications with the Commission. The Commission hearing officer has already held that Microsoft is entitled to such communications as part of its

MICROSOFT CORPORATION'S CONSOLIDATED
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTIONS TO QUASH SUBPOENAS
Case No. 06-80038 JF (PVT)

21

1  rights of defense.  (Burt Decl. Ex. G ("As a result, your client will be provided with access to

2  the requested third parties' submissions.").)  Thus, discovery of these communications under

3  § 1782 will be entirely consistent with Commission policy.  Moreover, the Commission's

4  publicly announced policies equally favor disclosure of such communications.

5  II.     **RESPONDENTS' REMAINING OBJECTIONS DO NOT JUSTIFY DENYING
        MICROSOFT THE DISCOVERY OF RELEVANT INFORMATION
6        REQUESTED BY THE SUBPOENAS AS NARROWED.**

7          Respondents have asserted a variety of other objections to Microsoft's

8  subpoenas.  None of these objections has merit.

9          *The  subpoenas, as narrowed, do not call for privileged information*.  The

10  modified subpoenas seek only documents that contain, constitute, or summarize

11  communications with OTR, the Monitoring Trustee, or the Commission.  Thus, they cannot be

12  privileged. Even if the Respondents somehow have a good faith belief that some such

13  documents are privileged, the appropriate response is not to demand that the subpoenas be

14  quashed, but to assert privilege as to such individual documents, with an appropriate

15  identification of any documents being withheld and the privilege asserted.

16          *The revised subpoenas do not call for confidential information*.  The subpoenas

17  seek Respondents' communications with OTR or the Monitoring Trustee about Microsoft's

18  Interoperability Information or about Microsoft's compliance with articles 5(a) or (c) of the

19  2004 Decision, the Article 24(1) Decision.  It is hard to conceive how such communications

20  could contain confidential information about Sun's or Oracle's proprietary business interests,

21  since they are about Microsoft and its technology.  If, however, Sun or Oracle can demonstrate a

22  legitimate basis for confidentiality, the Court can direct their production under a protective

23  order.

24          *Respondents must produce all documents in their possession, custody, or control,*

25  *regardless of where they are located*.  Respondents contend that they should not have to

26

27

28

1  produce documents located abroad.  Both Sun and Oracle are headquartered in this District.[17]

2  Neither Sun nor Oracle cites any justification for the argument that documents in their

3  possession, custody, or control are not within their custody or control *at their respective*

4  *headquarters in this District*.  Indeed, it is unclear where else they could exercise that control.[18]

5  *Microsoft is not insisting upon production documents that it has already*

6  *received*.  Both Sun and Oracle object that Microsoft seeks documents that are cumulative or

7  duplicative of documents that the Commission has already provided.  As explained above,

8  however, Microsoft's express purpose in seeking discovery is to supplement the record with

9  documents that are not in the Commission file.  Microsoft obviously has no way of knowing

10  what documents Respondents have in their possession.  However, Respondents now have a copy

11  of the list of documents that Commission initially identified as comprising its file and made

12  available to Microsoft (Burt Decl. Ex. B) and the list of documents being withheld that the

13  Commission directed by the hearing officer to prepare (Burt Decl. Ex. E).  The documents on

14  that list representing communications between the Respondents and the Commission (and in one

15  case the Trustee) were made available to Microsoft on February 13, as previously explained.

16  These are not voluminous lists.  Thus, Respondents know what documents Microsoft has

17  received from the Commission, and they need not produce additional copies of them, if the

18  copies are, indeed, identical.

19

20

21

---

22  [17] Mr. Alepin is an individual whose office is in this District.  It is unclear why he would have
documents stored in Europe.  Thus, this objection seems wholly inapplicable to the subpoena

23  served on him.

24  [18] Both Sun and Oracle cite *Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d
45 (D.D.C. 2005), to support their argument that they do not have to produce documents that are

25  stored abroad.  *Norex*, however, dealt with whether an applicant under section 1782 could force
a domestic company to obtain documents from its foreign affiliates.  *See id.* at 56 (respondent

26  contested "only the documents 'held outside the United States by a foreign parent and other
foreign affiliates of the subpoenaed U.S. entity'").  Here, no issue relating to subsidiaries or

27  corporate affiliates has been asserted.

28

MICROSOFT CORPORATION'S CONSOLIDATED
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTIONS TO QUASH SUBPOENAS
Case No. 06-80038 JF (PVT)

23

1    _The revised requests are not vague_.  Although Respondents assert that

2    Microsoft's requests are vague, they have not substantiated that claim.  Nor could they do so for

3    the revised requests, which are both narrow and clear.

4                                    **CONCLUSION**

5            Congress intended that 28 U.S.C. § 1782 would permit litigants before foreign

6    administrative tribunals like the Commission to obtain discovery through U.S. federal courts.

7    Respondents seek to frustrate that purpose by engrafting onto the statute a requirement that the

8    foreign administrative tribunal endorse the discovery.  That requirement would render the

9    statute a nullity for defendants in foreign proceedings such as the Commission proceeding here,

10   where the prosecutor of course is unenthusiastic about discovery that might undermine his case.

11   Such a result would be directly contrary to the intent of Congress.  For these reasons, as more

12   fully set forth above, the Court should deny Respondents' motions to quash and order

13   Respondents to comply with the modified subpoena on an expedited schedule to permit

14   Microsoft to obtain the discovery sought prior to the Commission hearing scheduled for March

15   30 and 31.[19]

16

17

18

19

20

21

22

23

24

25   [19] Fed. R. Civ. P. 26(c) provides that if a "motion for a protective order is denied in whole or in

26   party, the court may, on such terms and conditions as are just, order that any party or other
     person provide or permit discovery."  Thus, the Court has the authority to order Respondents to

27   comply with the subpoenas on the present record.

28

Respectfully submitted,


_____/s/_____

Dated:  March 22, 2006

Richard A. Jones
COVINGTON & BURLING
One Front Street
San Francisco, CA  94111
Tel. No.:  (415) 591-6000
Fax No.:  (415) 591-6091
E-mail:  rjones@cov.com

E. Edward Bruce
William D. Iverson
Joshua D. Wolson
COVINGTON & BURLING
1201 Pennsylvania Ave. NW
Washington, DC 20004-2401
Tel. No.:  (202) 662-6000
Fax No.:  (202) 778-5324
E-mail: ebruce@cov.com
           wiverson@cov.com
           jwolson@cov.com

*Attorneys for Applicant Microsoft Corp.*

MICROSOFT CORPORATION'S CONSOLIDATED
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTIONS TO QUASH SUBPOENAS
Case No. 06-80038 JF (PVT)

25