Microsoft Corporation v. Ronald Alepin Morrison & Foerster et al                                                    Doc. 32 Att.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| *In re*<br><br>Application Of<br><br>MICROSOFT CORPORATION,<br><br>      Applicant. | Case No. 06-80038 JF (PVT)<br><br>**MICROSOFT CORPORATION'S CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES OPPOSITION TO MOTIONS TO QUASH SUBPOENAS**<br><br>Date: TBD<br>Time: TBD<br>Before: Magistrate Patricia Trumbull<br>Place: Courtroom Five, Fourth Floor |

**Declaration of Denis Waelbroeck**

1. My name is Denis Waelbroeck. I am a partner specialized in European Community ("EC") law at the Brussels office of ashurst, an international law firm present in 11 countries and having over 150 partners. I am also professor of Judicial Protection and EC Competition Law at the Université libre de Bruxelles and of EC Competition Law at the College of Europe in Bruges.

2. I have specialized in EC law since 1979 and have been involved in a range of national and international transactions, with a focus on competition law issues. I represent parties in procedures before the Commission and the Court of Justice of the European Communities ("Commission" and "ECJ" respectively) on a daily basis and have been involved in some 300 cases before the ECJ.

3. I am on the editorial board for a number of EC law journals and have written some hundred academic articles and books on a wide range of aspects of EC law. I am also the co-author of a leading text book on EC procedural law entitled *"Judicial Protection in the European Union"*.

4. I have been asked to review the applications filed by Microsoft Corporation seeking discovery under 28 U.S.C. § 1782 from Oracle Corporation (and a law firm and certain individuals acting on its behalf) (referred to collectively as "Oracle") and from and Sun Microsystems, Inc. (and a law firm and individual acting on its behalf) (referred to collectively as "Sun") relating to communications Oracle and Sun have had with the Commission relating to

Dockets.Justia.co

- 2 -

Microsoft's compliance or failure to comply with the March 24, 2004 Decision of the Commission in Case COMP/C-37.792, and with other entities relating to the same subject matters. I have also reviewed the motions to quash the subpoenas served upon Microsoft pursuant to 28 U.S.C. § 1782 filed by Oracle and Sun, including the letter Director General Philip Lowe of the Commission sent to counsel for Oracle and Sun with an Annex he describes as having been prepared by DG Competition and reflecting the views of DG Competition regarding the applications filed by Microsoft ("Commission Letter"). Oracle and Sun have submitted that letter and annex in support of their motion to quash.

5. In light of the above documents and on the basis of my relevant professional and academic experience, I have been asked to give my opinion on the following questions on EC law.

    I.   What is the scope of an undertaking's right under EC law to obtain evidence from the Commission in the context of antitrust proceedings before the Commission, of which said undertaking is the object?

    II.  Where the Commission has denied access to evidence, what are the general conditions of an appeal before the Court of First Instance of the European Communities ("CFI")[1] against such a decision? In particular (i) is there any separate right of appeal against such a decision and (ii) how long would such an appeal take? Do you consider such an appeal before the CFI to be effective remedy?

    III. Apart from access to the file, in what other ways can undertakings obtain evidence within the confines of a Commission proceeding? To the extent provision is not made for a right to obtain documents that are not contained in the Commission's file, would discovery of the documents sought by Microsoft improperly circumvent EC rules on access to the file?

    IV. What are the limits imposed on admissibility of evidence obtained through discovery before national courts in the context of (i) antitrust proceedings before the Commission and (ii) appeals against Commission antitrust decisions before the CFI?

    V.  What weight is attached to evidence relating to the credibility of witnesses in the context of (i) antitrust proceedings before the Commission and (ii) appeals against Commission antitrust decisions before the CFI?

**I.      What is the scope of an undertaking's right under EC law to obtain evidence from the Commission in the context of antitrust proceedings before the Commission, of which said undertaking is the object?**

---

[1]    Decisions of the Commission applying EC competition law are appealed before the CFI. Appeals against CFI judgments (on points of law only) can be brought before the Court of justice of the European Communities ("ECJ"). The CFI and the ECJ are referred to collectively as the "Court".

- 3 -

6. Under EC law, undertakings enjoy a general, positive right of access to all documents on the Commission's file. In order better to convey the exact scope of this right, I consider below (i) what constitutes the Commission's file and (ii) the limits placed on rights of access to the file.

7. Council Regulation 1/2003[2] grants power to the Commission to investigate suspected breaches of EC competition law on its own initiative or pursuant to a complaint submitted by a third party. When it opens an investigation, the Commission creates a corresponding file. According to the Commission's Notice on Access to File[3]:

> *"The 'Commission file' in a competition investigation (hereinafter also referred to as 'the file') consists of all documents[4], which have been obtained, produced and/or assembled by the Commission Directorate General for Competition, during the investigation."*

8. There are two aspects of this definition of Commission file that I consider warrant underlining here.

9. Firstly, the Commission file is limited to evidence/documents[5] *"obtained, produced and/or assembled <u>by the Commission</u>"*, i.e. the file cannot by definition contain evidence that has not 'passed through the Commission's hands' at some point during the investigation, including correspondence between third parties that has not been voluntarily submitted to or requested by the Commission.

10. Secondly, during antitrust investigations Commission officials see a vast amount of information that they must evaluate as being relevant or irrelevant. Inevitably, the Commission does not put everything that 'passes through its hands' on the file. In other words, the totality of the information 'on the file' in a Commission antitrust investigation will already be the result of a selection process during which the Commission will have disregarded certain information, which the Commission has judged irrelevant. Thus, according to the Court's case law:

> *"[...] it cannot be for the Commission alone, who notifies any objections and adopts the decision imposing a penalty, to determine the documents of use in the defence of the undertaking concerned [...] However, the Commission is allowed to preclude from the administrative procedure evidence which has no relation to the allegations of fact and of*

---

[2]   Council Regulation 1/2003 on the implementation of the rules on competition laid down in Articles 81 and 82 of the Treaty, OJ [2004] L 1/1.

[3]   Commission Notice on the rules for access to the Commission file in cases pursuant to Articles 81 and 82 of the EC Treaty, Articles 53, 54 and 57 of the EEA Agreement and Council Regulation (EC) No 139/2004, OJ [2005] C 325/7, at point 8.

[4]   In this notice the term 'document' is used for all forms of information support, irrespective of the storage medium. This covers also any electronic data storage device as may be or become available.

[5]   In this statement I use the terms 'document' and 'evidence' interchangeably to refer to evidence on any storage medium. This covers also any electronic data storage device as may be or become available.

- 4 -

*law in the [Statement of Objections] and which therefore has no relevance to the investigation.*"[6]

11. Moreover, given the practical limits on its human resources, the Commission cannot follow all imaginable lines of enquiry in an antitrust investigation. Lines of enquiry that the Commission chooses not to follow will not generate any further evidence that can be placed on the file.

12. It follows from the above that the Commission's file is extremely unlikely to contain <u>all</u> information which an undertaking considers to be potentially relevant to the alleged anticompetitive practices subject to the investigation. It will only contain information (i) that has 'passed through the Commission's hands' at some point <u>and</u> (ii) that the Commission in its own judgment has deemed relevant.

13. Finally, I note that it is open to an undertaking to request that the Commission obtain certain documents and place them on the file. However, I consider it relevant to the present case to underline that undertakings have no way of obliging the Commission to request such evidence and place it on the file. In other words, although an undertaking has a positive right of access to evidence already on the file, the Commission has a margin of discretion as to whether to request that evidence and place it on the file in the first instance. I note that where such a request has been refused, the undertaking cannot separately appeal the refusal but only in the context of an appeal against the main decision on the merits following from the statement of objections[7]. I consider in further detail below under question II the conditions under which an undertaking may appeal a refusal of access to evidence in the file, these conditions equally apply to refusals by the Commission to obtain evidence for placing on the file.

    *(ii)      What rights of access do undertakings have to the Commission's file?*

14. Undertakings subject to antitrust investigations by the Commission in principle enjoy a right access to all evidence on the Commission's file with the exception of (i) internal Commission documents ("Internal Documents Exception") and (ii) business secrets of other undertakings and other confidential information ("Confidentiality Exception").

15. This general positive right of access - subject to the Internal Documents Exception and the Confidentiality Exception - is confirmed both in Commission documents and in the consistent case law of the Court[8].

---

[6]     See Joined Cases C-204/00P et al., *Aalborg Portland,* not yet reported at point 126. See also Commission Notice on Access to the File, *supra* note 3 at point 9.

[7]     Similarly to a refusal of access to evidence on the file, a refusal by the Commission to obtain evidence for placing on the file will be considered as a "preparatory act", which cannot in be appealed separately from the related decision on the merits. See e.g. Case 60/81, *IBM,* [1981] ECR 2651. See also Schermers & Waelbroeck, *Judicial Protection in the European Union,* 6th edition, 2001, Kluwer, at points 702 to 710

[8]     Commission Notice on Access to File, *supra* note 3; Case T-25/95, *Cimenteries CBR v. Commission,* [2000] ECR II-491 at point 144.

- 5 -

II.  **Where the Commission has denied access to evidence, what are the general conditions of an appeal before the Court of First Instance of the European Communities ("CFI") against such a decision? In particular (i) is there any separate right of appeal against such a decision and (ii) how long would such an appeal take? Do you consider such an appeal before the CFI to be effective remedy?**

16. According to settled case law, Commission decisions denying access to the file[9], or refusing to request evidence from third parties[10] (together "Refusal Decisions"), cannot be appealed separately from the merits of the case. In other words, where the Commission has refused an undertaking's access to certain evidence, or has refused to request evidence from third parties, that undertaking will only be able to argue the illegality of such refusals in the context of an appeal before the CFI against the Commission's decision finding an infringement of the competition rules.

17. I consider that the absence of a right separately to appeal such Refusal Decisions seriously compromises the effectiveness of such appeals when they are finally heard alongside the main case. I further explain my reasons for this position below.

18. Refusal Decisions will have the effect that the undertaking will simply not have access to the evidence it requested – unless it is able to obtain it by other means – and will not be able to use this evidence in its defence during the proceedings before the Commission and in an eventual appeal before the CFI. Where the evidence is relevant to the defence, I consider it a truism to say that lack of access to such evidence will have an effect on that defence. The question is rather what the extent and implications of that effect are.

19. After the Refusal Decision, the procedure will continue to evolve often for many years without that evidence and before there is any judicial decision on the validity of the Refusal Decision.

20. Thus, appeals against Commission antitrust decisions can only be made once that decision has been taken. In the Microsoft case, the Commission opened its investigation in 1998 and sent three separate statements of objection to Microsoft over a five year period before issuing its final decision in March 2004. As regards the procedure before the CFI, statistics published on the Court's website indicate that the average length of such proceedings is around 22½ months[11]. However, as a general rule this figure is appreciably more in competition cases. Thus, for example, in the *TACA*[12] case, the judgment was handed down 5 years after the infringement decision was adopted[13].

---

[9]     See Joined Cases T-10, 11, 12 & 15/92 Cimenteries CBR [1992] ECR p.  II-2667 at point 47.

[10]    See *supra* note 7.

[11]    Also available at http://curia.eu.int/en/instit/presentationfr/rapport/stat/st04tr.pdf

[12]    Joined Cases T-191/98 and T-212/98 to T-214/98, *Atlantic Container Line and others v. Commission*, not yet published.

[13]    The CFI judgment came on 30 September 2003. The original infringement decision was adopted on 16 September 1998.

- 6 -

21. In the event that the remainder of the procedure before the CFI is "accelerated", a judgment would at the earliest be handed down at the end of 2006, i.e. over 8 years after the investigation was opened.

22. It is clear that a single piece of evidence often colours the way in which other evidence is assessed and indeed can often completely alter the approach taken to the organization of an undertaking's defence. Resultantly, where it is ultimately decided that a Refusal Decision was wrong, I believe that trying to assess how the procedure would have developed had a certain piece of evidence been made available several years beforehand is a particularly difficult and in many cases impossible task.

23. Moreover, in the Court's case law the invalidity of a Refusal Decision does not result in the automatic annulment of the main related infringement decision. Rather the Court will assess whether granting access to the evidence denied by the Refusal Decision amounted to a violation of the rights of the defence and would have altered the finding of infringement in any way[14].

24. I think that this approach only serves to highlight the difficulties involved in assessing how the procedure would have developed had a certain piece of evidence been made available several years beforehand.

III.    **Apart from access to the file, in what other ways can undertakings obtain evidence within the confines of a Commission proceeding?  To the extent provision is not made for a right to obtain documents that are not contained in the Commission's file, would discovery of the documents sought by Microsoft improperly circumvent EC rules on access to the file?**

    *(i)    Does the addressee of a statement of objections have rights to obtain evidence in a Commission proceeding apart from the undertaking's right of access to the file?*

25. An undertakings' EC law enforceable right of access to the file in competition cases begins from the date the statement of objections is issued.

26. Apart from this right of access to the Commission's file, an undertaking that is the addressee of a statement of objections has no other EC law right in Commission proceedings to obtain documents for use in its defence that are not contained in the Commission's file.

27. The Commission's rules and procedures contain no provision for "discovery" of the sort that is common in court and administrative proceedings in the United States, except for the right of access to the Commission's file.

28. Specifically, there is no provision under the Commission's rules and procedures by which the addressee of a statement of objections can as a matter of right obtain evidence in the possession of third parties. As noted above, an undertaking can request that the Commission obtain evidence from third parties, but the Commission has no obligation to meet that request.

---

[14]    *Cimenteries CBR, supra* note 8 at point 156.

- 7 -

    *(ii)    Would discovery through the procedures of a national court improperly circumvent the EC rules on access to the file?*

29. As noted above there is a general right of access to documents in the Commission's file. To the extent that the Commission's Letter may be implying that undertakings able to obtain documents through requests for access to the file are precluded from obtaining those same documents in other ways for use in their defence, I consider such a proposition to be unfounded. It is clearly irrelevant where an undertaking obtains its evidence if it has a right to it. Both the Court and Commission accept that undertakings obtain evidence by means other than direct access to the file, the most obvious example being exchanges of documents with other parties in the case[15].

30. Moreover, where the evidence sought is <u>not</u> on the Commission file, I can see no legal basis in EC law for the assertion that an undertaking's efforts to obtain such documents through discovery procedures available in national courts would constitute a circumvention of EC rules on access to documents. The Commission's general objection, on the grounds of "circumvention", to discovery of documents not on the file, appears to be predicated on the mistaken belief that the <u>creation of a right</u> of access to documents entails the <u>concomitant creation of a prohibition</u> on accessing other documents not on the file. I can see no basis in EC law for such a theory of rights.

31. I nonetheless consider in turn below the categories of document requested by Microsoft in the present proceedings and whether discovery of those specific categories of documents could potentially constitute a "circumvention" on the EC rules on access to documents for an undertaking that is the addressee of a statement of objections. I take "circumvention" in this context to mean that discovery would give Microsoft access to evidence that is on the Commission file but that has deliberately been withheld on the basis that it falls within the Internal Documents Exception[16].

    •   Communications between the Commission and Third Parties

32. I note as a first point that the Commission has already granted access to the file for this group of documents. In light of this, if the file is complete in the sense that all such communications

---

[15]   It is common practice for undertakings subject to Commission investigation to exchange procedural documents between themselves as a faster approach than asking the Commission. Both the Commission and the Court openly accept this practice, although the Court has stated that such exchanges should not take place where they would themselves constitute an infringement of the competition rules. See Case T-134/94, *NMH Stahlwerke v. Commission*, [1996] ECR II-537.

[16]   In relation to the Confidentiality Exception, I note that the present requests for discovery do not appear to raise any issues of confidentiality that might trigger this exception. In this regard, the types of documents requested by Microsoft are similar to those to which the Commission has already granted access and relate to third party appreciations of information originating from <u>Microsoft</u> (which information is clearly not confidential to the third party).

- 8 -

are contained in the Commission's file, one could question the utility of discovering documents to which Microsoft already has access. However, I consider that the real possibility that the file is incomplete would be sufficient reason for any duplication of efforts not to be a compelling argument against discovery here. This is particularly the case because it is my understanding that lists are available to allow the third parties to determine what documents have already been made available to Microsoft from the Commission's file.

33. In any event, such discovery is certainly not precluded by EC law. Moreover, discovery would not circumvent EC rules on access to documents. In this regard, such discovery would in principle not give Microsoft access to any documents that are on the Commission's file but which are considered internal (given that the third party correspondence at issue is by definition not internal, as the hearing officer found).

- • Communications between the Trustee or OTR and Third Parties

34. I consider that the same arguments would apply to this category of documents as those considered above under "Communications between the Commission and Third Parties".

35. To the extent that Microsoft's request to the Commission for access to these documents is not met because the documents are not in the Commission's file, the same reasoning would apply to this category of documents as those considered above under "Communications between the Commission and Third Parties," since such documents are also by definition not internal to the Commission. Accordingly, such discovery is also not precluded by EC law.

**IV.    What are the limits imposed on admissibility of evidence obtained through discovery before national courts in the context of (i) antitrust proceedings before the Commission and (ii) appeals against Commission antitrust decisions before the CFI?**

36. I consider this question first in relation to the CFI and then in relation to the Commission.

*(i)    General rules on admissibility*

37. According to settled case law, *"the prevailing principle in Community law is that of unfettered evaluation of evidence and the only relevant criterion for assessing evidence produced lies in the reliability thereof."*[17] . In other words, EC law does not positively regulate admissibility of

---

[17]    See, *e.g.,* Joined cases T-67/00, T-68/00, T-71/00 and T-78/00, *JFE Engineering Corp., et al.* not yet reported, point 273; Case T-50/00 *Dalmine SpA,* not yet reported, point 72. Similarly, the argumentation of the Hearing Office in its Final Report in Case COMP/36.571 - Austrian Banks, [2004] OJ C 48/7 (expert opinion that was based on incomplete information and came to a negative conclusion remains in file). As a general matter, provided that the evidence admitted by the Court of First Instance in support of the facts found by it has been properly obtained and the general principles of law and the procedural rules relating to the burden of proof and the taking of evidence have been observed, it is for the Court of First Instance alone to assess the value which should be attached to the evidence adduced before it (see, *inter alia,* the Order of 17 September 1996

- 9 -

evidence in any detail. There are, for example, no fixed rules on the admissibility of hearsay or opinion evidence.

38. Therefore, the basic rule is that the Court will look at the whole body of evidence before it, lending more or less weight to that evidence which it, in its own discretion, sees fit[18].

39. I consider below the admissibility of evidence obtained through discovery.

   *(ii)    Evidence obtained through discovery in a national court*

40. In line with the above analysis, no instrument of EC law expressly places any limits on the admissibility of evidence obtained pursuant to discovery before national courts. Nor has the Court ever made a statement on the subject.

41. In my opinion, there are, however, a number of compelling reasons why the Court would accept as admissible evidence obtained through discovery proceedings in a national court.

42. Firstly, the general principle of unfettered evaluation of evidence and the absence of any rule to the contrary gives rise to a very strong presumption that evidence obtained through discovery in national courts would be admissible before the Court. The burden of persuading the Court to ignore such evidence therefore falls squarely on the party pleading inadmissibility. This is, in my opinion, an extremely high hurdle to overcome. A striking example of this is the case law on legal privilege[19]. According to this case law, legal privilege is a very narrow concept, not covering, for example, correspondence between parties and their non-Member State lawyers or in-house counsel (regardless of whether inside counsel is qualified in a Member State or non-Member State).

43. Secondly, I cannot see any credible arguments that could be presented to the Court in support of a plea of inadmissibility of evidence obtained through foreign proceedings. I note in this regard that the Commission's letter annexed to the briefs of Oracle and Sun does not clearly present any arguments tending to show that evidence obtained through foreign discovery proceedings would be inadmissible either before it or before the Court. It does, however, hint that the basis of such arguments might be that discovery is somehow an improper way of obtaining evidence.

44. I do not consider such a suggestion as convincing.

45. As noted above, no rule of EC law states that discovery is an improper or illegal way of obtaining evidence. On this point I note that the argument is sometimes made that evidence is inadmissible because it was obtained in violation of some general principle of EC law or in violation of fundamental rights, as protected under the European Convention for the Protection

---

[18]    in Case C-19/95 P San Marco v. Commission [1996] ECR I-4435, point 40, and the judgment in Case C-362/95 P Blackspur and Others [1997] ECR I-4475, points 26 to 30).
      In relation to this point, I consider further below, under question V, the role of evidence which bears on the credibility of (the source of) other evidence.
[19]    See case 155/79, *AM & S Europe Limited v Commission*, [1982] ECR p. 1575.

- 10 -

of Human Rights and Fundamental Freedoms[20]. I have not, however, seen anything in Microsoft's application for discovery or the reply of Oracle or Sun that would tend to demonstrate that the process of discovery would in any way infringe these principles or fundamental rights. I note that in light of the principle of unfettered evaluation of evidence, it would be up to Oracle or Sun in this case to show that such a violation would occur.

46. Thirdly, although in the present case, the Court could rely on the general rule of unfettered evaluation of evidence to resolve the question of admissibility of evidence obtained through discovery, I would note that such an approach also broadly accords with that taken in the EC Member States[21]. In this regard, I note that a recent Commission sponsored study into the procedural conditions for damages actions in the Member States[22] found that, although very few EC Member States have broad discovery rules[23], none has a general rule against the admissibility of evidence obtained through discovery in foreign proceedings[24]. This fact assists both in supporting and justifying the admissibility of such evidence under EC law.

---

[20]    For example, if the evidence has been obtained in violation of the fundamental right to privacy. See, for example, the Court's case law on the limits on the investigative powers of the Commission during dawn raids, most recently, Case C-94/00, *Roquette Frères,* [2002] ECR p. I-9011.

[21]    Article 288 of the EC Treaty provides that *"In the case of non-contractual liability, the Community shall, in accordance with the general principles common to the laws of the Member States, make good any damage caused by its institutions or by its servants in the performance of their duties".* Article 6(2) of the EU treaty provides that *"The Union shall respect fundamental rights, as guaranteed by the European Convention for the Protection of Human Rights and Fundamental Freedoms signed in Rome on 4 November 1950 and as they result from the constitutional traditions common to the Member States, as general principles of Community law.".* In addition to these explicit reference to the rules of the EC Member States as a source of inspiration for EC law, the Court's case law also refers to the approach taken in Member States to legal issues which it is called to judge upon. See, for example, T-94/04, *European Environmental Bureau v. Commission,* not yet reported at point 61 (referring to the traditions of the Member States in relation to effective judicial protection); T-54/99, *max.mobil v Commission,* [2002] ECR II-313 at points 48 and 49 (traditions of the Member States in relation to good administration). Such references to Member State laws assist the Court both in finding and in justifying its solutions to those issues. The clear motivation for such an approach is to ensure that EC law does not develop in a vacuum and to legitimise its jurisprudential developments on the basis of the legal orders of the countries that constitute the EC.

[22]    The law firm, ashurst, in which I am partner was selected to conduct the study which I coordinated. The study, entitled "Study on the Conditions of Claims for Damages in case of infringement of EC competition rules" ("Study"). It is available at http://europa.eu.int/comm/competition/antitrust/others/actions_for_damages/comparative_r eport_clean_en.pdf

[23]    The only countries with such broad discovery rules are UK, Ireland and Cyprus.

[24]    See Study, *supra* note 22 at point II.E(a)(iv), p. 65.

- 11 -

47. Fourthly, the Commission is currently pushing for greater private enforcement of EC competition law. In this context, the Commission produced a green paper on the subject in December 2005[25], highlighting the absence of broad discovery rules in the EC as an obstacle to private enforcement of EC competition rules[26]. In public statements on the green paper, the Commission has emphasised the need for broader discovery rules in the Member States as a way to improve claimants' access to evidence[27]. Although not explicitly stated, a Commission policy in support broader rules of discovery in the Member States must, in my opinion, clearly apply to claimants and defendants alike, if it is to respect the fundamental legal principle of equality of arms[28].

48. I therefore conclude that I can see no reason why evidence obtained through discovery in foreign proceedings should not be used in litigation before the CFI.

    *(iii)    Use in Commission antitrust investigations of evidence obtained in foreign discovery proceedings*

49. Again, there is no EC law provision that explicitly prevents evidence obtained in foreign discovery proceedings being used in Commission antitrust investigations. I consider, moreover, that for the same reasons as stated above in relation to admissibility of evidence before the CFI, there is no persuasive reason that such evidence should be considered inadmissible.

50. Finally, I note that it would not in principle make sense for the Commission to have narrower rules on admissibility than the CFI, before which appeals against its antitrust decisions are heard. If it were otherwise, the CFI would be reviewing the Commission's decisions on the basis of a body of evidence which included elements not taken into account at all by the Commission. Were those supplementary elements sufficiently important, it would needlessly put at risk the validity of the Commission's decision.

**V.    What weight is attached to arguments relating to the credibility of witness evidence in the context of antitrust proceedings before the Commission and appeals against Commission antitrust decisions before the CFI?**

51. I will begin by considering this question in relation to proceedings before the CFI.

---

[25]  See  http://europa.eu.int/comm/competition/antitrust/others/actions_for_damages/gp.html and the accompanying Commission staff working paper at http://europa.eu.int/comm/competition/antitrust/others/actions_for_damages/sp.html

[26]  Commission Staff working paper, *ibid* at section II, Access to Evidence and Green paper, *ibid* at point 2.1.

[27]  See, for example, speech by Competition Commissioner Neelie Kroes of 9 March 2006, entitled  "More private antitrust enforcement through better access to damages: an invitation for an open debate", available at http://europa.eu.int/rapid/pressReleasesAction.do?reference=SPEECH/06/158&format=HTML&aged=0&language=EN&guiLanguage=en

[28]  See, for example, Case T-30/91, *Solvay v. Commission*, [1995] ECR p. II-1775 at point 83.

- 12 -

52. In reviewing Commission antitrust decisions, the CFI must ensure that facts are consistent and corroborated[29]. Resultantly, arguments relating to the consistency and credibility of evidence in the context proceedings before the CFI are of major importance[30]. In cases where there is serious doubt as to the independence of evidence, the Court will ensure that the Commission has checked that version against another source[31].

53. I note, in this regard, that a Member State merger decision was recently annulled for the explicit reason that the competition authority had accepted a competitor's description of certain facts and not checked these against the version of the undertaking under investigation[32]. In handing down its annulment decision, the Competition Appeal Tribunal stated that the authority had failed to apply the degree of scrutiny to the facts required under the CFI's *Tetra Laval* judgment[33].

54. Given the importance the CFI gives to the credibility of witness evidence when reviewing Commission antitrust decisions, it is clear that in taking such decisions the Commission must lend similar weight to such questions.

55. In the Microsoft case, the Monitoring Trustee and OTR have a key influence on the approach adopted by the Commission to compliance. The credibility of information provided by the Monitoring Trustee and OTR to the Commission is, therefore, of crucial importance to the validity of any Commission decision taken on the basis of that information. Clearly, any evidence pertaining to the credibility of the facts on which the Monitoring Trustee and OTR base their reporting to the Commission is in turn of similar importance.

56. As regards the importance of evidence relating to the credibility of witnesses in the context of Commission antitrust investigations, the Commission is obliged *a fortiori* to subject witness

---

[29]     Case T-5/00, *Tetra Laval v. Commission,* [2002] ECR II-4381, upheld on appeal in Case C-12/03 P, *Commission v. Tetra Laval,* [2005] ECR p. I-987. See in particular, point 39 of the judgment on appeal that confirms: *"Not only must the Community Courts, inter alia, establish whether the evidence relied on is factually accurate, reliable and consistent but also whether that evidence contains all the information which must be taken into account in order to assess a complex situation and whether it is capable of substantiating the conclusions drawn from it"* (emphasis added).

[30]     See, for example, Case T-60/02, *Deutsche Verkehrsbank v. Commission,* at point 70, not yet reported; T-56/00, *Bayrische Hypo Vereinsbank v. Commission,* at points 95 *et seq,* not yet reported.

[31]     Case T-50/00, *Dalmine v. Commission,* at point 152; Case T-31/99, *Brown Boveri v. Commission,* [2002] ECR II-1881 at point 105.

[32]     Judgment of UK Comptition Appeals Tribunal in case No.1049/4/1/05, *UniChem Limited v OFT,* see http://www.catribunal.org.uk/documents/Jdg1049Uni01042005.pdf

[33]     The Tetra Laval case (*supra* note 29), in which I acted for the applicant, concerned an action for annulment against at a Commission decision blocking a merger. The decision was annuled essentially because there were factual inconsistencies in the Commission decision. The judgment is widely recognised as the most recent comprehensive statement of the Court's approach to judicial review of Commission antitrust decisions.

- 13 -

credibility at least to the same level as scrutiny as the CFI, which reviews its decisions, on pain of seeing those decisions annulled.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 21, 2006.

Denis Waelbroeck