```
                         MAR28MICROSOFT-FINDINGS.txt
                                                                              1
   1                       UNITED STATES DISTRICT COURT

   2                         DISTRICT OF MASSACHUSETTS

   3                            No. 1:06-mc-10061-MLW

   4

   5    In re

   6    Application of

   7    MICROSOFT CORPORATION,
                 Appellant
   8
        vs.
   9

  10    NOVELL, INC.,
                 Respondent
  11

  12                                 *********

  13
                              For Hearing Before:
  14                       Chief Judge Mark L. Wolf

  15
                    Excerpt transcript: Judge's Findings
  16

  17                      United States District Court
                            District of Massachusetts (Boston.)
  18                         One Courthouse Way
                          Boston, Massachusetts 02210
  19                       Tuesday, March 28, 2006

  20
                                    ********
  21

  22              REPORTER: RICHARD H. ROMANOW, RPR
                             Official Court Reporter
  23                      United States District Court
            One Courthouse Way, Room 5200, Boston, MA 02210
  24                          (617) 737-0370

  25


  ⚲                                                                            2

   1                        A P P E A R A N C E S

   2

   3    E. EDWARD BRUCE, ESQ.
        JOSHUA D. WOLSON, ESQ.
   4      Covington & Burling
          1201 Pennsylvania Avenue NW State Street, Suite 1100
                                   Page 1
```

```
                    MAR28MICROSOFT-FINDINGS.txt
 5      Washington, DC 20004-2401
        (202) 662-5263
 6      E-mail: Jwolson@cov.com
      and
 7    ROBERT J. MULDOON, JR., ESQ.
        Sherin and Lodgen, LLP
 8      101 Federal Street
        Boston, MA 02110
 9      (617) 646-2000
        E-mail: Rjmuldoon@sherin.com
10      For Appellant

11
      ANTHONY M. FEEHERRY, ESQ.
12    REBECCA R. HAYES, ESQ.
        Goodwin Procter, LLP
13      Exchange Place
        Boston, MA 02109
14      (617) 570-1390
        E-mail: Afeeherry@goodwinprocter.com
15              rhayes@goodwinprocter.com
        For Respondent
16

17

18

19

20

21

22

23

24

25

⚨                                                                    3

 1              P R O C E E D I N G S

 2              (Excerpt begins.)

 3              THE COURT:  As I said before we took the break, as

 4    this matter has some urgency and I'm emersed in it, I will give

 5    you my tentative or qualified decision orally.  Which is, as I

 6    understand it from experience in the English tradition of --

 7    and I hope that the level of detail, among other things, will

 8    indicate that this is not a decision that has been reached

 9    casually.
                                  Page 2
```

MAR28MICROSOFT-FINDINGS.txt

10        As I said before the break, my tentative decision,
11   subject to possible reconsideration and revision after
12   receiving any supplementation, is to order Novell, Inc. to
13   produce documents in its possession, custody and control which
14   are relevant to the existing statement of objections concerning
15   interoperability, which will be the subject of the March 30,
16   2006 hearing.  I've been educated to understand today, however,
17   that it's not essential that Microsoft receive those documents
18   prior to the March 30 hearing.  And therefore, because the
19   nature of the relevant issue has changed and this matter has
20   proceeded on an expedited basis, I think it's most appropriate
21   to give the foreign tribunal an opportunity to address the
22   present issue.
23        The documents that will need to be produced promptly, if
24   my views do not change, may be redacted to remove any
25   privileged information.  I am providing the parties an

                                                                  4

 1   opportunity to supplement the submissions concerning
 2   receptivity of the foreign tribunal to the discovery subject to
 3   the more narrow request that I'm inclined to grant.  The DG
 4   Comp.'s March 10, 2006 submission primarily addresses the
 5   impropriety of ordering discovery that is relevant to an issue
 6   as to which no statement of objections has yet been filed.
 7        The current request, which I'm tentatively granting, is
 8   for information that is relevant to the existing statement of
 9   objections concerning interoperability.  That discovery does
10   not, as I understand it, implicate the objections emphasized by
11   the DG Comp. in the March 10, 2006 submission.
12        Any additional submissions shall be made by April 6,
13   2006.  Novell shall begin now to assemble the documents that
14   will have to be produced.  If my tentative views become my

MAR28MICROSOFT-FINDINGS.txt

15  final views, Novell should make appropriate redactions and
16  prepare a privilege log so that the documents can be provided
17  on April 10, 2006 or thereafter, if I do not revise my views.
18        The reasons for this decision are as follows.  This case
19  arises out of the European Commission's investigation of
20  Microsoft's allegedly anticompetitive activities.  The European
21  Commission has issued an initial decision against Microsoft
22  holding that it violated the European community law when it did
23  not share interoperability information with its competitors.
24  Microsoft claims that in reaching its decision, the Commission
25  relied on communications with Microsoft's competitors, one of

                                                                5

1  which is Novell, Inc.
2        To mount its defense, Microsoft believes it needs
3  documents that constitute or memorialize those communications.
4  Thus, Microsoft initially brought an ex parte 28 United States
5  Code Section 1782 application asking this Court to endorse
6  Microsoft's subpoena to Novell to produce such documents and,
7  indeed, documents that were relevant to issues in addition to
8  interoperability.  This Court granted that motion, but
9  specifically authorized Novell to file a motion to quash.  It
10 also ordered the parties to meet to try to resolve any
11 disputes.  After the parties conferred and were unable to
12 resolve their disputes, Novell did file a motion to quash
13 arguing that Microsoft's Section 1782 application should be
14 denied completely or alternatively should at least be limited
15 to documents relevant to the interoperability issue.
16        I have conducted today, March 28, 2006, a hearing for
17 almost two hours, which has sharpened my understanding of the
18 issues.
19        Generally speaking, with regard to 28 United States Code

MAR28MICROSOFT-FINDINGS.txt

20  Section 1782, this Court has the authority to order discovery
21  in connection with a proceeding before a foreign tribunal if it
22  determines that the request is made by an interested party for
23  material to be used in proceedings in a foreign tribunal and if
24  the party from whom the request is made resides in the district
25  in which the Court sits.  The Supreme Court so instructed in

                                                                6

1   Intel Corporation v. Advanced Micro Devises, Inc., 542 U.S.
2   241, a 2004 decision.
3        As Intel also teaches, if the Court determines that it
4   has the authority to grant the Section 1782 application, it
5   must decide whether to exercise its discretion to do so.  The
6   exercise of that discretion should be guided by four factors.
7   (1) whether the entity from whom discovery is requested is a
8   party in the foreign proceeding.  (2) the nature of the foreign
9   proceeding and tribunal and the receptivity of the foreign
10  tribunal to the request for discovery.  (3) whether granting
11  the discovery request is compatible with the purpose of the
12  statute to provide assistance to foreign tribunals and, in
13  return, receive assistance from foreign nations at a later
14  time.  And (4) whether the discovery request is intrusive and
15  unduly burdensome.
16       The pertinent facts up to the time of the Section 1782
17  request were essentially not in dispute.  On March 24, 2004 the
18  European Commission, or "the Commission," decided that
19  Microsoft infringed Article 82 of the EC Treaty and Article 54
20  of the EEA agreement, both of which relate to the abuse of a
21  dominant market position, by refusing to disclose certain
22  interoperability information to vendors of work group server
23  operating systems' products.  You may refer to that as the 2004
24  decision.  Microsoft has appealed this decision in the Court of

MAR28MICROSOFT-FINDINGS.txt
25    First Instance, or CFI, and has scheduled a five-day hearing on

                                                                  7
1     that appeal in April of 2006.
2              On November 10, 2005, the Commission decided that
3     Microsoft had not complied with the 2004 decision by failing to
4     provide adequate interoperability information to prospective
5     licensees.  That is sometimes referred to by the parties as the
6     Article 24(1) decision.  To reach its decision, the Commission
7     relied on two reports from the OTR group, an outside consulting
8     firm retained by the Commission as independent experts as well
9     as comments from Microsoft's competitors, including Novell.
10    The Commission instructed Microsoft to comply with its decision
11    by December 15th, 2005 or face a daily fine of 2 million
12    Euros.
13             On December 21, 2005, the Commission issued a statement
14    of objections, or "SO," charging that Microsoft had not
15    complied with the Article 24(1) decision.  The statement of
16    objections was based on two reports by a monitoring trustee,
17    who was appointed by the Commission to measure Microsoft's
18    compliance with two OTR reports relied upon in the Article
19    24(1) decision and comments received from Microsoft's
20    competitors, including Novell.  When appointed, the monitoring
21    trustee was instructed to establish procedural safeguards to
22    protect Microsoft's due process rights and ensure transparent
23    communications between the trustee and others.
24             The trustee was also directed to establish a procedure
25    for third parties to lodge complaints concerning Microsoft's

                                                                  8
1     compliance with the 2004 decision.  The trustee was told to
2     send a copy of these complaints to the Commission so that they
3     would be included or could be included in the Commission file
                              Page 6

MAR28MICROSOFT-FINDINGS.txt

4   and to deliver a nonconfidential version of any complaint to
5   Microsoft.  Microsoft asserts that the trustee did not fully
6   comply with this order.
7        The statement of objections was accompanied by a list of
8   documents in the Commission's file which Microsoft had a right,
9   under EU regulations, to examine.  This file included a
10  correspondence between Microsoft and the Commission, the
11  reports from OTR and the monitoring trustee, and formal
12  requests for information sent by the Commission to Novell, Sun
13  Microsystems, IBM and Oracle and each company's response.
14  However, the index did not include any other communications
15  with Novell or any other company, nor did the Commission say it
16  was withholding such documents.
17       On December 24, 2005, Microsoft wrote to the Commission
18  Hearing Officer that the file index wasn't complete.  On
19  January 13th, 2006, the Hearing Officer instructed the
20  Commission to provide a list of documents the Commission had
21  withheld.  On January 20, 2006, the Commission provided a list
22  showing that it had withheld, as confidential, more than 40
23  documents of correspondence between the Commission and
24  Microsoft's competitors, including Novell.
25       On January 30, 2006, Microsoft asked the Hearing Officer

                                                                9

1   for access to the Commission's correspondence with Novell, Sun,
2   Oracle and IBM.  On February 8, 2006, the Hearing Officer
3   directed the Commission to provide copies of its communications
4   with third parties, including Novell.  Initially, the
5   Commission had not provided these documents claiming they were
6   confidential, but the Hearing Officer ruled that the
7   confidentiality had been waived.  The Hearing Officer also
8   stated that the correspondence OTR and the monitoring trustee

MAR28MICROSOFT-FINDINGS.txt

9  have had with third parties must be produced by the Commission
10 only if such a document was in the Commission's file.  The
11 Commission complied with the Hearing Officer's directive on
12 February 13, 2006.  There was a scheduled hearing before the
13 Commission on March 30, 2006 concerning the statement of
14 objections.
15         Microsoft's initial subpoena to Novell was quite broad.
16 It has, however, since narrowed its request.  More
17 specifically, the subpoena, as described today, is deemed to be
18 for documents that constitute communications between Novell,
19 the Commission, the Trustee, OTR, or any other third party
20 known or believed by Novell to have been retained by the
21 Commission relating to inoperability information, as defined in
22 the 2004 decision, and is for documents that memorialize any
23 such oral communications relating to inoperability
24 information.
25         Microsoft is not now seeking documents that are relevant

                                                              10
1  only to issues not in the current statement of objections, such
2  as the possible failure to comply with Articles 5A or 5C of the
3  2004 decision, the Article 24(1) decision, generally.
4  Microsoft has also abandoned its request for a prompt
5  deposition of Novell.  Microsoft has made other Section 1782
6  requests to competitors that are pending in District Courts in
7  which those competitors reside.
8          As I understand it, when the European Commission
9  investigates a competition complaint, it does so through the
10 Director or General for Competition, or DG Comp, of the
11 European Commission.  The DG Comp is part of the Commission --
12 is the part of the Commission that is charged with
13 investigating complaints of anticompetitive activity.  During

MAR28MICROSOFT-FINDINGS.txt

14  its investigation, the DG Comp reviews many documents.  The
15  Commission file consists of all the documents that have been
16  obtained by the DG Comp during the investigation that it deems
17  were relevant to the investigation.  The defendants in the
18  proceedings before the Commission gain access to this file once
19  the Commission has filed a statement of objections, with the
20  exception of internal documents, business secrets and other
21  confidential information.
22          The Commission is allowed to exclude from the file
23  evidence which has no relation to the allegations of fact and
24  law in the statement of objections.  If the defendant believes
25  that the Commission's services have erroneously withheld

                                                                11
1   documents, it may make a request for a decision of the Hearing
2   Officer who is responsible for guarding the defendant's rights
3   in the Commission proceedings.  The decision of the Hearing
4   Officer can be reviewed by the Court of First Instance, the
5   CFI.
6           28 United States Code, Section 1782A, states, in
7   pertinent part, that the District Court in which a person
8   resides may order him to produce a document for use in a
9   proceeding in a foreign or international tribunal.  The Supreme
10  Court has recently addressed 28 United States Code Section 1782
11  as it relates to the European Commission in the Intel case.
12          It is undisputed that Microsoft is an interested party.
13  It is a party to the Commission proceeding.  It is also
14  undisputed that Novell resides in the District of
15  Massachusetts.  Therefore, this Court is authorized, but not
16  required, to order the requested discovery.  Any discovery
17  order is subject to any applicable privilege including, but not
18  limited to, the attorney/client privilege and the work/product

MAR28MICROSOFT-FINDINGS.txt

19   privilege.
20       I explained earlier the four factors the Supreme Court
21   described in the Intel case to be considered in deciding a
22   Section 1782 request.  The first, as I said, is whether the
23   entity from whom discovery is requested is a party in the
24   foreign proceeding.  Novell is a participant or party in the
25   Commission proceeding.  If Novell has relevant documents that

                                                                    12

1    are not in the DG Comp's file or OTR file, the Commission
2    cannot order Novell to produce those documents.
3        For example, there may be nonprivileged Novell documents
4    memorializing oral communications that are not reflected in the
5    Commission's file.  As I said in the course of the argument,
6    hypothetically, such internal memoranda of oral communications
7    could be material to the credibility of the DG Comp's
8    contentions and the merits of them.
9        To take an extreme and hypothetical example to
10   illustrate this point, without suggesting any impropriety in
11   this case, if a competitor of Microsoft had paid a bribe to the
12   DG Comp to influence the DG Comp to aggressively assert that
13   Microsoft was not in compliance with the order, that memorandum
14   would contain relevant, and I would think, material information
15   not likely to be in the Commission's files.  In addition, there
16   would be information that the Commission could not get access
17   to through its own processes because Novell is not a party or
18   participant in the Commission proceedings.
19       The second factor to be considered is the nature of the
20   foreign proceeding and tribunal and the receptivity of the
21   foreign tribunal to the requested discovery.  Documents and
22   information that were relevant to the existing statement of
23   objections concerning interoperability information could

MAR28MICROSOFT-FINDINGS.txt

24   potentially be helpful to the foreign tribunal.  Evidence
25   regarding the extent, if any, to which the monitoring trustee

                                                                 13

1    or OTR were influenced by Novell, which arguably is a
2    competitor of Microsoft, has a bias could be meaningful to the
3    Commission in deciding the merits of the statement of
4    objections.
5         The March 10, 2006 DG Comp submission opposing the then
6    existing request for documents emphasizes in Paragraphs 25, 26
7    and 27 the impropriety of ordering the disclosure of documents
8    which are not relevant to an issued statement of objections.
9    That submission does not directly address the issue, as it has
10   been narrowed and presented, of whether even the DG Comp
11   imposes the disclosure of documents that are relevant to the
12   existing statement of objections concerning interoperability
13   information.  Moreover, I note that the DG Comp's views are not
14   necessarily the views of the European Commission.
15        In Intel, 542 U.S. at 254, the Supreme Court wrote that
16   the DG Competition's overriding responsibility was to conduct
17   investigations into alleged violations of the European union's
18   competition prescription.  In essence, the Supreme Court has
19   described the DG Comp as a prosecutor rather than as a neutral
20   judicial officer.
21        While Novell analogizes this case to Intel and to other
22   cases, the Schmitz and In re Winkler, I find that those
23   analogies are not apt.  In both Schmitz and Winkler, the German
24   government opposed the request.
25        In Schmitz, the German government was concerned that

                                                                 14

1    granting the discovery request would undermine the ongoing

MAR28MICROSOFT-FINDINGS.txt

2   German investigation.  In In re Winkler, the German government
3   was concerned that granting the discovery request would
4   undermine the final decision by a German court.  In those two
5   cases, the foreign government authoritatively articulated very
6   significant sovereignty concerns.
7           In Intel, the discovery request was made by a
8   complainant who was not a party to the European action with the
9   ultimate goal of helping the Commission.  And it was the
10  Commission itself, I believe, that authoritatively expressed
11  its desire that the discovery request not be granted.  Thus
12  far, at least, unlike Intel, the Commission, as opposed to the
13  prosecuting arm of the operation of DG Comp, has not expressed
14  a view.
15          I have considered the fact that Microsoft can and indeed
16  has asked the Hearing Officer for documents.  Indeed, the
17  Hearing Officer has already ordered the disclosure of some
18  documents that were not originally produced.  However, as I
19  noted earlier, the Hearing Officer and the Commission have no
20  power to order Novell to disclose relevant documents in its
21  file because Novell was not a party to the Commission
22  proceedings.  Therefore, ordering the disclosure of Novell
23  documents would not circumvent Commission procedures because
24  the Commission has no procedures for obtaining documents that
25  are exclusively in the possession or control of Novell.

                                                                15

1           With regard to the third statutory -- I'm sorry, the
2   third Intel factor, I find that ordering the narrowly-tailored
3   discovery would not be unduly intrusive or burdensome.  Novell
4   has explained today that it has very few documents that are
5   relevant to the interoperability information issue.
6           Finally, with regard to effectuating the purposes of

MAR28MICROSOFT-FINDINGS.txt

7    Section 1782, I find that, on the present record, ordering
8    Novell to produce documents relevant to the interoperability
9    issue would assist the foreign tribunal by making accessible to
10   Microsoft and potentially to the Commission relevant
11   information that it cannot -- the Commission cannot compel the
12   production of the Novell documents.
13           So for those reasons, unless I revise my view based on
14   information that I receive next week, I will require Novell to
15   produce the documents.  I do want to -- I will write a short
16   order that memorializes the conclusion of this, but doesn't
17   describe the reasons.  I would like to reiterate what I said
18   before the break, however.  I am not presuming to order the
19   European Commission to do anything.  What I am doing is
20   offering an opportunity for the Commission, the DG Comp, the
21   Hearing Officer or anybody else who might feel qualified to
22   address authoritatively, or arguably authoritatively, the
23   position of the European Commission on the revised narrower
24   request, an opportunity to do so.  But it's entirely up to the
25   Commission and anybody who might seek to act on its behalf to

                                                                    16

1    decide whether to provide something that will supplement the
2    record.
3            Is there a question?
4                MR. FEEHERRY:  I hope a helpful suggestion to your
5    Honor.  Because we need to respond to a subpoena, what I would
6    suggest to the Court is that you would annex or attach to your
7    order the modified subpoena as served, as delivered to Novell,
8    which we understand would be further modified to delete
9    references to Articles 5A or 5C of the 2004 decision, the
10   Article 24(1) decision, that that language there would be
11   stricken.  So the reference would be to the SO or -- in

MAR28MICROSOFT-FINDINGS.txt

12  Requests 1 through 4, it relates specifically to
13  interoperability or interoperability information.
14        THE COURT:  Well, I guess I'd say the following.
15  (1) I may order you to confer, but essentially a subpoena is a
16  court order.  And if I give you an order, that's what you would
17  be responding to.  I would be happy if you could reach some
18  agreement, but actually I think I issued an order that's more
19  narrow than the subpoena, as it's written, because -- but in
20  any event, you've heard my order.  You're going to have the
21  transcript.  I'd be quite pleased if you agree on a subpoena
22  that implements my decision.
23        MR. FEEHERRY:  If I can test your patience, your
24  Honor?  As the issue really has to do with the obvious
25  communications with trustee or communications with the

                                                              17

1   Commission, I think your order is absolutely clear.  As to a
2   communication with some third party, the subpoena was narrowed
3   to indicate any documents which summarize any communication
4   between Novell and any third party known or believed by you to
5   have been retained by the Commission with respect to the
6   subject matter of the request.  And that's the language that
7   we -- at least would be comfortable with being able to hand
8   back to Novell to ask "Are there any such documents?"  We're
9   simply working with the language of the modified subpoena.
10        MR. BRUCE:  You're not changing it?
11        MR. FEEHERRY:  We're not changing that.  The only
12  place we would change would be to delete reference to the
13  decision, the Article 24(1) proceeding, so that we are down to
14  the issue of the SO and interoperability.
15        MR. BRUCE:  On that, your Honor, we would like to
16  meet and confer because we need to study -- we know what you're

```
                               MAR28MICROSOFT-FINDINGS.txt
17    driving at and I think we're not going to have a problem coming
18    to closure, but --
19             THE COURT:  Fine.  You should file that by noon
20    tomorrow.  And just to point something out.  That's fine,
21    because you've studied this language, but I think if you look
22    at the transcript, I talk about documents that contain or
23    constitute communications or summarize oral communications.
24    It's actually narrower, but this is fine.  Use this subpoena.
25    I think as you just described it, it sounded to me consistent

                                                                    18
1     with what I intend.
2          As I say, I'm very busy on other things, so you don't
3     want to come back to me with any disputes.  You really don't.
4     Okay?
5             MR. BRUCE:  No, and I'm almost sure we won't.  The
6     noon tomorrow may be difficult because we have to consult with
7     people in Brussels, for example.
8             THE COURT:  No, you don't have to consult with
9     anybody in Brussels.  I've issued an order.
10            MR. BRUCE:  No, no, no, I'm sorry, your Honor.  I'm
11    talking about the way that he wants to revise the subpoena.
12    That's what I meant.
13            THE COURT:  I mean --
14            MR. FEEHERRY:  If your Honor would give us an extra
15    day to accommodate --
16            THE COURT:  Well, I thought you wanted it attached
17    to my order?
18            MR. FEEHERRY:  Oh, no, I'm not asking for that.
19            THE COURT:  Fine.  You've got until noon on Friday
20    to file it with me.  Actually, tomorrow is Wednesday.  You'll
21    have until noon on Thursday.
                                 Page 15
```

MAR28MICROSOFT-FINDINGS.txt

22          MR. BRUCE:  Thank you.
23          MR. FEEHERRY:  One last question, your Honor.  I
24  understand your order is not yet final from your standpoint,
25  and hence I will be asked the question about appealability.  As

                                                              19

 1  your Honor understands --
 2          THE COURT:  It's not appealable.
 3          MR. FEEHERRY:  And we assume that it won't become
 4  appealable, I guess, until -- well --
 5          THE COURT:  My understanding, subject to being
 6  educated otherwise by the Court of Appeals is, that I haven't
 7  decided this matter, therefore it's not appealable.  I've told
 8  you what I would do on the present record, however, the record
 9  is not complete.  When I get any submissions that are made next
10  week, I will consider them and I will either write that I've
11  considered them, they don't cause me to alter my views,
12  therefore Novell shall produce, or I will write that I've
13  considered them, they do cause me to revise my views for the
14  following reasons, and therefore the motion to quash is
15  allowed.  And I would assume that it would be after that that
16  the disappointed party would be authorized to appeal.  However,
17  I'm not permitted to give legal advice and I don't have to
18  study when things are ripe for appeal because I just decide
19  them and then they're gone.
20          MR. FEEHERRY:  Your Honor, and the reason, of
21  course, is we're assuming you will then issue something final
22  on or after the 6th, when you will receive these materials,
23  because the traditional process by which this issue could be
24  appealed by either party -- although I suppose if it's an order
25  to produce, it would require a motion for a stay in the first

                                                              20

MAR28MICROSOFT-FINDINGS.txt

1    instance before your Honor, and you have written in this area.
2            THE COURT:  Canterbury Liquors probably most
3    thoughtfully, but that's a long time ago.
4            MR. FEEHERRY:  You slightly modified the
5    reasonableness of success on the merits on appeal, I think, in
6    that decision, arguing persuasively that perhaps the District
7    Court might not be the first one to rule on that.
8         In any event, that's the reason for my request.  So that
9    if a party wished to take an appeal, depending on what happens
10   next week, one of the things that would happen in this court
11   before the 10th would be some sort of a motion for a stay.
12   Thank you, your Honor.
13           THE COURT:  That's fine.  And if we get to that
14   point, I think it will be important that you each tell me what
15   you think about the last date on which Microsoft could
16   supplement the record.  Obviously if the documents are
17   produced, there's a form of irreparable harm to Novell.  On the
18   other hand, if delay would mean that Microsoft couldn't get the
19   documents in the record, that may weigh against the stay.  But
20   you told me it was very few documents and if it's only what the
21   Commission already has, then what's the fuss?
22        Is there anything further in this matter for today?  All
23   right.  Thank you very much.  The Court is in recess.
24           (Ends 1:40 p.m.)
25

⚥                                                                21

1            C E R T I F I C A T E
2
3
4
5       I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do

```
                     MAR28MICROSOFT-FINDINGS.txt
 6    hereby certify that the foregoing record is a true and accurate
 7    transcription of my stenographic notes, before
 8    Chief Judge Mark L. Wolf, on Tuesday, March 28, 2006, to the
 9    best of my skill and ability.
10
11
12
13
14
15     _____
16     RICHARD H. ROMANOW
17
18
19
20
21
22
23
24
25
♀
```