Richard A. Jones (SBN: 135248)
COVINGTON & BURLING
One Front Street
San Francisco, CA 94111
TEL: (415) 591-6000
FAX: (415) 591-6091
E-MAIL: rjones@cov.com

E. Edward Bruce (*pro hac vice*)
William D. Iverson (*pro hac vice*)
Joshua D. Wolson (*pro hac vice*)
COVINGTON & BURLING
1201 Pennsylvania Avenue N.W.
Washington, D.C. 20004
TEL: (202) 662-6000
FAX: (202) 662-6291
E-MAIL:  ebruce@cov.com
             wiverson@cov.com
             jwolson@cov.com

Attorneys for Applicant Microsoft Corp.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| *In re*<br><br>Application Of<br><br>MICROSOFT CORPORATION,<br><br>    Applicant. | Case No. 06-80038 JF (PVT)<br><br>**MICROSOFT CORPORATION'S OBJECTIONS TO MAGISTRATE'S ORDER**<br><br>Date: TBD<br>Time: TBD<br>Courtroom:  3, 5th Floor<br><br>Hon. Jeremy D. Fogel |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.   STATEMENT OF FACTS ................................................................... 2

      A.   The Commission's Proceedings Against Microsoft. ............................. 2

           1.   The Commission's 2004 Decision, Article 24(1) Decision and
                Statement of Objections ........................................................... 2

           2.   The Role of the Monitoring Trustee. ......................................... 4

           3.   The Commission's Rulings Regarding Microsoft's Rights Of
                File Access ............................................................................ 5

      B.   Sun's And Oracle's Contacts With The Trustee, OTR, And The
           Commission. ........................................................................................ 7

      C.   Microsoft's Application And The Magistrate's Order. ....................... 10

III.  ARGUMENT ..................................................................................... 11

      A.   THE MAGISTRATE'S ORDER IS ERRONEOUS AS A MATTER
           OF LAW. ............................................................................................ 11

           1.   Microsoft's Subpoenas Do Not Circumvent Restrictions Placed
                On It By The Commission. ...................................................... 12

      2.   The Magistrate Erred By Relying On DG Comp's Annex To Conclude
           That The European Commission And Courts Are Not Receptive To
           Judicial Assistance In This Case ............................................................. 15

      3.   The Magistrate Erred In Relying On Comity. ........................................ 17

      B.   THE MAGISTRATE IMPROPERLY IGNORED OTHER REASONS
           TO ORDER DISCOVERY UNDER SECTION 1782. ........................ 18

IV.   CONCLUSION ................................................................................... 20

1
2

# TABLE OF AUTHORITIES

3

## <u>Cases</u>

*Advanced Micro Devices v. Intel Corp.*, No. C01-7033, 2004 WL 2282329 (N.D. Cal. Oct. 4, 2004) ................................................................................................................... 16

*Four Pillars Enterprises Co., Ltd. v. Avery Dennison Corp.*, 308 F.3d 1075 (9th Cir. 2002) ........................................................................................................................... 19

*In re Application of Metallgesellschaft AG*, 121 F.2d 77 (2d Cir. 1997) .................................... 19

*Intel Corp. v. Advanced Micro Designs, Inc.*, 542 U.S. 241 (2004)..................................... passim

Joined Cases T-67/00, T-68/00, T-71/00, and T-78/00, *JFE Eng. Corp. et al.*, [not yet reported]........................................................................................................................... 13

## <u>Statutes</u>

28 U.S.C. § 636........................................................................................................................... 1

## <u>Other Authorities</u>

Council Reg. 1/2003 .................................................................................................................... 3

S. Rep. No. 1580, 88th Cong. 2d Sess., p. 7 ............................................................................. 16

## <u>Rules</u>

Civil L.R. 72-3 ........................................................................................................................... 1

Fed. R. Civ. P. 72....................................................................................................................... 1

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

Pursuant to 28 U.S.C. § 636(b)(1) and (3), Fed. R. Civ. P. 72, and Civil L.R. 72-3, Applicant Microsoft Corp. ("Microsoft") objects to the Magistrate's Order Granting Motions to Quash Subpoenas and Vacating Prior Order dated March 29, 2006 ("Order") because it misinterprets 28 U.S.C. § 1782 and improperly applies the Supreme Court's holding in *Intel Corp. v. Advanced Micro Designs, Inc.*, 542 U.S. 241 (2004). The Order also fails to consider a number of factors relevant to Microsoft's Application, including ones that the Supreme Court addressed in *Intel*. Finally, recent events that the Magistrate did not consider further undermine the basis of the Order. Because the decision effectively denies Microsoft's Application and resolves this matter in its entirety, the Magistrate's Decision is a Dispositive Decision for purposes of Fed. R. Civ. P. 72(b) and Civil L.R. 72-3, making this Court's review *de novo*. *See* Fed. R. Civ. P. 72(b) ("district judge to whom the case is assigned shall make a de novo determination"); *see also* Civil L.R. 72-3 (same).[1]

Microsoft's Application to this Court sought assistance to obtain discovery that goes to the heart of Microsoft's defense in a proceeding before the European Commission ("Commission") in which Microsoft faces fines of up to €2 million per day. Microsoft seeks to discover documents that Commission procedures would make available to it if the documents were in the Commission's possession; however, the documents that Microsoft seeks are in the exclusive possession of third parties. A judge in the United States District Court for the District of Massachusetts has, in connection with a substantially identical application, analyzed the same

---

[1] As required by Civil L.R. 72-3, Microsoft is filing, contemporaneously with these Objections, a motion for *de novo* determination of this matter to supplement the record to take into account events since the hearing before the Magistrate. *See United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) (district court need not reject newly-proffered evidence simply because it was not presented to magistrate judge). Even if the Magistrate's Order were not considered a Dispositive Decision, the Court's standard of review would nonetheless be *de novo*, because the Order rests entirely on matters of law: the proper interpretation of § 1782 and the application of the Supreme Court's decision in *Intel*. *See Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 422 (C.D. Cal. 1999) (magistrate judge's legal conclusions reviewed *de novo*) (citing *U.S. v. McConney*, 728 F.2d 1195, 1200-01 (9th Cir. 1984), *overruled on other grounds*, *Estate of Merchant v. C.I.R.*, 947 F.2d 1390 (9th Cir. 1991)).

issues that were presented to the Magistrate and reached entirely different conclusions from hers. As the Massachusetts District Court recognized, the documents that Microsoft seeks are an important part of its defense and "could be meaningful to the Commission in deciding the merits" of the case against Microsoft. (Mass. Tr. at 13.[2])

　　　　　　　If left standing, the Magistrate's Order would effectively convert § 1782 into a tool at the disposal of prosecutors in civil law systems, but not defendants such as Microsoft. That outcome defies Congress's intent when it amended the statute in 1964, and is in no way supported by *Intel*. The Court should therefore reverse the Magistrate's Order.

　　　　　　　Because the Commission recently introduced new evidence in support of its charges against Microsoft, Microsoft has now been given until April 14 to make a formal filing with the Commission, at which time it could present any evidence it obtains from this proceeding. After April 14, Microsoft could seek to supplement the record before the Commission, but the Commission could decide the matter at any time before Microsoft has the opportunity to make such a submission. Accordingly, Microsoft respectfully asks this Court to rule expeditiously on these objections.

## II.　　STATEMENT OF FACTS

A.　　**The Commission's Proceedings Against Microsoft.**

　　1.　　**The Commission's 2004 Decision, Article 24(1) Decision and Statement of Objections**

　　　　　　　On March 24, 2004, in response to a complaint filed by Sun, the Commission decided that Microsoft infringed Article 82 of the EC Treaty and Article 54 of the EEA Agreement[3] by refusing to disclose certain "Interoperability Information" to vendors of work

---

[2] Citations to "Mass Tr." are to the excerpt transcript of the hearing before the Hon. Mark L. Wolf in the District of Massachusetts on March 28, 2006, a copy of which is attached to the Supplemental Declaration of Joshua Wolson at Ex. A.

[3] Both Article 82 and Article 54 relate to abuse of a dominant market position, somewhat like section 2 of the Sherman Act.

group server operating system products (the "2004 Decision").[4] (Burt Decl. Ex. A (submitted in support of Microsoft Application).) Microsoft has appealed this Decision, and the European Court of First Instance has scheduled an extraordinary five-day hearing starting April 24 before a Grand Chamber of 13 judges – similar to an *en banc* proceeding – to hear Microsoft's appeal.

To comply with the 2004 Decision, Microsoft created and made available to prospective licensees extensive Interoperability Information (the electronic equivalent of over 12,000 printed pages). Despite Microsoft's compliance, on November 10, 2005, the Commission adopted a decision (the "Article 24(1) Decision") which asserted that Microsoft had violated the 2004 Decision by failing to make available fully adequate Interoperability Information to prospective licensees, and by proposing excessively high royalty rates to license the Interoperability Information.[5] To support these allegations, the Commission relied principally on two reports from the OTR Group ("OTR"), an outside consulting firm retained by the Commission as independent experts. It also referred to critical comments on Microsoft's Interoperability Information by four of Microsoft's competitors, including Sun and Oracle.

The Article 24(1) Decision instructed Microsoft to come into compliance by December 15, 2005, or face a daily fine of €2 million.[6] Microsoft complied with the Article 24(1) Decision and made revised documentation available on December 15 in Redmond, Washington.

_____

[4] "Interoperability Information" is defined by Article 1(1) of the 2004 Decision to include specifications for communication protocols used by Windows work group server operating systems to deliver certain services to Windows networks. The 2004 Decision is available at http://europa.eu.int/comm/competition/antitrust/cases/decisions/37792/en.pdf

[5] "Article 24(1)" is part of Council Regulation 1/2003 of December 16, 2002, on the implementation of competition laid down in Articles 81 and 82 of the EC Treaty, OJ L 1, 4.1.2003, p 1/1 (available at http://europa.eu.int/eur-lex/pri/en/oj/dat/2003/l_001/l_00120030104en00010025.pdf).

[6] The proposed fine represents the first time the Commission has invoked the greatly expanded authority to levy fines of up to 5% of an undertaking's average daily turnover (revenue), compared with the previous limit of €1,000 a day. *See* Regulation 1/2003, *supra*, Article 24. Because more than 100 days have passed since December 15, Microsoft now confronts a fine of more than €200 million, which continues to grow.

1    Just six days later, however, without reviewing the revised Microsoft

2  documentation, the Commission adopted a Statement of Objections ("SO") charging that

3  Microsoft had failed to comply with the 2004 Decision and the Article 24(1) Decision because it

4  had not provided adequate Interoperability Information.  The SO represented the first step

5  toward actually imposing the fine threatened by the Article 24(1) Decision and triggered

6  Microsoft's "rights of defence," including its right to access the file compiled by the

7  Commission in its investigation.  The Commission based its allegations in the SO on evaluations

8  of earlier versions of Microsoft's documentation contained in (1) two reports by a "Monitoring

9  Trustee" who had been appointed to monitor Microsoft's compliance with the 2004 Decision,

10  (2) the earlier two OTR reports cited in the Article 24(1) Decision, and (3) the comments the

11  Commission had received from Microsoft's competitors, including Sun and Oracle, as also cited

12  in the Article 24(1) Decision.  Microsoft filed a response on February 15, 2006.  However, that

13  response could not address fully the deep involvement of Sun and Oracle with the Trustee and

14  OTR because the Commission did not release documents evidencing the extent of that

15  involvement until February 13.  On March 2, Microsoft filed a Supplemental Response to the

16  SO, addressing those documents and arguing that its "rights of defence" had been abridged, and

17  on March 3 it filed its application for discovery under § 1782 in this Court.

18    2.    **The Role of the Monitoring Trustee.**

19    The Monitoring Trustee was appointed to review Microsoft's compliance by a

20  decision adopted by the Commission dated July 28, 2005 (the "Monitoring Trustee Decision").[7]

21  Most importantly here, Article 2.2 of that decision provided that the Trustee should "carry out

22  its mandate impartially."  The Trustee was also instructed to establish procedural safeguards to

23  protect Microsoft's due process rights and ensure a transparent record of communications

24  between the Monitoring Trustee and others.  For example, the Trustee "may have access to any

25  compilation of documents… that Microsoft or any third party is requested or required *to submit*

26  _____

27  [7] Available at
http://europa.eu.int/comm./competition/antitrust/cases/decisions/37792/trustee.pdf.

28

*to the Commission* for the purpose of monitoring Microsoft's compliance with the" 2004 Decision. *Id.*, Art. 3(2)(b) (emphasis added). Thus, any documents the Trustee received under Article 3(2)(b) should have been placed in the Commission's file, giving Microsoft access to them or the right to have them identified as documents being withheld (and why).

Second, the Monitoring Trustee was directed to establish a procedure for third parties to lodge complaints with the Trustee concerning Microsoft's compliance with the 2004 Decision. *Id,*, Art. 3(3). But the Trustee was also directed to send a copy of the complaint to the Commission, thereby insuring its inclusion in the Commission's file to which Microsoft presumptively has access, *id.*, as well as to provide a non-confidential version of any complaint to Microsoft and allow Microsoft to respond, *id*.[8] Article 5.1 of the Monitoring Trustee Decision bars the Trustee from disclosing the confidential version of such documents. *Id.* ¶ 5.1.

Viewed together, these provisions make clear that the Commission mandated a process by which the Trustee could gather information from third parties such as Sun and Oracle, but Microsoft would be given an opportunity to respond to the non-confidential versions of that information. However, the Trustee never set up this complaint procedure.

### 3. The Commission's Rulings Regarding Microsoft's Rights Of File Access.

Since the Commission's adoption of the SO, Microsoft has made repeated efforts to obtain through Commission procedures documents evidencing Sun's or Oracle's communications with the Commission, the Trustee, or OTR. Throughout that process, both the Commission and its hearing officer – who rules on issues relating to a defendant's access to the file and procedural matters – have acknowledged that Microsoft's rights of defence permit it to receive such documents, to the extent they are in the Commission's file or if the Trustee or OTR have retained copies and supply such copies to the Commission in response to its request.[9]

---

[8] A complaint could be "confidential" only to the extent that it contained proprietary information about the business of a third-party. Article 3(3) also allows the Trustee to preserve the anonymity of the complaint, in appropriate cases.

[9] A complete history of Microsoft's efforts to obtain documents from the Commission is set forth at pp. 6-8 of Microsoft's Opposition to Sun's and Oracle's motions to quash ("Opp.").

1    First, on February 8, after a lengthy exchange of correspondence (*see* Opp. 6-7),

2  the hearing officer directed the Commission to provide Microsoft with copies of the

3  Commission's own communications with third parties, including Sun and Oracle. She also

4  agreed that communications the Trustee or OTR had with these and other third parties could not

5  be withheld as "internal to the Commission." Nonetheless, she noted that the Commission's file

6  indexes identified only one such document, effectively taking the position that if the

7  *Commission* had not received such documents and placed them in its "file," the hearing officer

8  had no power to compel their production. (Burt Decl. Ex. G.) The Commission complied with

9  the hearing officer's directive on February 13, providing the first opportunity for Microsoft to

10 see the extent of the communications that Sun and Oracle had had with the Commission, OTR,

11 or especially the Trustee.

12   Second, on March 24, in response to an additional request from Microsoft, the

13 hearing officer informed Microsoft that it would be provided with non-confidential versions of

14 "documents provided by third parties to the Trustee *and transmitted by the latter to the*

15 *Commission.*" (Supp. Wolson Decl. Ex. B (emphasis added).[10]) However, the hearing officer

16 explained that Microsoft could not receive any documents until the Commission completed a

17 confidentiality review known as an "Akzo procedure," in which a company supplying

18 information to the Commission is given an opportunity to object to the Commission's disclosure

19 of that information. (*Id.*) The hearing officer only required the Commission to turn over copies

20 of those documents if they had been sent to the Commission.

21   Third, on March 28, the Commission provided Microsoft with "those documents

22 exchanged between IBM, Oracle and Sun and the Trustee, which are not confidential or which

23 are not unrelated to the subject matter of the [SO]." (Supp. Wolson Decl. Ex. C.) The

24 Commission also provided Microsoft with "comments made by third parties on the Statement of

25 Objections or on Microsoft's response thereto" and represented that OTR had "not received any

26

27  [10] A copy of the hearing officer's March 24 letter was provided to the Magistrate at the hearing
    on this matter on March 27.

28

documents from third parties." (*Id.*)  Finally, the Commission provided Microsoft with a list of documents that it had withheld from its production.  That list revealed that the Commission did not withhold as confidential any documents evidencing communications with Oracle or Sun.  Thus, as of March 28, the hearing officer and the Commission had agreed to provide Microsoft all documents in the Commission's, OTR's, or the Trustee's possession that reflected Sun's or Oracle's communications with the Commission, OTR, or the Trustee.  Of course, as the Massachusetts District Court emphasized, this would not include documents that Sun and Oracle had never sent to the Commission, the Trustee, or OTR, such as memoranda or notes prepared by Oracle and Sun documenting conversations or meetings.  (Mass. Tr. 12.)  Nor would it include documents that were not retained by the Commission, OTR, or the Trustee.

**B.    Sun's And Oracle's Contacts With The Trustee, OTR, And The Commission.**

The documents that the Commission did provide Microsoft on February 13 and March 28 show that both Sun and Oracle have been actively engaged, with the assistance and sometimes the encouragement of the Commission, in efforts to "educate" the Trustee and OTR, at the expense of Microsoft.  (Burt Decl. Ex. H.)  Microsoft contends as part of its "rights of defence" that this has been done in a manner inconsistent with the Commission's role as neutral regulator, the Trustee's role as an "impartial" monitor, or OTR's role as independent expert.  As the Massachusetts District Court explained, "[e]vidence regarding the extent, if any, to which the monitoring trustee or OTR were influenced by Novell [or Oracle or Sun], which arguably is a competitor of Microsoft, [and therefore] has a bias could be meaningful to the Commission in deciding the merits of the statement of objections."  (Mass. Tr. at 13.[11])

The documents that the Commission has provided reveal a number of meetings and conference calls between Sun or Oracle and the Trustee, including the following:

---

[11] There appears to be a typographical omission in the transcript of the Massachusetts District Court's holding; the second bracketed language added to the quotation attempts to make the sentence read as the context indicates it should logically be read.

1    -- The Commission tried to initiate a meeting between the Monitoring Trustee

2    and Sun in order to give the Monitoring Trustee a "first impression of what is at stake" and to

3    "introduce [the Trustee] to the issues."  (Burt Decl. Ex. H.)  Sun agreed that such a meeting

4    would be useful, noting that it would "begin what will be *a huge education process*" (*id.*

5    (emphasis added)), and a conference call was scheduled for October 27, 2005, to be followed by

6    a personal meeting on November 9.  (*Id.*)  Microsoft has never received any information about

7    what took place on the call or at the meeting.

8    -- In November 2005, Sun's lawyers, including Mr. Kingston of Morgan Lewis,

9    e-mailed the Commission to propose a schedule for meetings between Sun, the Trustee, and the

10    Commission's case team before and after Sun visited Microsoft to view its documentation.  The

11    e-mail then explains that the Trustee should not accompany Sun's representatives on their visit

12    to Microsoft because "*[t]here is fear at Sun that this will expose too much to MS* [Microsoft]."

13    (Burt Decl. Ex. J (emphasis added).)  On November 25, Sun apparently had a conference call

14    including Mr. Kingston, Thomas Kramler of the Commission's case team, and the Trustee.

15    (Wolson Supp. Decl. Ex. D.)  Thereafter, the Trustee apparently traveled to Sun's facility in

16    Burlington, Massachusetts, to meet with Sun and its lawyers on December 7.  (*Id.* Ex. E.)

17    Microsoft has not received any information about what took place on the November 25 call or at

18    the December 7 meeting.

19    -- In September 2005, Oracle arranged for Mr. Alepin, a "technology advisor"

20    employed by a San Francisco law firm, to inspect the documentation that Microsoft had made

21    available to comply with the Commission's 2004 Decision.  Mr. Alepin sent an e-mail to

22    Oracle's outside lawyers reporting that he had taken extensive notes on Microsoft's

23    documentation.  Seven minutes later, Oracle's counsel forwarded the message to the

24    Commission's Head of Unit in charge of the Microsoft case asking whether Mr. Alepin should

25    be asked to cancel a vacation scheduled for the next week, noting that he – Oracle's counsel –

26    would be willing to have Mr. Alepin's vacation cancelled because "*Oracle has made a large*

27    *investment in this, so I need to do what is necessary to ensure that you can effectively use the*

28    *results of our efforts*."  (Burt Decl. Ex. K (emphasis added).)  Mr. Harris of Clifford Chance

1    received a copy of this e-mail.  In February 2006, Oracle's counsel exchanged e-mails with the

2    Trustee in an apparent effort to set up a meeting between Mr. Alepin ("Ronald") and the

3    Trustee.  (Wolson Supp. Decl. Ex. F.)  Microsoft has not received any documents about what

4    information Oracle or Mr. Alepin provided to the Commission or to the Trustee.

5            The documents also show that Sun was in communication with OTR, although

6    OTR apparently has no documents about those contacts.  From August 29-31, 2005, Sun

7    conducted a three-day evaluation of the documentation that Microsoft made available pursuant

8    to a licensing agreement between Sun and Microsoft.  Sun then submitted a report to the

9    Commission, at the Commission's request, containing Sun's views of Microsoft's

10   documentation.  At the same time, the Commission asked OTR to evaluate the documentation.

11   After Sun reported to the Commission, but before OTR did so, the Commission organized a

12   conference call between Sun and OTR "on Sun's findings in Redmond …," which apparently

13   occurred on September 20, 2005. (Burt Decl. Ex. I.)  Microsoft has not received any documents

14   showing what transpired on that call.  The evidence suggests, however, that OTR was

15   influenced by Sun's evaluation of Microsoft's Interoperability Information.  On September 28,

16   2005, OTR reported to the Commission on Microsoft's Interoperability Information.  That

17   report includes reasoning and specific language that closely resembles Sun's report to the

18   Commission.  (*See* Wolson Decl. Ex. C, comparing Ex. A with Ex. B.)  The resemblances are so

19   striking as to make mere coincidence an improbable explanation.

20           Microsoft was not informed of any of these meetings or communications, much

21   less invited to participate or to respond to the claims made by its competitors.  Nor has

22   Microsoft received any record of what took place during these various calls or meetings, such as

23   notes or reports.  The documents Microsoft has obtained to date provide part of the story of

24   Sun's and Oracle's communications with the Trustee, OTR, and the Commission.  However, the

25   Commission, the Trustee, and OTR apparently do not have documents to tell the rest of the

26   story.  Accordingly, Microsoft seeks § 1782 discovery to get from Oracle and Sun documents

27   that are unavailable in Europe which can shed additional light on this "meaningful" evidence.

28

C.    **Microsoft's Application And The Magistrate's Order.**

On March 3, approximately 2 1/2 weeks after it first received documents from the Commission detailing the extent of the communication among Microsoft's competitors, the Commission, the Trustee, and/or OTR, Microsoft filed an Application in this Court seeking authorization to take discovery of Sun and Oracle regarding their communications with the Trustee, OTR, or the Commission.[12]  Microsoft sought through its subpoenas to supplement the record with documents that, if they were in the Commission's file or in the possession of the Trustee or OTR, would have been disclosed to Microsoft pursuant to the rulings of the Commission hearing officer.  As explained below, these documents are highly relevant to Microsoft's defense against the SO.

Sun and Oracle objected to Microsoft's subpoenas in their entirety.  Their objections relied primarily on a letter and annex submitted by the Directorate General for Competition ("DG Comp"), the Commission's primary antitrust law enforcer.  *See Intel*, 542 U.S. at 250.  The annex claimed that Microsoft's rights of defence were adequately protected by the Commission's rules on access to the file (even though important documents are not contained in that file).  Notably, the annex does *not* say that the documents Microsoft is seeking would be inadmissible before the Commission or would not be considered by the Court of First Instance.

Sun and Oracle also asserted a variety of other objections to Microsoft's discovery, particularly on grounds of burdensomeness.  Microsoft met and conferred with both Sun and Oracle concerning their objections, but the parties were unable to reach an agreement.  Nonetheless, based on the concerns that Sun and Oracle articulated and in order to be able to obtain the most important discovery needed as promptly as possible, Microsoft narrowed the

---

[12] Microsoft also filed applications to serve subpoenas on the other companies for which the Commission initially withheld correspondence – IBM and Novell.  Thus, Microsoft also filed applications in the District of Massachusetts to take discovery from Novell and in the Southern District of New York to take discovery from IBM and its counsel Cleary Gottlieb Steen & Hamilton.

1    subpoenas in letters sent to Respondents on March 18, 2006.  (Wolson Decl. Exs. D, E

2    (submitted in support of Microsoft's Opposition to motions to quash ("Opp")).)  The subpoenas

3    now request only documents that "contain, constitute, or summarize any communication with"

4    OTR, the Monitoring Trustee, or the Commission relating to Microsoft's Interoperability

5    Information or to Microsoft's failure to comply with Articles 5(a) and (c) of the 2004 Decision,

6    the Article 24(1) Decision, or the SO.[13]  Microsoft also narrowed its subpoenas to Morgan

7    Lewis, Clifford Chance, and Mr. Alepin to include only communications had on behalf of Sun

8    (for Morgan Lewis) or Oracle (for Clifford Chance and Mr. Alepin).[14]  On March 27, the

9    Magistrate held a hearing on Sun's and Oracle's motions to quash and took the motions under

10   submission.

11          On March 29, the Magistrate granted Sun's and Oracle's motions and vacated her

12   previous order granting Microsoft's Application.  The Magistrate based her Order on three

13   considerations:  her conclusion that Microsoft's subpoenas purportedly "constitute an attempt to

14   circumvent specific restrictions that European Commission has placed on Microsoft's right to

15   obtain certain kinds of information" (Order at 5); her belief that the Commission was

16   unreceptive to the assistance of U.S. federal courts (*id.* at 5-6); and issues of comity (*id.* at 6).

17                              III.    **ARGUMENT**

18   A.     **THE MAGISTRATE'S ORDER IS ERRONEOUS AS A MATTER OF LAW.**

19          The Magistrate's Order relies on an improper interpretation of § 1782 and an

20   improper application of the Supreme Court's decision in *Intel*.  It also ignores the consistent

21   holdings of the Commission's hearing officer that the documents Microsoft seeks would be

22   provided to Microsoft through Commission procedures if they were in the Commission's file, or

23

24   [13] Recently, the Commission served Microsoft with "supplemental" evidence to support its SO,
     including a report by a newly disclosed expert, TAEUS International Corp.  Microsoft's
25   narrowed requests thus seek communications with TAEUS or any other expert that Respondents
     know or believe to have been retained by the Commission.

26   [14] At argument before the Magistrate, Sun and Oracle largely abandoned their objections about
     burden and the scope of the subpoenas, and those arguments apparently did not factor into the
27   Magistrate's Order.

28

if the Trustee or OTR had them.  Moreover, the Order rests on conclusions directly opposite to those reached by Judge Wolf during the hearing on Novell's motion to quash Microsoft's subpoena in the District of Massachusetts, which were provided to the Magistrate before her decision was issued, but which she refused to consider.

1.    **Microsoft's Subpoenas Do Not Circumvent Restrictions Placed On It By The Commission.**

Microsoft seeks from Sun and Oracle documents that, if they were in the possession of the Commission, OTR, or the Trustee, would have been provided to Microsoft. However, as the Massachusetts District Court explained in its analysis, not every document summarizing or reflecting such a communication made its way into the Commission's, OTR's, or the Trustee's files.  For example, "there may be nonprivileged … documents memorializing oral communications that are not reflected in the Commission's file. …[S]uch internal [to Sun or Oracle] memoranda of oral communications could be material to the credibility of the DG Comp's contentions and the merits of them."  (Mass Tr. 12.)  The Commission's procedures offer no way for Microsoft or the Commission to compel the production of such documents. (*Id.* at 11-12; Waelbroeck Decl. ¶¶ 25-28 (submitted in support of Opp.).)  However, the Commission has not restricted discovery as to such evidence.

To the contrary, the results of Microsoft's efforts to obtain documents via the hearing officer, the Commission's public policies, and the Court of First Instance's case law all demonstrate that European law *favors* the disclosure of such documents.  The hearing officer and the Commission have consistently determined that Microsoft is entitled to obtain communications between Sun or Oracle, on the one hand, and the Commission, the Trustee, or OTR on the other hand.  In her February 8 letter, the hearing officer emphasized that "correspondence that OTR and [the Monitoring Trustee] has had with third parties *cannot be considered internal to the Commission*" and therefore required the Commission to provide any copies of such documents in its possession.  (Burt Decl. Ex. G (emphasis added).)  The hearing officer's March 24 letter reiterated that the Commission had to provide Microsoft with non-confidential versions of "documents provided by third parties to the Trustee and transmitted by the latter to the Commission."  (Wolson Supp. Decl. Ex. C.)  On March 28, the Commission

1   agreed to provide Microsoft with "documents exchanged between IBM, Oracle and Sun and the

2   Trustee which are not confidential or which are not unrelated to the subject matter of the

3   Statement of Objection of 21 December 2005." (Wolson Supp. Decl. Ex D.)[15]

4           On facts comparable to the ones here, the Massachusetts District Court held that

5   Microsoft's requests to Novell did not circumvent European law. To the contrary, the

6   Massachusetts District Court noted that the "Hearing Officer and the Commission have no

7   power to order Novell [or Sun or Oracle] to disclose relevant documents in its file because

8   Novell was not a party to the Commission proceedings. Therefore, ordering the disclosure of

9   the Novell documents would not circumvent Commission procedures because *the Commission*

10  *has no procedures for obtaining documents that are exclusively in the possession or control of*

11  *Novell.*" (Mass Tr. 14 (emphasis added).) The same is true here. Moreover, the letters from the

12  hearing officer prove that many of the documents Microsoft seeks are not in the Commission's

13  file. In any event, even if the Commission did have the authority to discover documents from

14  Sun and Oracle, that would not offer *Microsoft* a way to obtain evidence relevant to its defense.

15          The Magistrate ignored all of these facts and instead focused on a single

16  provision of the Monitoring Trustee Decision to conclude that Microsoft's subpoenas would

17  circumvent a "specific [confidentiality] restriction" imposed by the Commission on Microsoft's

18  _____

19  [15] The Commission's policy pronouncements further demonstrate that the Commission favors
    disclosure of all evidence relevant to issues raised by its SO. On December 13, 2005, the

20  Commission issued a Notice on access to the file – a public statement of its applicable rules and
    interpretation of Commission law – in cases under Articles 81 and 82 of the EC Treaty, such as

21  the proceeding against Microsoft. That Notice explained that the Commission file consists of all
    documents obtained or produced by the Commission in its investigation, and that to enable

22  parties responding to a statement of objections to "effectively express their views on the
    preliminary conclusions reached by the Commission in its objections," such parties are entitled

23  to all such documents except those that are internal to the Commission or contain business
    secrets or other confidential information. (Burt Decl. Ex. O at ¶¶ 8,10.) The same day, the

24  Commission issued a press release that the right of access had been broadened "to *increase the
    transparency of competition procedures* and underline the Commission's commitment to due

25  process and parties rights of defence," and to allow parties "to *see all of the evidence*, whether it
    is incriminating or exonerating." (Burt Decl. Ex. P (emphasis added).) The Court of First

26  Instance has similarly emphasized the importance of "unfettered evaluation of evidence" in
    Commission proceedings. Joined Cases T-67/00, T-68/00, T-71/00, and T-78/00, *JFE Eng.*

27  *Corp. et al.*, [not yet reported], ¶ 273 (Wolson Decl. Ex. F.); Waelbroeck Decl. ¶¶ 37-38.

28

1  right to obtain certain kinds of discovery.  (Order at 5 (citing Monitoring Trustee Decision Art.

2  5.1).)  The Magistrate's reliance on that provision is misplaced.  First, in its March 28

3  production, the Commission did not withhold as confidential any documents that went between

4  Sun or Oracle and the Trustee.  (Wolson Supp. Decl. Ex. C.)  Thus, the Commission has made

5  clear that it does not view such communications as confidential.[16]  Second, contrary to the

6  Magistrate's decision, Article 5.1 is not a restriction imposed by the Commission on Microsoft's

7  rights no obtain discovery.  Paragraph 5.1 provides that the Trustee may not disclose

8  "Confidential Information obtained in the course of performing its functions *under Article 3*" of

9  the Monitoring Trustee Decision.  Monitoring Trustee Decision Art. 5.1 (emphasis added).

10  Article 3, in turn, provides that if the Trustee obtains information from a third party complaining

11  about Microsoft's compliance with the 2004 Decision, he shall provide "the confidential version

12  of any such complaint to the Commission" and "*the non-confidential version of any such*

13  *complaints shall be forwarded to Microsoft*."  *Id.* Art. 3.3 (emphasis added).

14              Thus, the Monitoring Trustee's Decision does not restrict Microsoft's access to

15  discovery.  Rather, it *commands* that Microsoft be provided access to the types of documents

16  that it seeks here.  The hearing officer has enforced this principle, as she has consistently

17  required the Commission to provide Microsoft with the same type of documents that Microsoft

18  is seeking, if they are in the Commission's, OTR's, or the Trustee's files.  The Magistrate's

19  holding to the contrary is error as a matter of law, and should be overruled.

---

[16] It is hard to conceive how the documents that Microsoft seeks could contain confidential information.  The only confidentiality interests at issue in Commission proceedings are (a) protecting the identity of complainants in situations where there is a legitimate fear of retaliation and (b) protecting proprietary business information.  The first concern is obviously inapplicable here, because the Commission has already disclosed Sun's and Oracle's identities to Microsoft.  As for the latter consideration, the documents that Microsoft seeks relate to Oracle's and Sun's comments on *Microsoft's* Interoperability Information.  That is, Microsoft wants to know what Oracle and Sun said about Microsoft's products, not about Sun's or Oracle's products.  Neither Sun nor Oracle seems likely to have a proprietary interest in such information.  To the extent that they claim such an interest, Sun or Oracle should be required to explain their interest (with regard to specific documents responsive to the subpoena), particularly in view of the Commission's decision to disclose such communications.

1    Separately, the Magistrate's reliance on the Monitoring Trustee Decision is

2  erroneous because the Monitoring Trustee Decision does not apply to communications between

3  Sun or Oracle and OTR or the Commission, and the Magistrate failed to draw this distinction.

4  Indeed, the Magistrate has not identified any restriction – specific or general – on Microsoft's

5  right to obtain discovery of Sun's or Oracle's communications with OTR or the Commission.

6  　　　2.    **The Magistrate Erred By Relying On DG Comp's Annex To Conclude That
        The European Commission And Courts Are Not Receptive To Judicial
7        Assistance In This Case.**

8    The Magistrate's Order concludes, based on one sentence in DG Comp's annex,

9  that the Commission is not receptive to judicial assistance in this case.  (Order at 5 & n. 5.)  The

10  Order earlier held that DG Comp should not be treated as Microsoft's "adversary," even though

11  it is DG Comp's case team that is responsible for pursuing charges against Microsoft before the

12  Commission.  This conclusion about "receptivity" ignores that the evidence Microsoft seeks

13  would unequivocally be admissible before the Commission, and ignores altogether the

14  receptivity of the European courts, including the Court of First Instance, to such evidence.  The

15  Order also directly contradicts the analysis of the Massachusetts District Court.

16    First, the Order assigns undue weight to DG Comp's views of Microsoft's

17  discovery requests.  In *Intel*, the Supreme Court explained that DG Comp, "operating under the

18  Commission's aegis, is the European Union's primary antitrust law enforcer."  542 U.S. at 250.

19  As the Massachusetts District Court explained, "[i]n essence, the Supreme Court has described

20  the DG Comp as a prosecutor rather than as a neutral judicial officer."  (Mass. Tr. 13.)  The

21  Massachusetts District Court also stressed that "the DG Comp's views are not necessarily the

22  views of the European Commission."  (*Id.*)  As Microsoft explained in its Opposition to the

23  motions to compel, it is hardly surprising that the prosecutor in the Commission's proceeding is

24  not receptive to evidence that has the potential to aid Microsoft's defense.[17]  Second, even if DG

25  _____

26  [17] Nothing decided by this Court on remand from *Intel* is of any relevance here.  *See Advanced
    Micro Devices v. Intel Corp.*, No. C01-7033, 2004 WL 2282329 (N.D. Cal. Oct. 4, 2004).
27  There, a complainant in a Commission proceeding sought discovery under § 1782 to assist the
    Commission in a possible prosecution of Intel.  The Commission's position in that case – that it
28  did not want or need such assistance to decide whether to exercise its own prosecutorial
    (continued…)

1   Comp's views could be equated with the Commission, the Order makes no effort to determine

2   the receptivity of the courts that hear appeals of the Commission's decisions, including the

3   Court of the First Instance.  Neither the annex nor any other source on which the Magistrate's

4   Order relies suggests that those courts are unreceptive to the evidence that Microsoft seeks.

5   Indeed, Microsoft has demonstrated that those courts will be receptive to the information that it

6   seeks.  (Waelbroeck Decl. ¶ 52.)  Third, as the Massachusetts District Court underlined, DG

7   Comp's annex "emphasizes in Paragraphs 25, 26 and 27 the impropriety of ordering the

8   disclosure of documents which are not relevant to an issued statement of objections.  That

9   submission does not directly address the issue, as it has been narrowed and presented, of

10  whether even the DG Comp [op]poses the disclosure of documents that are relevant to the

11  existing statement of objections concerning interoperability information."  (Mass. Tr. 13.)[18]

12          When Congress amended § 1782 in 1964, it intended to "liberalize[] existing

13  U.S. procedures for assisting foreign and international tribunals and litigants …."  S. Rep. No.

14  1580, 88th Cong. 2d Sess., p. 7.  The Senate report further explained that it was Congress's

15  specific intent to permit use of § 1782 by litigants "before a foreign administrative tribunal or

16  quasi-judicial agency," such as the Commission.  *Id.*; *see also Intel*, 542 U.S. at 248-49.  The

17  plain language of § 1782, in its title and terms, makes clear that "litigants" before foreign

18  _____

19  discretion – was important to the exercise of the district court's discretion not to grant the
    discovery sought.  Here, in contrast, Microsoft is seeking information that will bolster its
20  defenses against imposition of penalties by the Commission.  The Commission confronts
    Microsoft – not as an unwanted ally seeking to assist the prosecution of someone else, as in *Intel*
21  – but rather as a defendant, which having been charged by DG Comp, seeks to persuade the
    Commission not to impose breath-taking daily fines.  (Though it was marked not for citation,
22  both Sun and Oracle cited Judge Ware's opinion on remand from *Intel* in their motions to quash.
    Thus, we address the case only to rebut Sun's and Oracle's arguments.)
23

24  [18] The Massachusetts District Court drew a distinction between documents relating to the
    completeness and usability of Microsoft's Interoperability Information -- the subject of the SO -
25  - and documents relating to the royalty rates that Microsoft charges for access to the
    Interoperability Information -- which is part of the 2004 Decision and the Article 24(1)
26  Decision, but not the SO.  If necessary, Microsoft is willing to accept a similar limitation on the
    subpoenas at issue in this proceeding, without prejudice to its ability to renew its request for
27  documents relating to royalty rates in the event that the Commission adopts a statement of
    objections on that subject.

28

tribunals have the same rights under the statute as the tribunals themselves.  By according the weight that it did to DG Comp's views, the Magistrate's Order defies this Congressional intent in any case arising under a civil law system, where the prosecutor is a part of the judiciary.[19] Indeed, the Magistrate's Order effectively requires a defendant in such a proceeding to obtain the consent of the prosecuting judicial officer before the defendant can turn to § 1782.  If Congress had intended such a "sweeping restriction" on the availability of the statute in cases involving civil law systems, "at a time when it was enacting liberalizing amendments to the statute, it would have included statutory language to that effect."  *Intel*, 542 U.S. at 260 (quotes omitted).

> ### 3.    The Magistrate Erred In Relying On Comity.

The Magistrate's Order suggests that permitting Microsoft to take discovery would place the Court on a "collision course" with the Commission and that as a "matter of comity," the Magistrate was "unwilling to order discovery when doing so will interfere with the European Commission's orderly handling of its own enforcement proceedings."  (Order at 6.) Since "comity" here means deference to the views of the prosecutor, this suffers the same infirmity as the Magistrate's reliance on the views of DG Comp.  Moreover, as noted above, the hearing officer and the Commission have consistently granted Microsoft access to the same type of documents that it is seeking in this proceeding.  (*E.g.,* Burt Decl. Ex. G; Wolson Supp. Decl. Exs. B, C.)  Thus, allowing Microsoft to take discovery of Oracle and Sun will not place the Court on a "collision course" with the Commission.  To the contrary, it will simply allow Microsoft to continue to gather the types of evidence to which the hearing officer has consistently ruled Microsoft is entitled.

---

[19] The Magistrate's Order asserts, without any analysis, that there is no basis to "assume that foreign tribunals will always object to litigants seeking assistance under Section 1782."  (Order at 6.)  But where, as here, the "voice" of the foreign tribunal is the prosecutor, that is the only logical conclusion.  Indeed, the Magistrate's Order gives no reason to believe that a prosecutor in a civil law system would agree to permit the target of the prosecution to obtain evidence intended to weaken the prosecution's case.

Moreover, the Magistrate's application of "comity" ignores the Supreme Court's determination in *Intel* that § 1782 does not include a foreign-discoverability requirement.  *See* 542 U.S. at 260 ("nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction").  The Magistrate's Order states that the Magistrate is "unwilling to order discovery when doing so will interfere with the European Commission's orderly handling of its own enforcement proceedings," (Order at 6) – *i.e.*, in this case obtaining documents that the Commission does not have.  This hardly disrupts "the orderly handling of" the Commission's proceedings.  In any event, Congress clearly intended that litigants could resort to § 1782 without approval of a foreign court, and the Supreme Court therefore concluded that courts should entertain applications for discovery that would not be available to the applicant in the foreign proceeding.

**B.    THE MAGISTRATE IMPROPERLY IGNORED OTHER REASONS TO ORDER DISCOVERY UNDER SECTION 1782.**

In ruling on a § 1782 application, a court should take into the "character of the proceedings underway abroad," *Intel*, 542 U.S. at 264, including all of the circumstances the application arises.  *See Four Pillars Enterprises Co., Ltd. v. Avery Dennison Corp.*, 308 F.3d 1075, 1079 (9th Cir. 2002) (affirming magistrate who had taken into account " a set of special circumstances" in fashioning order).  An applicant under § 1782 may seek discovery that is not available to it in the foreign proceeding.  *See Intel*, 542 U.S. at 260.  Moreover, the statute does not require the applicant to exhaust its possible remedies abroad before filing an application under § 1782.  *See In re Application of Metallgesellschaft AG*, 121 F.2d 77, 79 (2d Cir. 1997).  Where possible, it is "far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright."  *In re Application of Euromepa S.A.*, 51 F.3d 1095, 1101 (2d Cir. 1995).

The Magistrate's Order fails, without any explanation, to consider the narrow circumstances in this case favoring Microsoft's Application, including factors that the Supreme Court suggested for consideration in *Intel*.  In its Opposition to the motions to quash, Microsoft

1  explained that the *Intel* factors were provided by the Court for use in that particular case, where

2  the person seeking discovery was providing unwanted help to the Commission.  To the extent

3  they are applicable here, the *Intel* factors must be viewed in light of the circumstances of this

4  case, in which DG Comp opposes discovery for Microsoft that will give Microsoft a better

5  chance to defend against the charges against it.  The Massachusetts District Court accurately

6  summarized and applied the *Intel* factors as they apply in these circumstances:  "(1) whether the

7  entity from whom discovery is requested is a party in the foreign proceeding[;] (2) the nature of

8  the foreign proceeding and tribunal and the receptivity of the foreign tribunal to the request for

9  discovery[;] (3) whether granting the discovery request is compatible with the purpose of the

10  statute to provide assistance to foreign tribunals and, in return, receive assistance from foreign

11  nations at a later time[; a]nd (4) whether the discovery request is intrusive and unduly

12  burdensome."  (Mass Tr. 6.)

13          <u>First</u>, like Novell, neither Sun nor Oracle is a party to the Commission's

14  proceeding in a way that would subject them to discovery or disclosure requirements.[20]  Thus,

15  if either Sun or Oracle "has relevant documents that are not in the DG Comp's file or OTR file

16  [or the Trustee's file], the Commission cannot order [Sun or Oracle] to produce those

17  documents."  (Mass Tr. 11-12; Waelbroeck Decl. ¶¶ 25-28.)

18          <u>Second</u>, as the Massachusetts District Court explained, ordering third parties

19  such as Sun and Oracle to produce the documents that Microsoft has requested would

20  "effectuate[] the purposes of Section 1782 … by making accessible to Microsoft and potentially

21  to the Commission relevant information that it cannot – the Commission cannot compel the

22  production of …."  (Mass Tr. 15.)  Indeed, Microsoft's application presents the paradigm case

23  for § 1782 discovery:  Microsoft must defend itself before a foreign tribunal that seeks to

---

[20] The fact that Sun and Oracle do business in Europe and are therefore subject to the
Commission's jurisdiction does not mean that they are parties to the Commission's proceeding
against Microsoft in any meaningful sense.  What matters is that the Commission does not have
a procedure to compel the equivalent of third-party discovery available to it.  The same is true of
Sun's status as the original complainant in the Commission's proceeding.

1   impose on it more than $2 million in daily penalties; Microsoft has identified documents in the

2   possession of Sun and Oracle – but not in the possession of the Commission, OTR, or the

3   Trustee – that could aid Microsoft's defense; and the information that Microsoft seeks will be

4   admissible before the Commission and will be considered by the Court of First Instance in the

5   event of an appeal.

6          Third, the discovery that Microsoft seeks could be of great importance to

7   Microsoft's defense against a €2 million per day fine.  The documents that the Commission has

8   provided demonstrate that the Trustee and OTR had numerous meetings and conversations with

9   Sun and Oracle before issuing the expert reports on which the SO relies.  Indeed, Sun undertook

10  what it described as a "huge education process" with the Trustee (Burt Decl. Ex. H), and Oracle

11  explained that it had made a "huge investment" in its efforts to provide information that could

12  be used against Microsoft (id. Ex. K).  Oracle itself unwittingly summed up the importance of

13  this evidence to Microsoft's defense:

14          The important thing to understand is that the Commission has
            relied on both a 'Monitoring Trustee' and *input from Microsoft's*
15          *potential licensees* [Oracle *et al.*] to understand the adequacy of the
            interoperability disclosures … without the in-house technical
16          resources required to determine the adequacy of the disclosures,
            the Commission needed to inform its analysis with input from
17          private parties, technical expert and, since 2005, the Monitoring
            Trustee.
18

19  Oracle Mem. 4 (emphasis added).  It is, of course, precisely this "input" from Oracle and Sun,

20  and its impact upon the Trustee and OTR that Microsoft seeks under § 1782.  As the

21  Massachusetts District Court recognized, such evidence "could be material to the credibility of

22  the DG Comp's contentions and the merits of them," and therefore "could be meaningful to the

23  Commission in deciding the merits of the statement of objections."  (Mass Tr. 12, 13.)

24                              IV.    **CONCLUSION**

25          For the reasons stated herein, the Court should reverse the Magistrate's Order,

26  deny Sun's and Oracle's motions to quash the subpoenas, and order Sun and Oracle to comply

27  with the subpoenas, as narrowed, on an expedited basis.

28

MICROSOFT CORPORATION'S OBJECTIONS TO                                                    20
MAGISTRATE'S ORDER
Case No. 06-80038 JF (PVT)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,


/s/ Joshua D. Wolson
_____
Richard A. Jones
COVINGTON & BURLING
One Front Street
San Francisco, CA  94111
Tel. No.:  (415) 591-6000
Fax No.:  (415) 591-6091
E-mail:  rjones@cov.com

E. Edward Bruce
William D. Iverson
Joshua D. Wolson
COVINGTON & BURLING
1201 Pennsylvania Ave. NW
Washington, DC 20004-2401
Tel. No.:  (202) 662-6000
Fax No.:  (202) 778-5324
E-mail: ebruce@cov.com
          wiverson@cov.com
          jwolson@cov.com

Dated:  April 3, 2006          *Attorneys for Applicant Microsoft Corp.*