UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

No. 1:06-mc-10061-MLW

In re
Application of
MICROSOFT CORPORATION,
Appellant
vs.
NOVELL, INC.,
Respondent

*********

For Hearing Before:
Chief Judge Mark L. Wolf

Excerpt transcript: Judge's Findings

United States District Court
District of Massachusetts (Boston.)
One Courthouse Way
Boston, Massachusetts 02210
Tuesday, March 28, 2006

********

REPORTER: RICHARD H. ROMANOW, RPR
Official Court Reporter
United States District Court
One Courthouse Way, Room 5200, Boston, MA 02210
(617) 737-0370

♀ 2

A P P E A R A N C E S

E. EDWARD BRUCE, ESQ.
JOSHUA D. WOLSON, ESQ.
Covington & Burling
1201 Pennsylvania Avenue NW State Street, Suite 1100

Dockets.Justia.com

Washington, DC 20004-2401
(202) 662-5263
E-mail: Jwolson@cov.com
and
ROBERT J. MULDOON, JR., ESQ.
Sherin and Lodgen, LLP
101 Federal Street
Boston, MA 02110
(617) 646-2000
E-mail: Rjmuldoon@sherin.com
For Appellant

ANTHONY M. FEEHERRY, ESQ.
REBECCA R. HAYES, ESQ.
Goodwin Procter, LLP
Exchange Place
Boston, MA 02109
(617) 570-1390
E-mail: Afeeherry@goodwinprocter.com
rhayes@goodwinprocter.com
For Respondent

♀ 3

P R O C E E D I N G S

(Excerpt begins.)

THE COURT: As I said before we took the break, as this matter has some urgency and I'm emersed in it, I will give you my tentative or qualified decision orally. Which is, as I understand it from experience in the English tradition of -- and I hope that the level of detail, among other things, will indicate that this is not a decision that has been reached casually.

As I said before the break, my tentative decision, subject to possible reconsideration and revision after receiving any supplementation, is to order Novell, Inc. to produce documents in its possession, custody and control which are relevant to the existing statement of objections concerning interoperability, which will be the subject of the March 30, 2006 hearing. I've been educated to understand today, however, that it's not essential that Microsoft receive those documents prior to the March 30 hearing. And therefore, because the nature of the relevant issue has changed and this matter has proceeded on an expedited basis, I think it's most appropriate to give the foreign tribunal an opportunity to address the present issue.

The documents that will need to be produced promptly, if my views do not change, may be redacted to remove any privileged information. I am providing the parties an

♀ 4

opportunity to supplement the submissions concerning receptivity of the foreign tribunal to the discovery subject to the more narrow request that I'm inclined to grant. The DG Comp.'s March 10, 2006 submission primarily addresses the impropriety of ordering discovery that is relevant to an issue as to which no statement of objections has yet been filed.

The current request, which I'm tentatively granting, is for information that is relevant to the existing statement of objections concerning interoperability. That discovery does not, as I understand it, implicate the objections emphasized by the DG Comp. in the March 10, 2006 submission.

Any additional submissions shall be made by April 6, 2006. Novell shall begin now to assemble the documents that will have to be produced. If my tentative views become my

final views, Novell should make appropriate redactions and prepare a privilege log so that the documents can be provided on April 10, 2006 or thereafter, if I do not revise my views.

The reasons for this decision are as follows. This case arises out of the European Commission's investigation of Microsoft's allegedly anticompetitive activities. The European Commission has issued an initial decision against Microsoft holding that it violated the European community law when it did not share interoperability information with its competitors. Microsoft claims that in reaching its decision, the Commission relied on communications with Microsoft's competitors, one of

♀ 5

which is Novell, Inc.

To mount its defense, Microsoft believes it needs documents that constitute or memorialize those communications. Thus, Microsoft initially brought an ex parte 28 United States Code Section 1782 application asking this Court to endorse Microsoft's subpoena to Novell to produce such documents and, indeed, documents that were relevant to issues in addition to interoperability. This Court granted that motion, but specifically authorized Novell to file a motion to quash. It also ordered the parties to meet to try to resolve any disputes. After the parties conferred and were unable to resolve their disputes, Novell did file a motion to quash arguing that Microsoft's Section 1782 application should be denied completely or alternatively should at least be limited to documents relevant to the interoperability issue.

I have conducted today, March 28, 2006, a hearing for almost two hours, which has sharpened my understanding of the issues.

Generally speaking, with regard to 28 United States Code

Section 1782, this Court has the authority to order discovery in connection with a proceeding before a foreign tribunal if it determines that the request is made by an interested party for material to be used in proceedings in a foreign tribunal and if the party from whom the request is made resides in the district in which the Court sits. The Supreme Court so instructed in

♀ 6

Intel Corporation v. Advanced Micro Devises, Inc., 542 U.S. 241, a 2004 decision.

As Intel also teaches, if the Court determines that it has the authority to grant the Section 1782 application, it must decide whether to exercise its discretion to do so. The exercise of that discretion should be guided by four factors. (1) whether the entity from whom discovery is requested is a party in the foreign proceeding. (2) the nature of the foreign proceeding and tribunal and the receptivity of the foreign tribunal to the request for discovery. (3) whether granting the discovery request is compatible with the purpose of the statute to provide assistance to foreign tribunals and, in return, receive assistance from foreign nations at a later time. And (4) whether the discovery request is intrusive and unduly burdensome.

The pertinent facts up to the time of the Section 1782 request were essentially not in dispute. On March 24, 2004 the European Commission, or "the Commission," decided that Microsoft infringed Article 82 of the EC Treaty and Article 54 of the EEA agreement, both of which relate to the abuse of a dominant market position, by refusing to disclose certain interoperability information to vendors of work group server operating systems' products. You may refer to that as the 2004 decision. Microsoft has appealed this decision in the Court of

First Instance, or CFI, and has scheduled a five-day hearing on

that appeal in April of 2006.

On November 10, 2005, the Commission decided that Microsoft had not complied with the 2004 decision by failing to provide adequate interoperability information to prospective licensees. That is sometimes referred to by the parties as the Article 24(1) decision. To reach its decision, the Commission relied on two reports from the OTR group, an outside consulting firm retained by the Commission as independent experts as well as comments from Microsoft's competitors, including Novell. The Commission instructed Microsoft to comply with its decision by December 15th, 2005 or face a daily fine of 2 million Euros.

On December 21, 2005, the Commission issued a statement of objections, or "SO," charging that Microsoft had not complied with the Article 24(1) decision. The statement of objections was based on two reports by a monitoring trustee, who was appointed by the Commission to measure Microsoft's compliance with two OTR reports relied upon in the Article 24(1) decision and comments received from Microsoft's competitors, including Novell. When appointed, the monitoring trustee was instructed to establish procedural safeguards to protect Microsoft's due process rights and ensure transparent communications between the trustee and others.

The trustee was also directed to establish a procedure for third parties to lodge complaints concerning Microsoft's

compliance with the 2004 decision. The trustee was told to send a copy of these complaints to the Commission so that they would be included or could be included in the Commission file

and to deliver a nonconfidential version of any complaint to Microsoft. Microsoft asserts that the trustee did not fully comply with this order.

The statement of objections was accompanied by a list of documents in the Commission's file which Microsoft had a right, under EU regulations, to examine. This file included a correspondence between Microsoft and the Commission, the reports from OTR and the monitoring trustee, and formal requests for information sent by the Commission to Novell, Sun Microsystems, IBM and Oracle and each company's response. However, the index did not include any other communications with Novell or any other company, nor did the Commission say it was withholding such documents.

On December 24, 2005, Microsoft wrote to the Commission Hearing Officer that the file index wasn't complete. On January 13th, 2006, the Hearing Officer instructed the Commission to provide a list of documents the Commission had withheld. On January 20, 2006, the Commission provided a list showing that it had withheld, as confidential, more than 40 documents of correspondence between the Commission and Microsoft's competitors, including Novell.

On January 30, 2006, Microsoft asked the Hearing Officer

♀ 9

for access to the Commission's correspondence with Novell, Sun, Oracle and IBM. On February 8, 2006, the Hearing Officer directed the Commission to provide copies of its communications with third parties, including Novell. Initially, the Commission had not provided these documents claiming they were confidential, but the Hearing Officer ruled that the confidentiality had been waived. The Hearing Officer also stated that the correspondence OTR and the monitoring trustee

have had with third parties must be produced by the Commission only if such a document was in the Commission's file. The Commission complied with the Hearing Officer's directive on February 13, 2006. There was a scheduled hearing before the Commission on March 30, 2006 concerning the statement of objections.

Microsoft's initial subpoena to Novell was quite broad. It has, however, since narrowed its request. More specifically, the subpoena, as described today, is deemed to be for documents that constitute communications between Novell, the Commission, the Trustee, OTR, or any other third party known or believed by Novell to have been retained by the Commission relating to inoperability information, as defined in the 2004 decision, and is for documents that memorialize any such oral communications relating to inoperability information.

Microsoft is not now seeking documents that are relevant

only to issues not in the current statement of objections, such as the possible failure to comply with Articles 5A or 5C of the 2004 decision, the Article 24(1) decision, generally. Microsoft has also abandoned its request for a prompt deposition of Novell. Microsoft has made other Section 1782 requests to competitors that are pending in District Courts in which those competitors reside.

As I understand it, when the European Commission investigates a competition complaint, it does so through the Director or General for Competition, or DG Comp, of the European Commission. The DG Comp is part of the Commission -- is the part of the Commission that is charged with investigating complaints of anticompetitive activity. During

its investigation, the DG Comp reviews many documents. The Commission file consists of all the documents that have been obtained by the DG Comp during the investigation that it deems were relevant to the investigation. The defendants in the proceedings before the Commission gain access to this file once the Commission has filed a statement of objections, with the exception of internal documents, business secrets and other confidential information.

The Commission is allowed to exclude from the file evidence which has no relation to the allegations of fact and law in the statement of objections. If the defendant believes that the Commission's services have erroneously withheld

♀ 11

documents, it may make a request for a decision of the Hearing Officer who is responsible for guarding the defendant's rights in the Commission proceedings. The decision of the Hearing Officer can be reviewed by the Court of First Instance, the CFI.

28 United States Code, Section 1782A, states, in pertinent part, that the District Court in which a person resides may order him to produce a document for use in a proceeding in a foreign or international tribunal. The Supreme Court has recently addressed 28 United States Code Section 1782 as it relates to the European Commission in the Intel case.

It is undisputed that Microsoft is an interested party. It is a party to the Commission proceeding. It is also undisputed that Novell resides in the District of Massachusetts. Therefore, this Court is authorized, but not required, to order the requested discovery. Any discovery order is subject to any applicable privilege including, but not limited to, the attorney/client privilege and the work/product

privilege.

I explained earlier the four factors the Supreme Court described in the Intel case to be considered in deciding a Section 1782 request. The first, as I said, is whether the entity from whom discovery is requested is a party in the foreign proceeding. Novell is a participant or party in the Commission proceeding. If Novell has relevant documents that

♀ 

are not in the DG Comp's file or OTR file, the Commission cannot order Novell to produce those documents.

For example, there may be nonprivileged Novell documents memorializing oral communications that are not reflected in the Commission's file. As I said in the course of the argument, hypothetically, such internal memoranda of oral communications could be material to the credibility of the DG Comp's contentions and the merits of them.

To take an extreme and hypothetical example to illustrate this point, without suggesting any impropriety in this case, if a competitor of Microsoft had paid a bribe to the DG Comp to influence the DG Comp to aggressively assert that Microsoft was not in compliance with the order, that memorandum would contain relevant, and I would think, material information not likely to be in the Commission's files. In addition, there would be information that the Commission could not get access to through its own processes because Novell is not a party or participant in the Commission proceedings.

The second factor to be considered is the nature of the foreign proceeding and tribunal and the receptivity of the foreign tribunal to the requested discovery. Documents and information that were relevant to the existing statement of objections concerning interoperability information could

potentially be helpful to the foreign tribunal. Evidence regarding the extent, if any, to which the monitoring trustee

♀ 13

or OTR were influenced by Novell, which arguably is a competitor of Microsoft, has a bias could be meaningful to the Commission in deciding the merits of the statement of objections.

The March 10, 2006 DG Comp submission opposing the then existing request for documents emphasizes in Paragraphs 25, 26 and 27 the impropriety of ordering the disclosure of documents which are not relevant to an issued statement of objections. That submission does not directly address the issue, as it has been narrowed and presented, of whether even the DG Comp imposes the disclosure of documents that are relevant to the existing statement of objections concerning interoperability information. Moreover, I note that the DG Comp's views are not necessarily the views of the European Commission.

In Intel, 542 U.S. at 254, the Supreme Court wrote that the DG Competition's overriding responsibility was to conduct investigations into alleged violations of the European union's competition prescription. In essence, the Supreme Court has described the DG Comp as a prosecutor rather than as a neutral judicial officer.

While Novell analogizes this case to Intel and to other cases, the Schmitz and In re Winkler, I find that those analogies are not apt. In both Schmitz and Winkler, the German government opposed the request.

In Schmitz, the German government was concerned that

♀ 14

granting the discovery request would undermine the ongoing

German investigation. In In re Winkler, the German government was concerned that granting the discovery request would undermine the final decision by a German court. In those two cases, the foreign government authoritatively articulated very significant sovereignty concerns.

In Intel, the discovery request was made by a complainant who was not a party to the European action with the ultimate goal of helping the Commission. And it was the Commission itself, I believe, that authoritatively expressed its desire that the discovery request not be granted. Thus far, at least, unlike Intel, the Commission, as opposed to the prosecuting arm of the operation of DG Comp, has not expressed a view.

I have considered the fact that Microsoft can and indeed has asked the Hearing Officer for documents. Indeed, the Hearing Officer has already ordered the disclosure of some documents that were not originally produced. However, as I noted earlier, the Hearing Officer and the Commission have no power to order Novell to disclose relevant documents in its file because Novell was not a party to the Commission proceedings. Therefore, ordering the disclosure of Novell documents would not circumvent Commission procedures because the Commission has no procedures for obtaining documents that are exclusively in the possession or control of Novell.

♀ 15

With regard to the third statutory -- I'm sorry, the third Intel factor, I find that ordering the narrowly-tailored discovery would not be unduly intrusive or burdensome. Novell has explained today that it has very few documents that are relevant to the interoperability information issue.

Finally, with regard to effectuating the purposes of

Section 1782, I find that, on the present record, ordering Novell to produce documents relevant to the interoperability issue would assist the foreign tribunal by making accessible to Microsoft and potentially to the Commission relevant information that it cannot -- the Commission cannot compel the production of the Novell documents.

So for those reasons, unless I revise my view based on information that I receive next week, I will require Novell to produce the documents. I do want to -- I will write a short order that memorializes the conclusion of this, but doesn't describe the reasons. I would like to reiterate what I said before the break, however. I am not presuming to order the European Commission to do anything. What I am doing is offering an opportunity for the Commission, the DG Comp, the Hearing Officer or anybody else who might feel qualified to address authoritatively, or arguably authoritatively, the position of the European Commission on the revised narrower request, an opportunity to do so. But it's entirely up to the Commission and anybody who might seek to act on its behalf to

♀ 16

decide whether to provide something that will supplement the record.

Is there a question?

MR. FEEHERRY: I hope a helpful suggestion to your Honor. Because we need to respond to a subpoena, what I would suggest to the Court is that you would annex or attach to your order the modified subpoena as served, as delivered to Novell, which we understand would be further modified to delete references to Articles 5A or 5C of the 2004 decision, the Article 24(1) decision, that that language there would be stricken. So the reference would be to the SO or -- in

Requests 1 through 4, it relates specifically to interoperability or interoperability information.

THE COURT: Well, I guess I'd say the following. (1) I may order you to confer, but essentially a subpoena is a court order. And if I give you an order, that's what you would be responding to. I would be happy if you could reach some agreement, but actually I think I issued an order that's more narrow than the subpoena, as it's written, because -- but in any event, you've heard my order. You're going to have the transcript. I'd be quite pleased if you agree on a subpoena that implements my decision.

MR. FEEHERRY: If I can test your patience, your Honor? As the issue really has to do with the obvious communications with trustee or communications with the

♀ 17

Commission, I think your order is absolutely clear. As to a communication with some third party, the subpoena was narrowed to indicate any documents which summarize any communication between Novell and any third party known or believed by you to have been retained by the Commission with respect to the subject matter of the request. And that's the language that we -- at least would be comfortable with being able to hand back to Novell to ask "Are there any such documents?" We're simply working with the language of the modified subpoena.

MR. BRUCE: You're not changing it?

MR. FEEHERRY: We're not changing that. The only place we would change would be to delete reference to the decision, the Article 24(1) proceeding, so that we are down to the issue of the SO and interoperability.

MR. BRUCE: On that, your Honor, we would like to meet and confer because we need to study -- we know what you're

driving at and I think we're not going to have a problem coming to closure, but --

THE COURT: Fine. You should file that by noon tomorrow. And just to point something out. That's fine, because you've studied this language, but I think if you look at the transcript, I talk about documents that contain or constitute communications or summarize oral communications. It's actually narrower, but this is fine. Use this subpoena. I think as you just described it, it sounded to me consistent

with what I intend.

As I say, I'm very busy on other things, so you don't want to come back to me with any disputes. You really don't. Okay?

MR. BRUCE: No, and I'm almost sure we won't. The noon tomorrow may be difficult because we have to consult with people in Brussels, for example.

THE COURT: No, you don't have to consult with anybody in Brussels. I've issued an order.

MR. BRUCE: No, no, no, I'm sorry, your Honor. I'm talking about the way that he wants to revise the subpoena. That's what I meant.

THE COURT: I mean --

MR. FEEHERRY: If your Honor would give us an extra day to accommodate --

THE COURT: Well, I thought you wanted it attached to my order?

MR. FEEHERRY: Oh, no, I'm not asking for that.

THE COURT: Fine. You've got until noon on Friday to file it with me. Actually, tomorrow is Wednesday. You'll have until noon on Thursday.

MR. BRUCE: Thank you.

MR. FEEHERRY: One last question, your Honor. I understand your order is not yet final from your standpoint, and hence I will be asked the question about appealability. As

your Honor understands --

THE COURT: It's not appealable.

MR. FEEHERRY: And we assume that it won't become appealable, I guess, until -- well --

THE COURT: My understanding, subject to being educated otherwise by the Court of Appeals is, that I haven't decided this matter, therefore it's not appealable. I've told you what I would do on the present record, however, the record is not complete. When I get any submissions that are made next week, I will consider them and I will either write that I've considered them, they don't cause me to alter my views, therefore Novell shall produce, or I will write that I've considered them, they do cause me to revise my views for the following reasons, and therefore the motion to quash is allowed. And I would assume that it would be after that that the disappointed party would be authorized to appeal. However, I'm not permitted to give legal advice and I don't have to study when things are ripe for appeal because I just decide them and then they're gone.

MR. FEEHERRY: Your Honor, and the reason, of course, is we're assuming you will then issue something final on or after the 6th, when you will receive these materials, because the traditional process by which this issue could be appealed by either party -- although I suppose if it's an order to produce, it would require a motion for a stay in the first

instance before your Honor, and you have written in this area.

THE COURT: Canterbury Liquors probably most thoughtfully, but that's a long time ago.

MR. FEEHERRY: You slightly modified the reasonableness of success on the merits on appeal, I think, in that decision, arguing persuasively that perhaps the District Court might not be the first one to rule on that.

In any event, that's the reason for my request. So that if a party wished to take an appeal, depending on what happens next week, one of the things that would happen in this court before the 10th would be some sort of a motion for a stay. Thank you, your Honor.

THE COURT: That's fine. And if we get to that point, I think it will be important that you each tell me what you think about the last date on which Microsoft could supplement the record. Obviously if the documents are produced, there's a form of irreparable harm to Novell. On the other hand, if delay would mean that Microsoft couldn't get the documents in the record, that may weigh against the stay. But you told me it was very few documents and if it's only what the Commission already has, then what's the fuss?

Is there anything further in this matter for today? All right. Thank you very much. The Court is in recess.

(Ends 1:40 p.m.)

♀ 21

C E R T I F I C A T E

I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do

hereby certify that the foregoing record is a true and accurate transcription of my stenographic notes, before Chief Judge Mark L. Wolf, on Tuesday, March 28, 2006, to the best of my skill and ability.

______________________________
RICHARD H. ROMANOW

♀