

1  LATHAM & WATKINS LLP
       Daniel M. Wall (Bar No. 102580)
2      Christopher S. Yates (Bar No. 161273)
   505 Montgomery Street, Suite 2000
3  San Francisco, California 94111-2562
   Telephone:  (415) 391-0600
4  Facsimile:  (415) 395-8095
   Email ID:    Dan.Wall@lw.com
5                    Chris.Yates@lw.com

6  Attorneys for ORACLE CORPORATION,
   CLIFFORD CHANCE LLP, DANIEL HARRIS
7  and RONALD ALEPIN

8

                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                        SAN JOSE DIVISION
11

12  *In re*                              CASE NO. 06-80038 JF (PVT)

13  Application of                       **RESPONSE TO MICROSOFT
                                         CORPORATION'S OBJECTIONS TO
14  MICROSOFT CORPORATION,               MAGISTRATE JUDGE TRUMBULL'S
                                         ORDER QUASHING SUBPOENAS TO
15            Applicant.                 ORACLE CORPORATION, CLIFFORD
                                         CHANCE LLP, DANIEL HARRIS AND
16                                       RONALD ALEPIN**

17                                       Date:    To be set
                                         Time:    To be set
18                                       Place:   To be set
                                         Before:  Hon. Jeremy Fogel
19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Dockets.Justia.com

# TABLE OF CONTENTS

PAGE

I.      INTRODUCTION ........................................................................................................... 1

II.     BACKGROUND ............................................................................................................ 5

        A.      The March 2004 Decision ................................................................................. 5

        B.      Efforts to Obtain Microsoft's Compliance ...................................................... 6

        C.      The Article 24 Proceedings and Microsoft's Attacks on the
                Commission ...................................................................................................... 9

        D.      Microsoft's Section 1782 Subpoenas and Their Relation to File
                Access ............................................................................................................ 10

        E.      The Commission's and DG-Comp's Position.................................................. 11

        F.      Magistrate Judge Trumbull's Order Quashing the Subpoenas ......................... 14

        G.      Proceedings in other District Courts .............................................................. 14

III.    ARGUMENT ............................................................................................................... 15

        A.      Standard of Review......................................................................................... 15

        B.      Magistrate Judge Trumbull Acted Well Within her Discretion in
                Denying Microsoft U.S. Discovery ................................................................ 17

                1.      Contrary to its Assertions, Microsoft Does Not Need U.S.
                        Judicial Assistance to Obtain Documents the Commission
                        Cannot Acquire. ................................................................................. 18

                2.      The Subpoenas Constitute An Improper Effort To
                        Circumvent The Commission's Decisions Regarding
                        Appropriate Discovery........................................................................ 20

                3.      The Commission Does Not Seek This Court's Assistance
                        And Opposes Microsoft's Request For Discovery ................................ 21

                4.      The Minimal Relevance of the Requested Discovery
                        Weighs Against U.S. Judicial Assistance. ........................................... 22

IV.     CONCLUSION............................................................................................................. 24

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Advanced Micro Devices, Inc. v. Intel Corp.,*
  2004 U.S. Dist. LEXIS 21437 (N.D. Cal., Oct. 4, 2004) ................................................ 16, 18

*In re Application of Asta Medica, S.A.,*
  981 F.2d 1 (1st  Cir. 1992) ................................................................................................ 21

*In Re: Application of Geert Duizendstraal,*
  1997 U.S. Dist. LEXIS 16506 (N.D. Tex. 1997) ................................................................ 16

*In re: Commissoner's Subpoenas,*
  325 F.3d 1287 (11th Cir. 2003) ......................................................................................... 16

*Intel Corp. v. Advanced Micro Devices, Inc.,*
  542 U.S. 241 (2004) ................................................................................................... 3, 4, 12

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP,*
  376 F.3d 79 (2d Cir. 2004 ................................................................................................... 22

*United States v. Koen,*
  982 F.2d 1101 (7th Cir. 1992) ........................................................... 13, 16, 17, 19

### FEDERAL STATUTES

28 U.S.C. § 1782 ............................................................................................................... *passim*

Federal Rules of Civil Procedure 72 ....................................................................................... 16

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

# I.    INTRODUCTION

Microsoft Corporation is before the Court appealing a decision by Magistrate Judge Trumbull denying Microsoft U.S. "judicial assistance" under 28 U.S.C. § 1782, a statute which gives U.S. courts the discretion to provide discovery rights to litigants in foreign proceedings.  Microsoft seeks discovery to defend what is, in substance, a European version of a contempt proceeding:  the Commission of the European Communities ("the Commission") has charged Microsoft with having failed to comply with a remedial order in an abuse of dominance case.

Microsoft announced on March 2, 2006 that it would be filing Section 1782 applications to obtain directly from four competitors documents that, it alleged, the Commission had wrongfully denied it.  Horacio Gutierrez, a Microsoft Associate General Counsel based in Europe, issued a statement to the press that explained the applications as an end-run on the Commission:  "Our repeated requests to the European Commission for full and fair file access *have not been successful, so we are now turning to the U.S. courts for assistance." See* Declaration of Christopher S. Yates ("Yates Decl.") Ex. 18, emphasis added.  In *ex parte* applications under Section 1782 filed in this and other courts, Microsoft asserted the documents it requested would permit it to show that the Commission, by withholding critical evidence, had violated Microsoft's "rights of defense." *See Ex Parte Application and Memorandum in Support of Application for Order of Discovery Pursuant to 28 U.S.C. § 1782* (Mar. 3, 2006) at 9-10.

What a difference six weeks makes.  Microsoft has been retreating from the "rights of defense" rationale for some time, but reading Microsoft's objections to Magistrate Judge Trumbull's March 29, 2006 Order, one would get the impression that Microsoft never had any issues with the Commission's "file access" rulings.  Today, Microsoft claims the only point to these proceedings is to help it get impeachment evidence that Microsoft simply can't acquire due to limitations on information gathering under European law. *See, e.g., Microsoft Objections* at 9 (although Microsoft has been given all documents in the file, "the Commission, the Trustee, and OTR apparently do not have documents to tell the rest of the story").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

1    With all due respect, this is patent revisionism.  The reason that Magistrate Judge

2  Trumbull's Order finds that Microsoft's subpoenas "constitute an attempt to circumvent specific

3  restrictions that the European Commission has placed on Microsoft's right to obtain certain kinds

4  of information" (Order at 5) is because, last month, Microsoft admitted that was their purpose.

5  The reason that Microsoft can no longer complain about the Commission's file access rulings is

6  that, since its Section 1782 application was filed, the Commission has given Microsoft

7  *everything it asked for* in terms of file access.  *See Objections* at 7 ("as of March 28, the hearing

8  officer and the Commission had agreed to provide Microsoft all documents … that reflected

9  Sun's or Oracle's communications with the Commission, OTR, or the Trustee").  Thus Microsoft

10  stands before this Court in a very peculiar position:

11

12    • Its admitted end-run around the Commission is now pointless because it has been

        given everything a litigant in a Commission proceeding could possibly get.

13

14    • It no longer has any "rights of defense" rationale for seeking U.S. discovery.

15    In short, the original rationale for these subpoenas is entirely moot.

16    Microsoft nevertheless persists with its quest to obtain U.S. discovery.  To do so it

17  has tried to recast the issues around supposed gaps in European procedures, which it contends

18  U.S. courts should fill.  Microsoft's arguments are groundless, for four principle reasons.

19    *First,* the major legal premise of Microsoft's Objections, as well as the primary

20  justification for the subpoenas, is that the European Commission's information gathering

21  procedures "offer no way for Microsoft or the Commission to compel the production of …

22  documents" that Sun and Oracle may have, but have not already provided to the Commission.

23  *Objections* at 12; *see also id.* at 19 ("neither Sun nor Oracle is a party to the Commission's

24  proceeding in a way that would subject them to discovery or disclosure requirements").  This is

25  unambiguously false.  The Commission could get *any* of the documents at issue by serving

26  "Article 18" letters on the parties Microsoft has subpoenaed – a fact which, despite repeated

27  claims to the contrary, Microsoft has now been forced to admit.  *See* Microsoft Corporation's

28  Reply to Response of Novell, Inc. (D. Mass. April 12, 2006) at 1:  "The response filed by Novell

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

1   on April 11 points out that the European Commission does have the authority to request

2   documents from third parties such as Novell under Article 18 of Regulation 1/2003.  Novell is

3   correct."  (Exhibit C to the Supplemental Declaration of Christopher S. Yates ("Supp. Yates

4   Decl.").)

5           Microsoft's earlier misrepresentation about the Commission's powers caused

6   Judge Wolf in of the District of Massachusetts to issue a tentative ruling in Microsoft's favor

7   with respect to subpoenas directed at Novell, Inc.  Judge Wolf's comments then became the

8   foundation of this appeal.  Today (April 17, 2006), Judge Wolf issued an order quashing

9   Microsoft's subpoenas for substantially the same reasons that Magistrate Judge Trumbull found

10  persuasive.  Supp. Yates Decl. Ex. A.

11          *Second,* as a matter of comity it is inappropriate for U.S. courts to "supplement"

12  the European Commission's information-gathering procedures simply because litigants in the

13  U.S. adversarial system typically have greater discovery rights.  This was a key factor for

14  Magistrate Judge Trumbull, whose Order reveals a keen appreciation for the European civil law

15  system and the comity doctrine.  See Order at 4-5, 6.  It is also important to the European

16  Commission itself, which today filed a motion to intervene in these proceedings as an *amicus,*

17  and which has submitted a brief in opposition to Microsoft's objections.  Of course, neither the

18  views of the Commission nor the comity doctrine are dispositive by themselves, but under the

19  *Intel* decision they unquestionably matter.  *Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S.*

20  *241, 264-65 (2004)*, 542 U.S. at 264-65 ( the factors guiding the exercise of the district court's

21  discretion include "the receptivity of the foreign government or the court or agency abroad to

22  U.S. federal-court judicial assistance" and "whether the § 1782(a) request conceals an attempt to

23  circumvent foreign proof-gathering restrictions or other policies of a foreign country").  Judge

24  Wolf found the Commission's views persuasive (Supp. Yates Decl. Ex. A, pp. 8-11), and

25  Magistrate Judge Trumbull was entirely within her rights to give them the weight she did.

26          *Third,* the discovery Microsoft is seeking does not "go[] to the heart of

27  Microsoft's defense in [the pending] proceeding before the European Commission."  *Objections*

28  at 1.  Far from it.  In fact, now that Microsoft has withdrawn the "rights of defense" argument

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

1  that featured so prominently a month ago, its only theory of relevance is "impeachment."  It

2  suggests that the Commission or the Court of First Instance might be less impressed by a

3  Monitoring Trustee's conclusions that Microsoft has not complied with the pertinent remedial

4  order if they knew what technical input he received from Microsoft's competitors.

5         That is not "the heart" of anything.  The sole issue in the pending proceeding to

6  which this application relates (known as an "Article 24" proceeding) is technical and objective:

7  whether or not Microsoft's interoperability disclosures are full and complete.  No amount of

8  "impeachment" evidence can save Microsoft if its disclosures fail objective scrutiny.

9  Furthermore, it is no secret that the Monitoring Trustee's views on this issue were based, in part,

10  on input from Microsoft's competitors.  That was always the Commission's plan, and Microsoft

11  has received extensive documentation and written reports as to what that input was.  This

12  allowed Microsoft to present its "impeachment" theory at the oral hearing in the Article 24

13  proceeding on March 30 and 31 – and, for that matter, in its briefs here.  *See* Declaration of

14  Daniel M. Wall, ¶¶ 2-3; *Objections* at 7-10.   Microsoft's interest in acquiring supplemental

15  evidence on a tertiary issue does not come close to justifying this application.

16         *Fourth* and finally, Microsoft's Objections – which are in the nature of an

17  appeal – assert that Magistrate Judge Trumbull's Order "rests entirely on matters of law:  the

18  proper interpretation of § 1782 and the application of the Supreme Court's decision in *Intel*."

19  *Objections* at 1 n.1.  That is clearly false.  *Intel* squarely holds that "a district court is not

20  required to grant a § 1782(a) discovery application simply because it has the authority to do so."

21  542 U.S. at 264.  In a sense, the entire point of the decision is that "the exercise of district-court

22  discretion," not categorical rules, should govern Section 1782 applications.  *Id.* at 263 n.15 &

23  264-65.  Prior to Magistrate Judge Trumbull's ruling, Microsoft acknowledged this and explicitly

24  appealed to the Court's "broad discretion" to provide assistance.  *Ex Parte Application* at 8.

25  Magistrate Judge Trumbull considered each of the *Intel* factors, weighed them, and exercised her

26  discretion against providing assistance.  There is nothing about that ruling that is even arguably

27  an error of law.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

1      No matter whether the Court reviews Microsoft's objections under the clearly

2  erroneous standard typically applied to discovery matters and other discretionary decisions, or

3  the *de novo* standard typically applied to dispositive motions and other rulings of law,

4  Microsoft's objections should be overruled.

5  **II.    BACKGROUND**

6      For many years, Microsoft has been in litigation with The Directorate General-

7  Competition of the Commission of the European Communities ("DG-Comp"), which is Europe's

8  principal antitrust agency, over business practices that have been found to violate Europe's

9  competition laws.  Most recently, Microsoft has been embroiled in a dispute concerning its

10  compliance with a remedial order in a case where it was found to have infringed Article 82 of the

11  EC Treaty (Europe's anti-monopolization law) by refusing to disclose essential interoperability

12  information to competing vendors of workgroup operating system products.  We begin by

13  explaining the background to this dispute.

14  **A.    The March 2004 Decision**

15      On March 24, 2004, the European Commission concluded an exhaustive

16  investigation into whether Microsoft had deliberately and unlawfully restricted interoperability

17  between personal computers running Microsoft's Windows operating system and non-Microsoft

18  work group servers.  The Commission issued a decision (known as "the March 2004 decision")

19  finding that indeed Microsoft had done so, and that this conduct had enabled Microsoft, which

20  for many years has monopolized the PC operating systems market, to acquire a second dominant

21  position in the market for work group server operating systems.  *See* Yates Decl. ¶ 3, Ex. 2.  The

22  Commission acted on a complaint filed by Sun Microsystems, but found that other vendors of

23  work group operating systems had likewise been refused interoperability information, and that

24  Microsoft's non-disclosures were part of a broader strategy designed to suppress competition.

25  The Commission's Decision quoted from a February 1997 speech by Bill Gates to Microsoft's

26  sales force that named Sun and Oracle as targets of a "lock-out" strategy:  "What we are trying to

27  do is use our server control to do new protocols and lock out Sun and Oracle specifically...."  *Id.*

28  at p. 207.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

1    In defending against the Commission's charges, Microsoft advanced numerous

2    technical arguments. Among other things, it argued that it had in fact made sufficient

3    interoperability information available to its competitors; that any alleged deficiencies could be

4    addressed through "reverse-engineering" efforts; and that some alleged deficiencies were

5    unrelated to interoperability. In accordance with its standard practice and the necessities of this

6    case, DG-Comp and ultimately the Commission considered input from other industry

7    participants – Microsoft's actual and potential competitors among them – while evaluating these

8    complex and technically nuanced arguments. The issue, after all, was the sufficiency of

9    information Microsoft had made available to facilitate third party efforts to design interoperable

10   products. It would have been all but impossible for the Commission to evaluate that issue

11   without the views of those who had attempted to build, or at least understood the challenges of

12   building, such products.

13   In the March 2004 Decision, the Commission imposed a record fine on Microsoft

14   equivalent to $613 million and issued an injunction which, among other things, required

15   Microsoft to disclose complete and accurate interface documentation sufficient to allow non-

16   Microsoft work group servers to achieve full interoperability with Windows PCs and servers.

17   **B.    Efforts to Obtain Microsoft's Compliance**

18   The Commission's efforts to assure Microsoft's compliance with the March 2004

19   Decision already make up a long history.[1] For present purposes, the important thing to

20   understand is that the Commission has relied on both a "Monitoring Trustee" and input from

21   Microsoft's potential licensees to understand the adequacy of the interoperability disclosures.

22   On the one hand, the Commission announced publicly in June 2005 that it would conduct a so-

23   called "market test" of Microsoft's compliance, meaning a program whereby potential licensees

24   would evaluate and report to the Commission on the adequacy of the disclosures. *See* Yates

25   Decl. Ex. 4. Four companies – Oracle, Sun, IBM and Novell – agreed to review the disclosures

26   under the terms of Evaluation Licenses. DG-Comp then issued compulsory "Article 18 letters"

27   

28   [1]    Those efforts are summarized in Commission press releases. Yates Decl. Exs. 3-5, 7.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

1   to each company, which obligated them to submit a detailed technical assessment of the

2   disclosures. Oracle, assisted by Clifford Chance and Ronald Alepin, did so. Microsoft, as a

3   party to the proceedings, received copies of the companies' responses to these Article 18 letters.

4           At the same time, the Commission was proceeding with a program envisioned by

5   the March 2004 Decision to appoint a "Monitoring Trustee" whose job would be to supervise

6   proactively Microsoft's compliance with the decree. Paragraph 1046 of the March 2004

7   Decision states:

8           As regards interoperability, the Monitoring Trustee's responsibility
            should, in particular, involve assessing whether the information
9           made available by Microsoft is complete and accurate, whether the
            terms under which Microsoft makes the specifications available
10          and allows the use thereof are reasonable and nondiscriminatory
            and whether the ongoing disclosures are made in a timely manner.

11

12  Yates Decl. Ex. 2. Microsoft was given the responsibility to nominate candidates to the

13  Commission for the role of Monitoring Trustee. In October 2005 Professor Neil Barrett, a

14  computer scientist from the U.K. and one of four Microsoft nominees, was appointed to the

15  position. Yates Decl. Ex. 1, ¶ 14.

16          The Commission has encouraged the Monitoring Trustee and potential licensees

17  like Oracle to discuss the adequacy of Microsoft's disclosures. Microsoft takes great umbrage at

18  this, but there is nothing improper about it. The Monitoring Trustee is an agent of the

19  Commission, not some kind of quasi-judicial officer subject to limitations on *ex parte*

20  communications. Professor Barrett has wide discretion as to how he evaluates Microsoft's

21  compliance, and if, on his own or in consultation with DG-Comp, he wishes to speak to those

22  who have evaluated Microsoft's disclosures before speaking to Microsoft, or *vice versa,* that is

23  his choice. The Commission has stated repeatedly that there is nothing inappropriate about the

24  Trustee's contacts with companies, like Oracle, whose willingness to consider licensing the

25  protocols and build products based on Microsoft's disclosures is the key to effective relief under

26  the March 2004 Decision:

27          Paragraph 30 of the [Trustee] Decision, reiterating paragraph 1045
            of the March 2004 Decision, provides that, "the Trustee should not
28          only be reactive, but should play a proactive role in the monitoring
            of Microsoft's compliance". Articles 3.1.d and 5.6 of the Decision

1    make clear that the Trustee, under the supervision of the
     Commission, has to monitor Microsoft's compliance on his own
2    initiative. In order to fulfill that proactive role and to form his own,
     impartial, view on complex technical questions, the Trustee must
3    be in a position to gather views on compliance issues through
     contacts not only with Microsoft engineers, but also with potential
4    beneficiaries of the remedy. *The Trustee's contacts with such*
     *potential beneficiaries are therefore part of his obligations under*
5    *the Trustee Decision and not in any way a form of inappropriate*
     *collusion as has been suggested.*

6

7    Yates Decl. Ex. 5 (emphasis added).

8            Importantly, the Trustee Decision expressly anticipates that the Trustee will

9    receive "Confidential Information" in the course of his duties and provides that such may not be

10   disclosed to anyone other than the Commission. (Trustee Decision, ¶ 5.1.)  This promotes an

11   environment of free exchange.  Any confidential information the Trustee transmits to the

12   Commission becomes part of "the file," and thus becomes subject to the Commission's rules and

13   procedures for determining Microsoft's access to it.  Information the Trustee receives from third

14   parties but does not transmit to the Commission does not become part of the file and is not

15   discoverable.  This is not an oversight or gap in procedure; it is by design.  Order at 5.

16           Microsoft's current predicament is due to the gross inadequacy of its technical

17   disclosures, which became evident to the Commission last Fall.  In part, this was due to

18   Professor Barrett's evaluation of the protocols.  Professor Barrett has issued two reports on the

19   adequacy of Microsoft's disclosures and a response to Microsoft's comments on his reports.  He

20   has been extremely critical of Microsoft's compliance, finding among other things:

21       • "[The documentation is] … not fit for use by developers, totally insufficient

22           and inaccurate for the purpose it is intended…."

23       • "[A]ny programmer or programming team seeking to use the Technical

24           Documentation for a real development exercise would be wholly and

25           completely unable to proceed on the basis of the documentation.  The

26           Technical Documentation is therefore totally unfit at this stage for its intended

27           purpose."

28       • "[T]he documentation appears to be fundamentally flawed in its conception,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

1    and in its level of explanation and detail…. Overall, the process of using the

2    documentation is an absolutely frustrating, time-consuming and ultimately

3    fruitless task. The documentation needs quite drastic overhaul before it could

4    be considered workable."

5  Yates Decl. Ex. 6.

6    **C.    The Article 24 Proceedings and Microsoft's Attacks on the Commission**

7        On November 10, 2005, the Commission issued a decision pursuant to Article

8  24(1) of Regulation 1/2003 putting Microsoft on formal notice that should it not comply by

9  December 15, 2005 with its obligations to disclose complete and accurate interoperability

10  information, it would face daily fines. On December 22, one week after the deadline passed, the

11  Commission issued its SO, formally instituting the Article 24 proceeding to which Microsoft's

12  subpoenas ostensibly relate. In a statement announcing the SO, Competition Commissioner

13  Neelie Kroes said, "I have given Microsoft every opportunity to comply with its obligations.

14  However, I have been left with no alternative other than to proceed via the formal route to ensure

15  Microsoft's compliance." Yates Decl. Ex. 7.

16        An oral hearing on the SO was held on March 30 and 31, 2006. The only issue at

17  that hearing was whether or not Microsoft is in compliance with the March 2004 Decision.

18  Professor Barrett presented his views at that hearing, as did technical experts from IBM, Oracle,

19  Microsoft and other parties. Microsoft will either be found to be in compliance or not, a decision

20  which turns exclusively on the substantive completeness of Microsoft interoperability

21  disclosures. There is no process dimension to the Commission's analysis that might permit

22  Microsoft to excuse its noncompliance because of the way the Commission evaluated the

23  sufficiency of Microsoft's disclosures.

24        Nevertheless, since the SO was issued, Microsoft has been waging and steadily

25  escalating an attack on the legitimacy of the Commission's efforts to secure compliance with the

26  March 2004 Decision. This effort goes far beyond any legitimate defense of Microsoft's own

27  conduct, and is plainly an attempt to put the system on trial, as it were. The foils in this attack

28  have been the DG-Comp professional staff, the Monitoring Trustee and each of the four

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

1    companies which evaluated the disclosures and provided input on them to the Commission and

2    the Trustee.  Microsoft has, quite explicitly, charged these parties with colluding to harm

3    Microsoft.  In Microsoft's own words, it alleges that "the Commission has been conducting its

4    investigation of Microsoft's compliance in secret collaboration with Microsoft adversaries."

5    Yates Decl. Ex. 8 at p. 1.

6            There is no doubt that this "secret collaboration" theory was the motivation for

7    the Section 1782 applications now at issue.  Microsoft leveled its collusion charges and

8    announced these subpoenas on the same day, March 2, 2006, and based everything in its need,

9    allegedly frustrated by the Commission's file access rulings, to obtain evidence of the collusion.

10   *See* Yates Decl. Ex. 9, Tobias Buck, "Microsoft Accuses Brussels of Colluding with Rivals, *The*

11   *Financial Times* (March 3, 2006); Yates Decl. Ex. 18, "Microsoft Seeks Sun, IBM, Oracle,

12   Novell Documents," Bloomberg (March 3, 2006).

13       **D.    Microsoft's Section 1782 Subpoenas and Their Relation to File Access**

14           Microsoft obtained permission *ex parte* to issue subpoenas to Oracle, its legal

15   counsel (Clifford Chance LLP and Daniel Harris) and technical advisor (Ronald Alepin).[2]

16   Subpoenas were also issued to IBM and Sun and their legal counsel, and to Novell.  All of the

17   subpoenas were justified on the claim that DG-Comp was suppressing evidence of the alleged

18   collusion by manipulating its file access rules, and therefore violating Microsoft's rights of

19   defense.  *Ex Parte Application* at 9-10.  This was never true, for when Microsoft issued the

20   subpoenas it had already received much of the evidence it sought, and to the extent it had not

21   received any discoverable documents in the Commission's file, it was simply because Microsoft

22   did not bother to wait for the Commission and its Hearing Officer to process its requests in the

23   ordinary course.[3]  For whatever reason, Microsoft then concluded that it could do better in the

---

[2]   Microsoft erroneously refers to Mr. Alepin as an employee of the law firm Morrison & Foerster LLP.

[3]   Specifically, on January 30, 2006, Microsoft requested by letter all documents in the DG-Comp's possession that reflected or pertained to communications between the Commission on the one hand and third parties such as Oracle, Sun, IBM and Novell, on the other hand.  It also requested documents reflecting discussions that may have taken place between the third parties and the Monitoring Trustee.  The matter went to a Commission Hearing Officer,

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

10

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

1    U.S. than it could in Europe, so, as Mr. Gutierrez so candidly admitted, it "turn[ed] to the U.S.

2    courts for assistance."  Yates Decl. Ex. 18, "Microsoft Seeks Sun, IBM, Oracle, Novell

3    Documents," Bloomberg (March 3, 2006).

4            This was the posture of the case when Magistrate Judge Trumbull heard Oracle's

5    and Sun's motions to quash on March 27, 2006.  It explains why it was so obvious to her that

6    Microsoft's application "constitute[s] an attempt to circumvent specific restrictions the European

7    Commission has placed on Microsoft's right to obtain certain kinds of information."  Order at 5.

8            On March 28, 2006 – the day after Magistrate Judge Trumbull heard argument –

9    Microsoft *received access to all of the documents it had requested on March 2nd.*  Microsoft

10   admits this unequivocally, *Objections* at 7, and cynically tries to make it the foundation for its

11   new argument that the European authorities wish it to have this kind of information.  But what

12   this clearly means is that there is no further need for the U.S. subpoenas in order to protect

13   Microsoft's rights of defense.  Microsoft has obtained full discovery in Europe and could not

14   possibly claim any longer that its rights of defense are at risk.

15           E.        **The Commission's and DG-Comp's Position**

16           Oracle and the other companies that received subpoenas sought the Commission's

17   and DG-Comps's views on the propriety of Microsoft's request for U.S. judicial assistance.

18   Oracle received a response from DG-Comp (nearly identical to that received by the others) by

19   letter dated March 13, 2006 from Philip Lowe, the Commission's Director-General Competition.

20   Yates Decl. Ex. 1.  DG-Comp's position, as stated in an Annex to Mr. Lowe's letter, is that the

21   subpoenas are improper and unwelcome.

22

23   _____

24   which held that, with appropriate confidentiality waivers, Microsoft was entitled to
     everything in the Commission's file documenting communications between third parties and
     the Monitoring Trustee.  After the third parties, including Oracle, granted confidentiality
25   waivers, Microsoft received the materials.

26   Then on March 2, 2006 – the day Microsoft leveled its collusion charges – Microsoft made
     an additional request to the Hearing Officer for access to "any materials submitted by its
27   adversaries to the Trustee and OTR [a technical consultant working for DG-Comp]."  *The
     next day,* while this request was still pending, Microsoft filed its *ex parte* applications in the
28   U.S. seeking discovery of these materials under Section 1782.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

1    In particular DG-Comp has lodged its objection to the timing and nature of the

2    subpoenas, which in combination clearly demonstrate an intent to circumvent the Commission's

3    own administration of file access. Director-General Lowe states: "It came as a surprise to DG

4    COMP that Microsoft decided to turn to a US court for assistance under 28 U.S.C. § 1782 in

5    order to gain access to documents which it had one day before sought to obtain from the

6    Commission and on the disclosure of which a hearing [was] currently pending before the

7    Commission's Hearing Officer." *Id*. at ¶ 22. Because Microsoft's rights of defense "are

8    adequately protected by the European rules on access to file," *id*. at ¶ 23, Director-General Lowe

9    concluded that "an application by Microsoft on the basis of 28 U.S.C. § 1782 is not objectively

10   necessary but rather an attempt to circumvent the established rules on access to file in

11   Commission proceedings." *Id*.

12    The Commission itself has now moved to intervene in these proceedings and filed

13   an *amicus* brief. It has already filed two briefs in Massachusetts regarding the subpoenas to

14   Novell. *See* Supp. Yates Decl. Ex. B, D. The Commission has unequivocally gone on record as

15   *not* being "receptive[e] … to U.S. federal-court assistance," as that term was used in *Intel*. Most

16   importantly, the Commission has now addressed to Microsoft's new argument that U.S.

17   discovery should be allowed on subjects as to which Microsoft was granted file access. In the

18   following language taken from the Commission's Massachusetts reply brief, the Commission has

19   reaffirmed its view that Microsoft is attempting to circumvent what the Supreme Court called

20   "foreign proof-gathering limits."

21    Microsoft's suggestion that its subpoena would not circumvent
     European limitations merely because the Hearing Officer
22    determined that Microsoft would have been entitled to the
     documents it seeks had they been in the Commission's file misses
23    the point entirely. Relevance aside, Microsoft's subpoena not only
     avoids limitation the Commission may place on the scope of third-
24    party document requests, but importantly also avoids the manner in
     which a litigant obtains third-party documents under the law of the
25    European Community (*i.e.,* that the documents are requested and
     pursued by the Commission rather than by the litigant).

26    * * * The Commission's procedures for providing access to third-
     party documents not originally in the Commission's possession are
27    designed to provide access to evidence in a manner that is fair and
     transparent, while respecting a third party's right to confidentiality,
28    and to maintain control over proof-gathering activity in the matters

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

1    before it.  Principles of comity require that those procedures be
2    respected.

3  Supp. Yates Decl. Ex. D at 4, 5.

4         Importantly, the Commission has also addressed what everyone familiar with this

5  matter knows is the proverbial "elephant in the room" – the fact the Microsoft's subpoenas are a

6  thinly-veiled effort to intimidate those who might be witnesses against it:

7         The Commission depends on private parties to bring potential
       violations to the attention of the Commission and to provide
8         information to the Commission when needed. * * *  To the extent
       that private entities with a presence in the United States may face
9         the prospect of onerous and intrusive discovery in the United
       States, those entities could be deterred from aiding the
10        Commission in the future.  In turn, the Commission's ability to
       enforce the law of the European Community would be weakened.

11        This consideration has particular relevance here, where Microsoft
12        purports to seek documents from Novell precisely because Novell
       provided information to a Monitoring Trustee appointed by the
13        Commission to review Microsoft's compliance with a Commission
       decision.  The participation of Novell and other third parties is
14        important in enabling the Commission to render a reasoned
       judgment concerning Microsoft's compliance with the
15        Commission's decision that it provide to third parties adequate
       interoperability information concerning its operating system.  The
16        Commission has a substantial interest in encouraging companies
       like Novell to assist it in such Monitoring activities.  To protect
17        that interest, it is necessary that the Commission (subject to review
       by the courts of the European Community) apply its own standards
18        of access to documents, taking into account the other parties'
       interests of confidentiality.  Under the applicable [European] law
19        … it is the Commission itself – not the litigant – that pursues
       requests to third parties for production of documents.

20

21  *Id.* at 6-7.

22        This is an important point. Despite its rhetoric about being hounded by

23  "adversaries," Microsoft is facing Commission sanction because it continues to manipulate its

24  control over essential interoperability information to exclude competition.  If no one builds

25  competing products because of inadequacies in the disclosures, the terms of the licenses, or the

26  prospect that Microsoft will retaliate against anyone who speaks up about the disclosures, there

27  is no remedy.   By serving subpoenas on Oracle *and everyone else in a similar position*,

28  Microsoft is plainly attempting to chill communication concerning the adequacy of its

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

1   disclosures.  So this is not some innocent quest for exculpatory information.  It is an

2   acknowledged end-run on Commission procedures, a tool in a PR campaign seeking to

3   undermine the Commission's legitimacy, and a "message pitch" to those who would speak out

4   against Microsoft's behavior.  It deserves neither the respect nor the assistance of the U.S. courts.

5        **F.    Magistrate Judge Trumbull's Order Quashing the Subpoenas**

6            At Microsoft's request, Magistrate Judge Trumbull held a hearing on Oracle and

7   Sun's motions to quash shortly after Microsoft submitted its Opposition to the motions.  After

8   hearing oral argument for approximately an hour and a half on March 27, 2006, Magistrate Judge

9   Trumbull took the matter under submission.  On March 29, 2006, she issued an Order granting

10  the motions to quash.

11           Magistrate Judge Trumbull's Order is so succinct and well-expressed that there is

12  no point to summarizing it.  We would simply note that it plainly reflects an exercise of her

13  discretion rather than anything properly characterized as a ruling of law.  She states that

14  "assistance" under Section 1782 "is wholly within the discretion of the court," Order at 6, and

15  faithfully follows the approach set forth in *Intel* for exercising discretion in light of the relevant

16  policies.  *Id*. at 4-6.  She addressed every material consideration under *Intel* and weighed them,

17  finding some (in particular comity) more important than others in this case.  See, e.g., Order at 5.

18  Her decision that Section 1782 assistance was not warranted is the epitome of a discretionary

19  judgment.  Frankly, Magistrate Judge Trumbull couldn't have made any errors of law in her

20  decision, as Microsoft claims, because she did not resolve any disputed points of law.

21  Microsoft's efforts to claim otherwise are contrived and unconvincing.[4]

22       **G.       Proceedings in other District Courts**

23           At the same time that subpoenas were served in this District on Sun and Oracle,

24  subpoenas were served on Novell in the District of Massachusetts and IBM (and its lawyers) in

---

4    Indeed, the supposed errors of law Microsoft challenges concern European law, e.g., whether
     the Commission could compel production of the documents at issue (*Objections* at 12-13) –
     an issue Microsoft now admits *it* got wrong.  See Supp. Yates Decl. Ex. C at p. 1.  Others are
     obviously not errors of law at all, such as Microsoft's claim that Magistrate Judge Trumbull
     "assigns undue weight to DG Comp's views of Microsoft's discovery requests" (*id*. at 16).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

1   the Southern District of New York.  Oracle understands that IBM filed a motion to quash in the

2   Southern District of New York and that the matter is fully briefed, but that two district court

3   judges have recused themselves, so no decision has been issued.

4                In the District of Massachusetts, a hearing on Novell's motion to quash was heard

5   the day after the hearing before Magistrate Judge Trumbull.  At the conclusion of that hearing,

6   Judge Wolf issued a tentative ruling denying Novell's motion to quash and ordering production

7   of documents in response to a drastically narrowed subpoena.  Regrettably, Judge Wolf's

8   tentative decision rested upon his acceptance of Microsoft's claim – now withdrawn and

9   admittedly wrong – that the Commission could not order Novell to produce documents which

10  were not in the Commission's files.  Tentative Ruling pp. 11-12.  Judge Wolf also questioned

11  whether the DG-Comp's position that it was not receptive to the discovery was shared by the

12  Commission itself.  *Id.* at pp. 13-14.  We now know it is, emphatically.

13               Today, Judge Wolf issued an order quashing the subpoenas to Novell. In part,

14  Judge Wolf wrote:

15           The information submitted since the March 28, 2006 hearing
             demonstrates that Microsoft erroneously, repeatedly represented
16           that the Commission of the European Communities (the
             "Commission") could not obtain and, if it wished, make available
17           to Microsoft the documents Microsoft seeks by its §1782(a)
             subpoena.  Moreover, since the March 28, 2006 hearing, the
18           Commission has informed the court that it supports Novell's
             motion to quash because it views Microsoft's subpoena as an effort
19           to circumvent the Commission's procedures, and to disrupt the
             balance that the relevant laws strike to provide fair discovery to
20           defendants in cases alleging unlawful competition and to protect
             the interests of third-parties who may have a well-founded fear of
21           retaliation if they assist the Commission in such cases. As
             Microsoft has not demonstrated that the Commission's procedures
22           are fundamentally unfair, the court concludes that considerations
             of comity warrant the granting of Novell's motion to quash.

23

24  **III.    ARGUMENT**

25      **A.    Standard of Review**

26               Microsoft argues that this Court should conduct a *de novo* review of Magistrate

27  Judge Trumbull's Order.  It says next to nothing as to *why* de novo review is appropriate, merely

28  asserting that the Magistrate Judge's Decision is "dispositive" within the meaning of Fed. R. Civ.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

P. 72(b) and Civil L.R. 72-3.  In fact, there is case law on this issue and, in candor, a split of

authority.  Some cases do indeed apply a *de novo* standard of review to a Magistrate Judge's

ruling on a Section 1782 application.[5]  However, many cases reviewing Magistrate Judge's

Orders concerning section 1782 subpoenas apply the clearly erroneous standard typically applied

to non-dispositive pre-trial discovery matters.  *See, e.g., In Re: Application of Geert*

*Duizendstraal*, 1997 U.S. Dist. LEXIS 16506, *3 (N.D. Tex. 1997):

> The non-dispositive nature of Applicant's discovery request
> pursuant to 28 U.S.C. § 1782 dictates that the 'clearly erroneous'
> standard be applied in the present matter.  The Order at issue is
> procedural and fails to address any substantive issues.  The Order
> terminates the current proceeding only because of the procedural
> posture inherent in the application of § 1782.  The underlying
> action is pending in a Dutch court and the only issue decided by
> the Magistrate Judge concerns pretrial discovery.

*See also In re: Commissoner's Subpoenas*, 325 F.3d 1287, 1292 n. 2 (11th Cir. 2003) ("The

district court correctly observed that the standard of review by which it reconsidered the

magistrate judge's determination of the instant pretrial matter is 'clearly erroneous or contrary to

law.'")

As a matter of first principles it is highly irregular to apply *de novo* review to any

decision grounded in discretion.  Discretion, after all, implies that reasonable judges might

disagree on an issue, ordinarily limiting the reviewing court's role to determining whether the

lower court's decision "is within the range of options from which one could expect a reasonable

trial judge to select."  *United States v. Koen,* 982 F.2d 1101, 1114 (7th Cir. 1992).  Furthermore,

Magistrate Judges pass on Section 1782 applications in the first instance because they are in the

nature of discovery – a subject matter on which Magistrate Judges have extensive experience and

frequently exercise discretion.  It follows that the standard of review applicable to discovery

motions, or if not that then at least some form of abuse of discretion standard, should apply to

---

[5]  One example is Judge Ware's non-precedential decision on remand in *Advanced Micro
Devices, Inc. v. Intel Corp.*, 2004 U.S. Dist. LEXIS 21437, * 2 (N.D. Cal., Oct. 4, 2004).
That decision denied in full AMD's application for discovery, but indicates the court
"conducted a de novo review."

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

1   any appeal.

2          In the end it will not matter, because Microsoft's objections should be overruled

3   regardless of the standard of review that is applied.  Nevertheless, good order requires setting

4   forth the standard of review, and Oracle submits it is "clearly erroneous."

5   **B.**     **Magistrate Judge Trumbull Acted Well Within her Discretion in Denying**

6         **Microsoft U.S. Discovery**

7          28 U.S.C. § 1782 in some cases permits, but never requires, U.S. courts to

8   "provide assistance" to litigants in foreign legal proceedings.  As Microsoft said in its March 3,

9   2006 *Ex Parte* Application, "[a] section 1782 application presents the Court with two inquiries:

10   (1) whether the court is authorized to order the discovery in question and (2) *whether the court*

11   *should exercise its discretion to do so." Ex Parte Application* at 7 (emphasis added).

12          The Supreme Court's *Intel* decision is fundamentally about the roles of discretion

13   and categorical limitations in evaluating Section 1782 applications.  The decision rejects

14   numerous arguments Intel advanced for categorical limitations on "assistance," such as a

15   "foreign discoverability requirement."  Instead*,* the Supreme Court directed district courts to

16   exercise their discretion in those cases where "assistance" was authorized and make a judgment

17   as to whether assistance was appropriate.  542 U.S. at 263 n.15 ("the exercise of district-court

18   discretion," not categorical rules, should govern Section 1782 applications).  The Court provided

19   a non-exclusive list of factors district courts should consider in exercising discretion, including

20   many of the same points that Intel had urged as categorical limitations.  *Id*. at 264-65.  They

21   include:

22          (1) "the receptivity of the foreign government or the court or agency abroad to

23         U.S. federal-court judicial assistance";

24          (2) "whether the § 1782(a) request conceals an attempt to circumvent foreign

25         proof-gathering restrictions or other policies of a foreign country or the United

26         States";

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

1  (3) whether the entity from whom discovery is sought is a participant in the

2  foreign proceeding such that the "foreign tribunal … can itself order them to

3  produce evidence"; and

4  (4) the burden imposed by the requested discovery, which means that "unduly

5  intrusive or burdensome requests may be rejected or trimmed."

6  *Id.*  Judge Ware of this Court applied these factors to the Intel/AMD dispute on remand, denying

7  AMD all relief. [6]

8  Here, if the *Intel* factors do not outright compel the denial of Microsoft's request

9  for judicial assistance, they at least support Magistrate Judge Trumbull's discretionary decision

10  not to provide such assistance.  Microsoft has been given all the discovery available under EC

11  law on these subjects, including documents reflecting communications between the Commission

12  and Oracle or its lawyers.  The Commission has the power, and we submit, the sole

13  responsibility for obtaining any additional evidence on these subjects not already found in the

14  Commission's file.  The Commission and DG-Comp emphatically object to U.S. judicial

15  assistance under these circumstances, regarding Microsoft's efforts as "apt to seriously harm the

16  Commission's investigation process and circumvent the European rules on access to file."  *See*

17  Yates Decl. Ex. 1, at ¶ 27 (Director-General Lowe's letter); European Commission Brief at p. 1

18  (the proposed discovery "would pose a serious risk that the Commission's rules and procedures

19  concerning competition law enforcement would be circumvented").  That is reason enough to

20  deny Microsoft any Section 1782 discovery.

21  1.    **Contrary to its Assertions, Microsoft Does Not Need U.S. Judicial**

22  **Assistance to Obtain Documents the Commission Cannot Acquire.**

23  Microsoft's primary argument on this appeal is that only seeking discovery of

24  information the European Commission could not obtain, and that Magistrate Judge Trumbull

25  committed an error of law by not appreciating this.  Quite frankly, we expect Microsoft to

26  _____

27  [6]  *Advanced Micro Devices, Inc. v. Intel Corp.*, 2004 U.S. Dist. LEXIS 21437, * 6-7 (N.D. Cal., Oct. 4, 2004).  Because Judge Ware indicated that his decision was "not for citation," it is not precedent.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

1  withdraw this specious argument, which rests on an assertion about European law that is

2  obviously false, and which Microsoft has now admitted is false.

3          There is no gap in European procedural law that would prevent the European

4  Commission from compelling the production of documents and other evidence of Oracle's

5  communications with the Monitoring Trustee or OTR should it deem that necessary and

6  appropriate.  Such power is provided to the Commission under what is known as Article 18 of

7  Counsel Regulation 1/2003, which to empowers the Commission to "require undertakings and

8  associations of undertakings to provide all necessary information" whether or not they are the

9  target of an investigation or suspected of an infringement of the competition rules.  In fact,

10  Oracle received "Article 18 letters" from the Commission in connection with this very matter

11  and provided responsive information.  The Commission could issue additional Article 18 letters

12  similar to Microsoft's subpoenas at any time.

13          Microsoft cites extensively to Judge Wolf's statements about what the

14  Commission can and cannot obtain, but those statements are nothing Microsoft should be proud

15  of.  As Judge Wolf stated in his order granting Novell's motion to quash, "Microsoft

16  erroneously, repeatedly represented that the Commission of the European Communities (the

17  'Commission') could not obtain and, if it wished, make available to Microsoft the documents

18  Microsoft seeks by its §1782(a) subpoena."

19          In *Intel*, the Supreme Court held that whether the "foreign tribunal … can itself

20  order [the subpoenaed party] to produce evidence" is an important factor in the exercise of

21  discretion.  It noted that Section 1782 assistance may be appropriate where "evidence available

22  in the United States … may be unobtainable absent § 1782(a) aid," 542 U.S. at 264, but on the

23  other hand held that if the Commission has compulsory process, as in the case of a party to the

24  Commission proceeding, that cuts against U.S. judicial assistance.  *Id.*  Microsoft grounded its

25  appeal in a false claim that the Commission lacked power to compel the production of

26  information from Oracle.  Now that Microsoft has been forced to retract that claim, its primary

27  criticism of Magistrate Judge Trumbull's reasoning stands unsupported.

28

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

2.    **The Subpoenas Constitute An Improper Effort To Circumvent The Commission's Decisions Regarding Appropriate Discovery**

The question of whether Microsoft's subpoenas are "an attempt to circumvent foreign proof-gathering restrictions" has changed since Magistrate Judge Trumbull issued her decision, but the answer is still "yes." Magistrate Judge Trumbull addressed the issue at a time when Microsoft was complaining about its file access, and its intentions were (as its associate general counsel's statement to the press admitted) to use the U.S. courts as a means to get "full and fair file access." In other words, Microsoft was explicitly trying to use Section 1782 to launch a collateral attack on Commission file access rulings, a blatant effort to "circumvent foreign proof-gathering restrictions."

On March 28, however, Microsoft "won" its file access dispute with the Commission and now admits it has been given complete file access. That ought to be the end of this matter. Microsoft nevertheless presses on, now *embracing* the Commission's file access rulings to argue that because the hearing officer and the Commission "have consistently granted Microsoft access to the same type of documents that it is seeking in this proceeding, … allowing Microsoft to take discovery of Oracle and Sun will not place the Court on a 'collision course' with the Commission." *Objections* at 17.

The European Commission hit the nail on the head when, in its Massachusetts Reply Brief, it said that Microsoft's new argument "misses the point entirely." Yates Decl. Ex. D. (Commission Reply Brief) at 4. The important policy issue is not whether the Commission and this Court will agree on relevance concepts, it is whether the Commission is allowed to administer and control the proof-gathering process in its own proceedings. As Magistrate Judge Trumbull explained, the civil law system under which the Commission operates is very different than our own adversary system, utilizing "an 'inquisitional' process" that relies on the Commission to gather evidence, not the parties. Order at 4; *see also* Yates Decl. Ex. D at 5 ("under the law of the European Community … documents are requested and pursued by the Commission rather than by the litigant"). Parties to Commission proceedings are therefore *always* at the "disadvantage" Microsoft claims, in that they do not have direct discovery rights.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

1    But that fact alone has never been sufficient to warrant Section 1782 assistance. *See In re*

2    *Application of Asta Medica, S.A.*, 981 F.2d 1, 6 (1st Cir. 1992) ("Congress did not seek to place

3    itself on a collision course with foreign tribunals and legislatures, which have carefully chosen

4    the procedures and laws best suited to their concepts of litigation.").[7]

5            Magistrate Judge Trumbull's point – which remains valid even with regard to

6    Microsoft's new argument – was that whether Microsoft obtains access to evidence of

7    communications with the Trustee, and under what circumstances, implicates numerous judgment

8    calls that the Commission has made and continues to make. In this particular case, those

9    judgments are informed by the peculiar nature of the foreign proceeding, in which the

10   Commission is dependent on the free flow of information from potential protocol licensees about

11   the adequacy of the Microsoft's disclosures. The Commission's Trustee Decision in conjunction

12   with file access rules is intended to strike a balance between Microsoft's right and Commission's

13   needs.[8] Thus Magistrate Judge Trumbull was correct: "This is not a situation involving only a

14   foreign tribunal's general rules and procedures governing proof gathering. This situation

15   involves a tribunal's specific order restricting a specific litigant's ability to gather evidence."

16   Order at 5. U.S. judicial assistance under these circumstances inherently circumvents that

17   balance.

18            3.      **The Commission Does Not Seek This Court's Assistance And Opposes**

19                    **Microsoft's Request For Discovery**

20            Of considerable importance to any request for judicial assistance under section

21   1782 is whether the foreign government or agency is receptive to judicial assistance from a U.S.

22

23   [7]    As Magistrate Judge Trumbull noted, *Asta Medica* was overruled by *Intel* to the extent it
        adopts a categorical foreign-discoverability requirement. *See Intel,* 542 U.S. at 259-262. As
24      a statement of Congressional intent, however, *Asta Medica* remains correct. There is no
        indication that Congress intended consistency with the foreign sovereign's relevance
25      determinations or file access policies to warrant U.S. judicial assistance by themselves.

26   [8]    See Yates Decl. Ex. D at 5 ("The Commission's procedures for providing access to third-
        party documents not originally in the Commission's possession are designed to provide
27      access to evidence in a manner that is fair and transparent, while respecting a third party's
        right to confidentiality, and to maintain control over proof-gathering activity in the matters
28      before it.").

1    court. Indeed, principles of comity suggest that substantial deference should be given to the

2    foreign government or agency's views on whether U.S. judicial assistance is needed or

3    appropriate. *See Intel,* 542 U.S. at 264-5; *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376

4    F.3d 79, 84-85 (2d Cir. 2004) (affirming the denial of discovery under section 1782 where, *inter*

5    *alia*, the German government opposed the discovery request).

6            Prior to the hearing before Magistrate Judge Trumbull, DG-Comp explained that

7    it does not seek this Court's assistance and further believes that permitting Microsoft's requested

8    discovery is "not necessary" and "is apt to seriously harm the Commission's investigation

9    process." Yates Decl. Ex. 1, at ¶¶ 24, 27. Since that time, the European Commission has

10   confirmed that it does not believe the U.S. proceedings are necessary and that it is not receptive

11   to assistance from U.S. courts in this matter. Yates Decl. Ex. B (European Commission Brief) at

12   pp. 1, 10-12, 18. This *Intel* factor weighs heavily against Microsoft's requested discovery.

13           Microsoft complains that deference to the Commission's views in these

14   circumstances "would effectively convert § 1782 into a tool at the disposal of prosecutors in civil

15   law systems, but not defendants." *Objections* at 2. Effective rhetoric, but implicit in the charge

16   is the assumption that the Commission and Microsoft, as "prosecutor" and "defendant," ought to

17   have the same rights to obtain evidence. That is an American viewpoint, not a European one. In

18   the European system, the Commission is a neutral investigator, not a prosecutor, and it alone has

19   rights of compulsory process to obtain information. Microsoft may not like that, but the merits

20   of the European system are not up for debate. And, most important, Section 1782 does not invite

21   the debate. The Supreme Court has held, less than two years ago and in a case involving

22   European Commission proceedings, that the receptivity of the foreign tribunal to the purported

23   "assistance" matters. That's all Magistrate Judge Trumbull ruled. Order at 6 ("[T]his factor is

24   not dispositive. It is only one factor to be considered, which in this case weighs against allowing

25   the discovery.") Microsoft has no cause for complaint.

26       4.    **The Minimal Relevance of the Requested Discovery Weighs Against**

27             **U.S. Judicial Assistance.**

28           As noted earlier, since Magistrate Judge Trumbull heard argument in this case,

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

1    Microsoft effectively prevailed in its file access dispute with the Commission and has since

2    received everything in the Commission's file concerning Oracle's (and others') contacts with the

3    Monitoring Trustee and OTR.  Consequently, Microsoft's original justification for Section 1782

4    assistance – to prove that the Commission had infringed its "rights of defense – is now moot.

5           That leaves Microsoft to argue that this entire exercise in U.S. judicial assistance

6    is justified by its pursuit of some unknown increment of impeachment evidence that it could add

7    to what it has obtained through file access.  *See Objections* at 9 (U.S. judicial assistance would

8    permit Microsoft to obtain "documents to tell the rest of the story").

9           This is a trivial justification for the expenditure of resources the Microsoft's

10   application has caused to date and will cause if granted.  As the Court can see from Microsoft's

11   memoranda, it is already able to put on an "impeachment case" with the documents it received

12   through file access.  *Objections* at 7-9.  It put on a similar case at the Oral Hearing held in

13   Brussels on March 30 and 31.  Wall Decl. ¶¶ 2-3.  To be sure, no one has been impressed by this

14   evidence to date because, as the Commission has stated publicly again and again, the contacts

15   which the Monitoring Trustee had with potential licensees like Oracle were both proper and

16   fundamental to the Monitoring Trustee's duties.  Yates Decl. Ex. 5.  But for present purposes, the

17   point is that the wheels of U.S. judicial assistance ought not turn just because Microsoft thinks it

18   can add incrementally to its existing body of impeachment evidence.  The metaphorical "bar" for

19   invoking Section 1782 can't be that low.  Something in the nature of need far greater than this

20   ought to be required.

21   ///

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)

1    **IV.    CONCLUSION**

2              In light of Judge Wolf's decision, the European Commission's authoritatively

3    stated views, and the applicable standard of review, Microsoft's objections to Magistrate Judge

4    Trumbull's Order border on the frivolous.  Indeed, Microsoft should have withdrawn its

5    objections (or at the very least corrected its admittedly erroneous assertion about the

6    Commission's power) in light of its filing in the District of Massachusetts.  Oracle respectfully

7    submits that Microsoft's objections to Magistrate Judge Trumbull's Order should be overruled

8    and the Order should be affirmed in all respects.

9

10   Dated:  April 17, 2006                                Respectfully submitted,

11                                                          LATHAM & WATKINS LLP
                                                            Daniel M. Wall
12                                                          Christopher S. Yates

13
                                                            By  _____/S/_____
14                                                              Christopher S. Yates
                                                                Attorneys for ORACLE CORPORATION,
15                                                              CLIFFORD CHANCE LLP, DANIEL
                                                                HARRIS and RONALD ALEPIN
16

17   SF\558185

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

RESPONSE TO MICROSOFT'S
OBJECTIONS TO ORDER QUASHING SUBPOENAS
CASE NUMBER: 06-80038 JF (PVT)